# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ ) | | |
| CITIZENS FOR RESPONSIBILITY AND ) | | |
| ETHICS IN WASHINGTON, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Civil no. 11-951 (CKK) | |
| ) | | |
| FEDERAL ELECTION COMMISSION, ) | | |
| ) | | |
| Defendant. ) | | |
| _____ ) | | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR,
## IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

### STATEMENT

Ignoring completely its burden of proof in a Freedom of Information Act (FOIA) case,

defendant Federal Election Commission (FEC or Commission) has moved to dismiss the

complaint here on mootness grounds and for CREW's[1] alleged failure to exhaust administrative

remedies.  Not only does each ground lack any factual or legal support, but accepting the

Commission's arguments would make a nullity of the FOIA's constructive exhaustion

requirements and allow an agency to avoid any accountability for how it responds to FOIA

requests.

The record before this Court simply is devoid of any facts to substantiate the

Commission's argument it has produced all non-exempt responsive documents to CREW.  We

know nothing about how or where the agency conducted its search, a necessary factual predicate

_____

[1] CREW is the acronym for plaintiff Citizens for Responsibility and Ethics in
Washington.

to concluding the Commission conducted an adequate search.  Moreover, in arguing CREW has

received all the documents to which it is entitled, the Commission has ignored completely the

exemptions the agency invoked to withhold portions of responsive records.  The Court cannot

conclude, without more, that CREW has received all it is due under the FOIA because there is no

basis from which to determine whether the withheld material falls properly within the scope of

the claimed exemptions.  Moreover, the factual evidence suggests quite strongly the FEC has yet

to produce all responsive documents.  For example, although CREW's FOIA request explicitly

seeks calendars for each of the three named commissioners, the FEC has produced calendars for

only one commissioner.

    The Commission's exhaustion claim is equally untenable.  In correspondence

accompanying its production of documents, the FEC made clear CREW had no administrative

remedies to exhaust until the FEC had completed its processing of CREW's request and

provided CREW with all non-exempt documents.  That did not occur until June 23, 2011, weeks

after CREW filed suit (and perhaps not so coincidentally on the day the FEC filed its motion to

dismiss), when the FEC claimed to have produced all non-exempt documents and for the first

time advised CREW of its right to file an administrative appeal.  On this basis alone the FEC's

motion to dismiss for failure to exhaust administrative remedies must be denied.

## FACTUAL BACKGROUND

    On March 7, 2011, CREW sent by facsimile a FOIA request to the FEC seeking:  (1) all

correspondence related to any and all FEC business between Commissioners Matthew S.

Peterson, Caroline C. Hunter, or Donald F. McGahn II and any individual or entity outside of the

FEC from the date each commissioner took office to the present; (2) all calendars, agendas, or

2

other recordations of the schedules of these three FEC commissioners; (3) all written *ex parte* communications delivered to an FEC ethics officer or Designated Agency Ethics Official (collectively "ethics official") by Commissioners Peterson, Hunter, and McGahn or by someone acting on their behalf pursuant to 11 C.F.R. §§ 7.15(c), 201.3(c), 201.4(a); and (4) all statements setting forth the substance and circumstances of any oral *ex parte* communication prepared by any of these commissioners or someone acting on their behalf and delivered to an ethics official pursuant to 11 C.F.R. §§ 7.15(d), 201.3(c), 201.4(a).  Complaint, ¶ 13 (Dkt. 1).[2]  CREW expressly limited its requests for the requested written and oral *ex parte* communications to records in the possession of an ethics official.  *Id.* at ¶ 14.  CREW further requested that for any email, the FEC produce "metadata and/or headers" showing, *inter alia*, "the email address of the sender and any recipient."  Exhibit 1 to Rappaport Decl., p. 2.

CREW also requested a waiver of fees associated with processing its request, which concerns the operations of the federal government.  Specifically, the requested disclosures are likely to contribute to greater public awareness of *ex parte* communications between FEC commissioners and parties with business before the FEC, as well as to whether commissioners are complying with their statutory obligation to deliver *ex parte* communications and prepare and deliver statements about them to FEC ethics officials.  Complaint, ¶ 15.  CREW also requested it not be charged search or review fees, explaining how it qualifies as a representatives of the news media under the FOIA.  *Id.* at ¶ 16.

By email dated March 8, 2011, the FEC acknowledged receipt of CREW's request and

---

[2] For the Court's convenience, a copy of CREW's FOIA request is attached as Exhibit 1 to the Declaration of Adam J. Rappaport (Rappaport Decl.) (attached as Exhibit A).

advised CREW its request for a fee waiver had been granted.  Complaint, ¶ 17.  Following

subsequent conversations and communications with FEC Assistant General Counsel for

Administrative Law Nicole St. Louis Matthis, CREW agreed to exclude from the FEC's *initial*

search the official files of federal campaign-related matters (such as Matters Under Review,

enforcement actions, applications for public funding, audits, litigation, and advisory opinions)

and rulemaking proceedings.  *Id.* at ¶ 18.  In a letter of March 29, 2011, setting forth this

clarification, CREW explained that by agreeing to this procedure CREW was *not* narrowing the

scope of its request.  CREW also explained that after it reviewed the records the FEC would be

producing as part of the initial search, CREW would clarify further whether additional searches

were needed to fulfill the request.  *Id.*

      That letter also set forth CREW's agreement to exclude from its request:  (1)

correspondence sent by one of the three named commissioners in a federal campaign-related

matter or rulemaking proceeding solely in his or her authorized capacity as Chair or Vice Chair

to represent the Commission, such as a subpoena or Reason to Believe finding; (2)

correspondence docketed in a federal campaign-related matter or rulemaking proceeding and

received by one of the named commissioners solely as a carbon copy; and (3) correspondence

forwarding official reports to other government agencies or Congress and signed by one of the

named commissioners solely in his or her authorized capacity as chair or vice chair, such as

agency privacy reports or budget justifications.  Further, CREW agreed the word "meeting" as

used in the request for notes of meetings did not include a hearing of the Commission in an open

or executive session.  Complaint, ¶ 19.

      In an initial conversation with Ms. St. Louis Matthis on March 9, 2011, CREW's counsel

requested that the FEC produce responsive documents on a rolling basis.  Rappaport Decl., ¶ 3.

The FEC agreed to do so, but at no point provided CREW with a date certain by which it would

begin or complete its production of  responsive records.  In a series of conversations during

which the parties were discussing clarifications of CREW's request, the FEC's counsel never

suggested any records would be immediately forthcoming.  *Id.*, ¶¶ 6-9.  By April 29, 2011– one

month after CREW had memorialized its agreed clarifications – CREW had heard nothing

further from the FEC and CREW's counsel contacted Ms. St. Louis Matthis for an update.  *Id.*, ¶

9.  During that conversation CREW communicated its dissatisfaction with the pace of

production, and while the parties again discussed the FEC producing documents on a rolling

basis, the FEC again did not identify dates by which it would begin and complete such

production.  *Id.*  Of note, Ms. St. Louis Matthis said nothing about her imminent departure from

the FEC.  Rappaport Decl., ¶ 9.

On May 4, long after the FOIA's 20-day period for processing had expired, a new FEC

attorney, Kate Higginbothom, contacted CREW to advise that she was taking over CREW's

FOIA request and that she had just received access to an initial batch of 200 documents.  *Id.*, ¶

10.  Ms. Higginbothom suggested she would be able to get them to CREW within two weeks,

and stated she anticipated having a timetable for full disclosure by the end of the week, May 6,

2011.  *Id.*

By May 9 of the following week, when the FEC had not contacted CREW with a

promised timetable, CREW's counsel sought an update from Ms. Higginbothom.  *Id.*, ¶ 11.

According to Ms. Higginbothom, she was now in receipt of thousands of documents, which she

described as "a flood of documents," but was unable to commit to a date specific by which the

FEC would either begin or complete its production to CREW.  Rappaport Decl., ¶ 11.  By Friday

of that week, May 13, when contacted for an update, Ms. Higginbothom advised the first batch

of documents, which she hoped to disclose "next week," still was undergoing internal review.

Ms. Higginbothom said she had several thousand documents by that time.  *Id.*, ¶ 12.

CREW had received neither any responsive documents nor any timetable for production

by the time CREW filed its complaint in this matter ten days later, on May 23, 2011.  Finally,

without acknowledging CREW's lawsuit, the FEC made a first production of documents on June

15, 2011.  *See* Letter from Katie A. Higginbothom, FOIA Requester Service Center, to Adam J.

Rappaport, CREW, June 15, 2011 (June 15 FEC Letter) (attached as Exhibit B).  The letter

included the following:

> The FEC is continuing to process your request and has pro-
> duced with this letter an initial round of responsive records.
> You will continue to receive additional responsive records on a
> rolling basis.  Upon the agency's final production of records,
> you will receive a decision letter that will include information
> regarding your appeal rights.  *Today's letter does not constitute
> a final agency decision, and thus is not subject to appeal.*

*Id.*, p. 2 (emphasis added).

CREW received a similar letter from the FEC dated June 21, 2011, with a second

production of responsive records.  *See* Letter from Katie A. Higginbothom to Adam J.

Rappaport, June 21, 2011 (June 21 FEC Letter) (attached as Exhibit C).  Once again the FEC

characterized its production as non-final "and thus . . . not subject to appeal."  *Id.* at p. 2.  It was

not until the FEC's third and purportedly final production on June 23, 2011, that CREW was

advised of its right to file an administrative appeal.  *See* Letter from Katie A. Higginbothom to

Adam J. Rappaport, June 23, 2011 (June 23 FEC Letter) (attached as Exhibit D).   In all, the FEC

6

produced not the thousands of pages it had suggested to CREW it was reviewing, but a total of 835 pages of responsive documents.  Rappaport Decl., ¶ 14.  Of those documents, 219 pages contained redactions pursuant to Exemptions 2, 4, 6, and 7(C).  *Id.*  In addition, 25 pages contained information deemed "non responsive."  *Id.*, ¶ 15.

Within hours of completing its production, the FEC filed a motion to dismiss or, in the alternative, for summary judgment (Dkt. 4).  At no time before this filing did the FEC attempt to ascertain whether CREW considered the production to be complete or whether CREW instead intended to exercise its right, preserved in its letter of March 29, 2011, to clarify further whether additional searches were needed to fulfill its request.

## STATUTORY BACKGROUND

The FOIA, 5 U.S.C. § 552, is a mandatory disclosure statute requiring federal agencies to release requested records to the public upon request, unless one or more of nine statutory exemptions apply.  Enacted to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny," *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted), the FOIA allows citizens to know "what the government is up to."  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1987), *reh'g denied*, No. 02-409, 2004 WL 108633 (U.S. May 17, 2004).

An agency must respond to a properly submitted FOIA request within 20 working days by at least notifying the requester of the agency's determination whether or not to disclose the record(s) and of the requester's right to appeal that determination to the agency head.  5 U.S.C. § 552(a)(6)(A)(i).  In "unusual circumstances" an agency may delay its response to a FOIA request or appeal, but must provide notice and "the date on which a determination is expected to be

dispatched." 5 U.S.C. § 552(a)(6)(B).

An agency's failure to comply with these time limits may be treated as a "constructive exhaustion" of administrative remedies, 5 U.S.C. § 552(a)(6)(C), allowing the requester to seek judicial relief without availing itself of the administrative appeal process. *See, e.g.*, *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987). Upon receipt of a FOIA complaint, the district court has jurisdiction to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complaint." 5 U.S.C. § 552(a)(4)(B). In a FOIA action, the agency bears the burden of justifying its failure to disclose the requested documents. *Id.*

## ARGUMENT

### I. BECAUSE THE FEC HAS NOT MET ITS BURDEN OF PROVING IT CONDUCTED AN ADEQUATE SEARCH FOR ALL RESPONSIVE RECORDS, ITS CLAIM OF MOOTNESS MUST FAIL.

Based solely on its claim to have "delivered by courier to CREW the last batch of nonexempt materials it sought," the FEC posits "CREW has received all the documents to which it is entitled under FOIA" and has moved to dismiss CREW's complaint as moot.[3] In order to demonstrate mootness based on CREW's receipt of all responsive non-exempt documents, however, the FEC must also demonstrate beyond material doubt it conducted an adequate search "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see also Nation Magazine v. U.S. Customs Service*, 71

---

[3] Federal Election Commission's Memorandum In Support Of Its Motion To Dismiss Or, In The Alternative, For Summary Judgment (D's Mem.), p. 6.

8

F.3d 885, 890 (D.C. Cir. 1995).[4]  Without this showing, there is no basis from which to conclude

CREW truly has received all responsive documents.

Here, as in every FOIA case, the agency meets this burden through declarations denoting

"which files were searched" and "reflect[ing] a systematic approach to document location . . ."

*Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  *See also CREW v. Nat'l Indian*

*Gaming Comm'n*, 2006 U.S. Dist. LEXIS 30200, *5 (D.D.C. 2006).  If the agency declarations

fail to meet this standard, summary judgment must be denied.  *Landmark Legal Found. v. EPA*,

272 F. Supp. 2d 59, 66 (D.D.C. 2003).  *See also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d

321, 326 (D.C. Cir. 1990); *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824,

837 (D.C. Cir. 1979).

Conspicuously absent in this case are *any* facts about the FEC's search.  The FEC has

submitted no declarations explaining how or where the FEC conducted its searches, or from

whom it sought documents.  The FEC has submitted no declarations explaining what, if any,

search terms the FEC used or whether the agency searched for all documents in all media sought

by CREW, including email and other electronic records.  Rather than provide any of these

necessary facts, the FEC merely has stated it sent three batches of documents to CREW by

courier or email on three separate dates, with a final cover letter describing the enclosure as "the

remaining agency records responsive to its [CREW's] request."  June 23 FEC Letter; *see also*

---

[4] These cases arose in the context of a motion for summary judgment.  Here, as
explained, the FEC has moved to dismiss based in part on a claim of mootness necessarily
predicated on the FEC having conducted an adequate search.  Because this presents a factual
issue that can be resolved only on a full factual record, the Court must treat the FEC's motion to
dismiss as one for summary judgment.  *See* Fed. R. Civ. P. 12(d).  The FEC apparently
recognizes at least this much, as it has moved alternatively for summary judgment.

June 15 FEC Letter, June 21 FEC Letter.  But simply saying so does not make it so.  The FEC

bears the burden of proving the adequacy of its search, a burden it has disregarded entirely.

Accordingly, as a factual matter, the FEC has failed to demonstrate CREW's complaint is moot,

and its motion to dismiss must be denied.

 Moreover, a review of what the FEC has produced reveals, at least in part, what the

agency has failed to produce.  Many of the emails produced by the FEC denote they were replied

to, but the FEC has failed to produce those replies.  Rappaport Decl., ¶ 16.  The FEC's

production omits critical metadata, such as that showing which commissioner received the email

in question.  *Id.*  The FEC also has failed to produce all attachments to emails. Id., ¶ 17.

 In addition, the FEC has failed to provide all categories of requested records.  For

example, although CREW's request sought "all calendars, agendas, or other recordations of the

schedules" of FEC Commissioners Peterson, Hunter, and McGahn (*see* Complaint, ¶ 13), the

FEC produced calendars for only Commissioner Peterson.  Rappaport Decl., ¶ 17.  Similarly,

although CREW sought *ex parte* communications notices in the possession of an ethics official,

the FEC produced none.  *Id.*  Quite clearly these unexplained gaps in the FEC's production

further evidence the inadequacy of the agency's search, requiring the Court to reject its motion to

dismiss.

 Finally, the Court cannot properly conclude the FEC conducted an adequate search given

CREW's express reservation of the right, after seeing the FEC's *initial* document production, to

request additional documents within the scope of its FOIA request.  CREW's letter to the FEC of

March 29, 2011, states unambiguously:

> To be clear, by agreeing to this procedure CREW is not narrowing
> the scope of the request.  *After CREW has reviewed the records*

> *the FEC produces by this initial search, we will further clarify*
> *whether additional searches are needed to fulfill the request.*

Letter from Adam J. Rappaport to Nicole St. Louis Matthis, March 29, 2011 (Dkt. 4-1)

(emphasis added).  Yet the FEC never afforded CREW any opportunity to complete its review of

the agency's production.  Instead, hours after providing CREW with a third installment of

documents, the FEC moved to dismiss CREW's complaint.  Having deprived CREW of any

opportunity to act on its expressly reserved rights by the agency's unilateral actions, it cannot

now benefit by dismissal of this lawsuit.

## II.  BECAUSE THE FEC HAS FAILED TO DEMONSTRATE DOCUMENTS IT HAS WITHHELD ARE PROTECTED FROM DISCLOSURE PURSUANT TO EXEMPTIONS 2, 4, 6 AND 7(C) ITS CLAIM OF MOOTNESS MUST FAIL.

In *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973), the D.C. Circuit established the

"procedural requirements" "an agency seeking to avoid disclosure" must follow to sustain its

burden.  "[W]hen an agency seeks to withhold information it must provide a relatively detailed

justification, specifically identifying the reasons why a particular exemption is relevant and

correlating those claims with the particular part of a withheld document to which they apply."

*Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)

(citations omitted).  An agency typically satisfies these requirements with a "*Vaughn*

submission," usually consisting of a declaration describing the basis for its withholdings and

providing justifications for redactions, accompanied by an index listing responsive records and

indicating the precise redactions made to the records.

The D.C. Circuit has clarified further that "[s]pecificity is the defining requirement of the

*Vaughn* index" and that declarations that are "conclusory, merely reciting statutory standards, or

. . . are too vague or sweeping" will not support a summary judgment motion. *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987).  As the *King* court concluded, "[c]ategorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." *Id.* at 224 (footnote omitted). *See also Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007).

Beyond these procedural requirements, the responding agency must demonstrate it meets the substantive requirements of each claimed exemption.  Again, it meets this burden through the submission of declarations explaining why the withheld material falls under the claimed exemptions. *See, e.g.*, *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998); *King*, 830 F.2d at 217.

Here, the FEC has withheld portions of 216 pages of documents pursuant to Exemption 6 of the FOIA,[5] which protects from disclosure information about individuals in "personnel and medical files and similar files" when disclosure of the information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  In addition, the FEC has relied on Exemption 7(C), which affords protection for personal information in law enforcement records, to withhold portions of one document.[6]  5 U.S.C. § 552(b)(7)(C).  Further, the FEC has withheld portions of five pages of documents pursuant to Exemption 2,[7] which applies to internal personnel matters of a trivial nature, 5 U.S.C. § 552(b)(2), and portions of three pages of

---

[5] Rappaport Decl., ¶ 14.

[6] Rappaport Decl., ¶ 14.

[7] Rappaport Decl., ¶ 14.

documents pursuant to Exemption 4,[8] which protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

For none of these claimed exemptions, however, has the FEC even attempted to meet any of the procedural or substantive requirements for their invocation. The FEC has not produced any kind of *Vaughn* index or any description whatsoever of the withheld material. To the contrary, the FEC has eschewed expressly its obligation to produce a *Vaughn* index, claiming on June 23 – after this matter was in litigation – CREW's pre-processing request for a *Vaughn* index still is "premature." *See* June 23 FEC Letter at p. 2. Moreover, the FEC's legal memorandum and supporting declarations omit any reference to even the fact of its withholdings, instead asserting categorically that CREW has received "all the documents to which it is entitled under FOIA." D's Mem. at 6. Yet, if the FEC's withholdings do not satisfy either the procedural or substantive requirements for their invocation, CREW cannot have received "all the documents to which it is entitled," and the FEC's assertion of mootness must fail. In the absence of any explanation of what the FEC has withheld and why, the Court cannot evaluate the correctness of the agency's withholdings and therefore cannot conclude CREW's claims are moot.[9]

### III. CREW HAS SATISFIED ALL EXHAUSTION REQUIREMENTS IMPOSED BY THE FOIA.

The FEC argues alternatively that CREW's complaint must be dismissed because CREW has failed to exhaust administrative remedies. The FEC faults CREW specifically with failing to

---

[8] Rappaport Decl., ¶ 14.

[9] The FEC has also designated portions of 25 pages as "non responsive," a designation that is far from self-evident reviewing the remaining content of each of those documents. Rappaport Decl., ¶ 15. Yet the FEC has provided no explanation for its "non responsive" markings, presenting yet another basis on which its motion must be denied.

pursue an administrative appeal immediately after the FEC first acknowledged receipt of CREW's request.  This argument defies logic and is contradicted by the FEC's own statements to CREW.

The FOIA contains an exception to the normal requirement of exhausting administrative remedies under which a FOIA plaintiff will be deemed to have constructively exhausted those remedies "if the agency fails to comply with the applicable time limit provisions of this paragraph." 5 U.S.C. § 552(a)(C)(i).  The referenced time limits include a requirement that the agency determine within 20 days of receiving a FOIA request "whether to comply with such request" and "immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination . . ." 5 U.S.C. § 552(a)(B)(6)(a).  The D.C. Circuit has construed the FOIA's exhaustion requirement as "not jurisdictional because the FOIA does not unequivocally make it so." *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. (2003) (citation omitted).

Relying on a single case from this district, *Petit-Frere v. U.S. Attorney's Office for S.D. Fla.*, 664 F. Supp. 2d 69 (D.D.C. 2009), the FEC argues its acknowledgment of CREW's request and subsequent negotiations with CREW "within three weeks of CREW's FOIA request" constitute a determination to comply with CREW's request within the meaning of 5 U.S.C. § 552(a)(B)(6)(a), thereby triggering the requirement that CREW exhaust administrative remedies prior to filing suit.  D's Mem. at 9.[10]  Both the weight of the case law and the facts here do not

---

[10] In fact, the FEC is vague as to what specifically triggered the requirement that CREW exhaust administrative remedies.  While the agency cites to its initial acknowledgment of CREW's request and subsequent discussions with CREW (*see* D's Mem. at 9-10), which eventually resulted in the FEC acceding to CREW's request that it produce documents on a rolling basis, it does not identify any specific response it claims constitutes a determination

support this construction.

In *Petit-Frere*, the court interpreted the FOIA's exhaustion provision as merely requiring an agency to advise a FOIA requester it will process the request, whether or not it completes that processing within 20 business days.  664 F. Supp. 2d at 72.  The court purported to derive this construction from prior D.C. Circuit precedent, specifically *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52 (D.C. Cir. 1987), and *Oglesby v. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990).  *See id.* at 71.  Neither case, however, supports the district court's conclusions.

The *Spannaus* case presented the issue of whether the plaintiff's lawsuit was barred by the applicable statute of limitations.  This required the court to determine when the plaintiff's cause of action had accrued, a determination that turned on whether the plaintiff had constructively exhausted his administrative remedies.  824 F.2d at 59.  Concluding that the agency had failed "to make the determination required by § 552(a)(6)(A)(i)," the court determined the requester had exhausted his administrative remedies "10 working days [the then-governing statutory period for agency responses] after assumed receipt of the request."  *Id.*  Of particular relevance here, the court drew a clear line of demarcation between that date and an earlier date within the 10-day period on which the agency had responded by "merely acknowledg[ing] the request and inform[ing] appellant that the request would be forwarded to FBI Headquarters, as well."  *Id.* and n. 9.  Because such acknowledgment alone was not deemed a "determination" within the meaning of § 552(a)(6)(A)(i), it did not trigger the administrative exhaustion requirements.

In *Oglesby*, the D.C. Circuit addressed the issue of whether actual exhaustion of

---

within the meaning of § 552(a)(6)(A)(i).

administrative remedies still is required when an agency responds outside of the required time

period, but before a requester has filed suit.  The court first examined its prior decision in

*Spannaus*, which it characterized as involving a failure by the agency in question "to make a

determination" within the then-statutorily required period of 10 days.  920 F.2d at 63.  Thus, the

*Oglesby* court accepted implicitly the *Spannaus* court's characterization of the FBI's initial

acknowledgment as not constituting a "determination" within the meaning of the FOIA.  The

*Oglesby* court went on to recite the three prerequisites an agency's response must meet to trigger

the requirement that a requester pursue an administrative appeal:  (1) it must include "the

agency's determination of whether or not to comply with the request"; (2) "the reasons for its

decision"; and (3) "notice of the right of the requester to appeal to the head of the agency if the

initial agency decision is adverse."  *Id.* at 65.

Turning to the question before it, the court evaluated whether each of the responses from

the six agencies in question constituted an "adverse determination" within the meaning of 5

U.S.C. § 552(a)(6)(A)(i).  *Id.* at 66-71.  With respect to the Department of State, the court

evaluated two letters the agency had sent the requester:  (1) a first letter agreeing to process the

request, and (2) a subsequent letter informing the requester the agency had found no records

responsive to his request.  920 F.2d at 67.  The court characterized the second letter as "an

'adverse determination' under 5 U.S.C. § 552(a)(6)(A)(i) because appellant did not receive the

documents he requested."  *Id.*  Even this letter, however, did not trigger the exhaustion

requirement because it failed to advise the requester of "his right to appeal the negative reference

to his inquiry."  *Id.*

Similarly, the *Oglesby* court examined the FBI's "initial response," which "merely

informed appellant that the FBI was processing the request." 920 F.2d at 69. The court, however, expressly declined to "determine whether this was an adequate and timely response under 5 U.S.C. § 552(a)(6)(A)(i) for constructive exhaustion purposes, because the FBI sent additional letters before appellant filed suit." *Id.* Thus, *Oglesby* at most leaves open the question of whether an agency's response that it is processing a request triggers the exhaustion requirement, but the court's treatment of the responses by the Department of State suggests strongly the answer is no.

Given this background, the court's holding in *Petit-Frere* cannot be extended to this case, where the FEC failed to provide CREW with the requisite notice of CREW's right to pursue an administrative appeal, as the FOIA requires. *See Oglesby*, 920 F.2d at 65. Moreover, the FEC's own words undermine completely the litigation position it has now taken that CREW was required, but failed, to exhaust administrative remedies. Even under the FEC's factual recitation of what occurred in the three weeks following receipt of CREW's FOIA request, it is clear that at no point did the FEC advise CREW of its right to pursue an administrative appeal, a necessary prerequisite to bypass the constructive exhaustion provision. *Oglesby*, 920 F.2d at 67. Further, *after* CREW filed suit the FEC not only advised CREW explicitly on two separate occasions it had yet to make a final agency decision subject to appeal, but stated explicitly each time its letter response forwarding documents *"does not constitute a final agency decision, and thus is not subject to appeal."* *See* June 15 FEC Letter; June 21 FEC Letter (emphasis added). Only when the FEC purportedly had completed processing CREW's request – on June 23, 2011, hours before it moved to dismiss – did the agency for the first time advise CREW of its administrative appeal rights. *See* June 23 FEC Letter. This factual chain of events forecloses completely an

argument that the FEC made a response that required CREW to exhaust administrative remedies before filing suit.

A plain language approach to this issue yields the same result.  As the U.S. Department of Justice has explained, "[a]n agency response that merely acknowledges receipt of a request does not constitute a 'determination' under the FOIA in that it neither denies records nor grants the right to appeal the agency's determination." Guide to the Freedom of Information Act, U.S. Department of Justice, Office of Information Policy, 2009 Edition, p. 743 (citations omitted).

Further, accepting the FEC's interpretation of the FOIA's constructive exhaustion requirement would turn the statute on its head and sanction delay in situations where Congress intended to afford requesters direct access to the district courts.  To be sure, Congress recognized agencies sometimes face circumstances in which, even with due diligence, they cannot complete processing a request within the statutory time frame.  But Congress' answer was not to waive off the constructive exhaustion provision, but instead to afford courts the ability to grant extensions of time upon a proper showing from the agency so it can finish its FOIA review.  *See Oglesby*, 920 F.2d at 62.  Known as *Open America* stays, these safety valves are available to an agency that "has been diligently working on a response to the request, but has been unable to meet the deadline because of exceptional circumstances . . ." *Id.*  Requesters may still file suit, but courts are enabled "to grant an extension of time to allow the agency to finish reviewing the request." *Id.*  The FEC's alternative approach – requiring the requester to refrain from filing suit and instead pursue administrative remedies – would deprive this judicially sanctioned approach of any utility.  Indeed, under the FEC's approach, agencies would be afforded as much time as they chose to consume in processing a request with no need to demonstrate the "exceptional

18

circumstances" courts require of agencies acting diligently, but with scarce resources and unexpected snags.

In arguing to the contrary, the FEC suggests judicial review at this juncture is both unnecessary and contrary to the purpose of exhaustion. D's Mem. at 10. But the agency's conduct to date proves the falsity of this claim. At several junctures the FEC promised documents would be forthcoming, but failed to live up to that promise. At no time did the FEC provide CREW with a timetable for production, despite its promise at least once to do so. Instead, CREW repeatedly was left dangling, with no assurance if and when the FEC would produce documents. Even now, when the FEC has claimed to have completed processing CREW's request, it has yet to explain how and where it looked or to offer any description of what it withheld.[11]

In addition, the agency claims to have provided all responsive documents despite the parties' agreement, memorialized in CREW's March 29th letter, that depending on the outcome of CREW's review of the FEC's initial production, the agency might need to produce additional documents responsive to CREW's initial FOIA request. Moreover, there is a vast and unexplained discrepancy between the volume of documents the FEC suggested administratively it was processing – supposedly numbering in the thousands – and the 835 pages of documents it ultimately produced to CREW. It is precisely in circumstances like those present here, where a requester has no assurance the agency will comply with its obligations under the FOIA, that Congress intended to afford judicial review to break through the administrative logjam.

_____

[11] Instead, the FEC asks the Court, on the basis of "conversations and communications" with CREW and emails clarifying what CREW was seeking, to conclude "the Commission adequately responded to the request" and dismiss CREW's complaint. D's Mem. at 10 n.6.

In sum, it is the FEC, not CREW, that has failed to comply with its obligations under the

FOIA.  The agency's efforts to evade judicial review of its conduct must fail both as a matter of

fact and law.

**CONCLUSION**

For the foregoing reasons, the Court should deny defendant's motion to dismiss or, in the

alternative, motion for summary judgment.

Respectfully submitted,

*/s/ Anne L. Weismann*
D.C. Bar No. 298190
Melanie Sloan
D.C. Bar No. 434584
Citizens for Responsibility and Ethics
  in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Telephone: (202) 408-5565
Fax: (202) 588-5020
Aweismann@citizensforethics.org

Dated: July 7, 2011