UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>   Plaintiff,<br><br>     v.<br><br>FEDERAL ELECTION COMMISSION,<br><br>   Defendant. | Civil Action No. 11-951 (CKK) |

**MEMORANDUM OPINION**
(December 30, 2011)

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain certain records requested from Defendant, the Federal Election Commission ("FEC"). Presently before the Court is the FEC's [4] Motion to Dismiss, or in the Alternative, for Summary Judgment, seeking to dismiss CREW's complaint on two grounds: (1) Plaintiff's claim is moot; and (2) for Plaintiff's purported failure to exhaust its administrative remedies. CREW filed an [5] Opposition, and the FEC filed a [7] Reply. Having analyzed the pleadings, the record before the Court, and the relevant authorities, Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED, and Defendant's motion for summary judgment is GRANTED.

**I. BACKGROUND**

CREW is a non-profit corporation which describes its mission as "protecting the right of citizens to be informed about the activities of government officials and [] ensuring the integrity of government officials." Compl. ¶ 4. The FEC is an independent agency of the United States Federal Government charged with administering the Federal Election Campaign Act of 1971.

Def.'s Stmt. ¶ 1.[1]  On March 7, 2011, CREW submitted a FOIA request to the FEC seeking, in relevant part, the following records:

- All correspondence related to any and all FEC business between Commissioners Matthew S. Peterson, Caroline C. Hunter, or Donald F. McGhan II and any individual or entity outside of the FEC from the date each commissioner took office to the present;

- All calendars, agendas, or other recordations of the schedules of Commissioners Peterson, Hunter, and McGhan;

- All written *ex parte* communications delivered to an FEC ethics officer or Designated Agency Official by Commissioners Peterson, Hunter, and McGhan or by someone acting on their behalf; and

- All statements setting forth the substance and circumstances of any oral *ex parte* communication prepared by any of these commissioners or by someone acting on their behalf and delivered to an ethics official.

Pl.'s Ex. 1 at 1.  The request indicated "CREW welcomes the opportunity to discuss with you whether and to what extent this request can be narrowed or modified to better enable the FEC to process it within the FOIA's deadlines." *Id.* at 2.

The day after it received the request, the FEC emailed CREW, acknowledging receipt of the request, and granting CREW's application for a fee waiver.  Def.'s Stmt. ¶ 4.  Though certain immaterial details of the parties' communications remain in dispute, the parties do not dispute that between March 9 and March 18, 2011, the parties agreed that (1) CREW would allow the FEC to exclude certain documents from its initial search for responsive documents; and (2) the FEC would produce documents on a rolling basis.  *See* Resp. Stmt. ¶¶ 4-8.  On March 29, 2011,

---

[1] In most instances the Court shall cite only to Defendant's Statement of Material Facts ("Def.'s Stmt.") unless a statement is contradicted by the Plaintiff, in which case the Court may cite Plaintiff's Response to the Defendant's Statement of Material Facts ("Resp. Stmt.").  The Court shall also cite directly to evidence in the record, where appropriate.

CREW sent the FEC a letter clarifying the scope of CREW's request. Rappaport Decl. ¶ 8. The parties continued to correspond regarding the scope of the request through at least April 4, 2011. *See* Pl.'s Ex. C at 2. On May 4, 2011, the FEC informed CREW that it had just received the first set of potentially responsive documents from its searches, was still performing searches, and was reviewing thousands of potentially relevant documents. Def.'s Stmt. ¶ 10; Rappaport Decl. ¶ 10. CREW contends the FEC represented it thought it would be able to produce the first set of responsive documents within two weeks. Resp. Stmt. ¶ 10.

CREW filed its Complaint on May 23, 2011. Def.'s Stmt. ¶ 11. The FEC produced its first batch of responsive documents on June 15, 2011. *Id.* at ¶ 12; Pl.'s Ex. B (06/15/11 Ltr K. Higginbothom to A. Rappaport). The initial production was accompanied by a letter informing CREW that

> The FEC is continuing to process your request and has produced with this letter an initial round of responsive records. You will continue to receive additional responsive records on a rolling basis. Upon the agency's final production of records, you will receive a decision letter that will include information regarding your appeal rights. Today's letter does not constitute a final agency decision, and thus is not subject to appeal.

Pl.'s Ex. B at 2. The FEC's second production on June 21, 2011 contained a similar disclaimer, indicating the FEC expected to produce additional documents and that the production was not an appealable agency decision. Pl.'s Ex. C at 2. The FEC completed its production of responsive documents on June 23, 2011, and enclosed a letter outlining redactions and documents withheld under various FOIA exemptions. Pl.'s Ex. D at 2-3. The letter further instructed CREW that it could appeal any adverse determination, that any appeal must be in writing, and that it must comply with the guidelines set forth in 11 C.F.R. § 4.8. *Id.* at 3. In total, the FEC produced 835 pages of responsive documents between June 15 and June 23, 2011.

## II.  LEGAL STANDARD

The FEC styles its motion as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment pursuant to Rule 56.  The FEC's argument that CREW's claim is moot is correctly considered a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  In determining whether there is subject matter jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").  "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact."  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  However, it remains the Plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence.  *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).  "[A] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal quotation marks omitted).

In support of its second argument, failure to exhaust administrative remedies, both parties rely on materials outside the pleadings thus Defendant's motion will be treated as a motion for summary judgment.  Rule 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside

the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials); or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). When considering a motion for summary judgment, the court may not make credibility determinations or weigh the evidence; the evidence must be analyzed in the light most favorable to the nonmoving party, with all justifiable inferences drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (citation omitted).

The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Liberty Lobby*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* For a dispute about a material fact to be "genuine," there must be sufficient

admissible evidence that a reasonable trier of fact could find for the nonmoving party. *Id.* The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute. *See Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).

### III. DISCUSSION

*A.     Mootness*

"Article III of the Constitution restricts the federal courts to deciding only 'actual, ongoing controversies,' and a federal court has no 'power to render advisory opinions [or] . . . decide questions that cannot affect the rights of litigants in the case before them.'" *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (internal citations omitted) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988) and *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). The case or controversy requirement "means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal quotation marks omitted). "[E]ven where litigation poses a live controversy when filed, . . . [this] court [must] refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Nat'l Black Police Ass'n*, 108 F.3d at 349 (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)).

In this case, the FEC argues that its production of responsive documents in June 2011 mooted Plaintiff's claim for relief. Plaintiff argues that the FEC has failed to meet its burden to show that the search performed was adequate and that the agency's invocation of various FOIA exemptions was proper. Plaintiff misunderstands the FEC's argument.[2] The FEC is not moving to dismiss Plaintiff's case on the basis of the substance of its response to CREW's request; rather the FEC argues its production of *any* documents in response to the request moot's CREW's complaint, which sought to compel *some* response to CREW's request.

The FEC's argument has some intellectual appeal, but is ultimately unpersuasive. CREW filed suit before the FEC had produced (or refused to produce) any documents, which would seemingly limit Plaintiff to a cause of action under § 552(a)(6)(A)(i) and/or § 552(a)(6)(C) challenging the timeliness of the agency's response. Although Plaintiff's Complaint purports to bring a claim under § 552(a)(3)(A), Defendant implicitly argues that a claim under this section would not have been ripe at the time Plaintiff filed suit because the agency had not yet produced or withheld documents such that the Court could evaluate the adequacy of the agency's response. It does not appear that courts inside or outside of this Circuit take such a formalistic approach to complaints filed pursuant to the FOIA. *See Edmonds v. FBI*, 417 F.3d 1319 (D.C. Cir. 2005) (upholding attorney's fee award in FOIA case filed in order to compel expedited production of documents and resolved on motion for summary judgment regarding adequacy of the records eventually produced by the FBI). In *Voinche v.*

---

[2] The Court does not fault Plaintiff for this misunderstanding. All of the cases cited in Defendant's Motion involved challenges to the substantive response to FOIA requests. It was not until Defendant's Reply that the nature of the mootness claim became clear. *See* Def.'s Reply at 2-4.

*FBI*, 999 F.2d 962 (5th Cir. 1993), on which the FEC primarily relies in its Reply, the underlying complaint challenged both the timeliness of the FBI's response (as no documents were produced prior to plaintiff filing suit) and the adequacy of the records produced. Though the *Voinche* court eventually concluded that the substantive challenge to the FBI's response was barred by plaintiff's failure to exhaust administrative remedies, the fact that the court reached the exhaustion issue supports the notion that courts do not routinely construe complaints to only challenge an agency's timeliness even if filed before the agency produces any responsive records. The FEC is correct that to the extent that Plaintiff's Complaint challenged the timeliness of their production, it is now moot. However, the Court is not willing to dismiss the Complaint in its entirety, because the Complaint does assert a substantive challenge to the agency's response under § 552(a)(3)(A). *See* Compl. ¶ 26. Therefore Defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

### B. *Exhaustion of Administrative Remedies*

The bulk of the FEC's motion is dedicated to the argument that this case should be dismissed because CREW failed to exhaust its administrative remedies before filing suit. As explained below, the FEC provided an adequate determination in response to CREW's FOIA request prior to CREW filing suit, thus CREW was required to exhaust its administrative appeals within the FEC before challenging the adequacy of the FEC's response in this Court.

### 1. Exhaustion of Administrative Remedies and Constructive Exhaustion

Exhaustion of administrative remedies in the context of the FOIA "is not jurisdictional because the FOIA does not unequivocally make it so." *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003). Nevertheless, this Circuit has held that failure to exhaust administrative

remedies still "precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar." *Id.* at 1258-59 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990). In this case, CREW argues that it "constructively exhausted" its remedies because the FEC failed to respond to its request within the twenty day window prescribed in the statute. The "constructive exhaustion" provision on which Plaintiff relies, § 552(a)(6)(C)(i), provides in relevant part:

> Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request *if the agency fails to comply with the applicable time limit provisions of this paragraph.*

(Emphasis added); *see also Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003). Section 552(a)(6)(A)(i) provides the relevant time limit, requiring the responding agency to

> determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request *whether to comply* with such request and shall immediately notify the person making such request of such determination *and the reasons therefor*, and of *the right of such person to appeal to the head of the agency any adverse determination.*

(Emphasis added). When an agency responds to a FOIA request after the twenty-day window has passed but before the requesting party files suit, the exhaustion requirement is renewed. *Judicial Watch*, 326 F.3d at 1310; *see also Oglesby*, 920 F.2d at 64 ("Once the agency responds to a FOIA request, the requester must exhaust his administrative remedies before seeking judicial review."). Constructive exhaustion is not intended to supplant the agency's authority under the FOIA with premature judicial oversight. *See Lowe v. DEA*, No. 06-1133, 2007 WL 2104309, at *4 (D.D.C. July 22, 2007) (citing *Oglesby*, 920 F.2d at 64 n. 8).

9

## 2. Sufficiency of a "Determination" under the FOIA

The entirety of Plaintiff's opposition on this point rests on the argument that a response from an agency is not a "determination"—for purposes complying with § 552(a)(6)(A)(i) or triggering the renewed duty to exhaust administrative remedies—unless it is the final substantive response, including a notice of the requesting party's right to appeal. Under Plaintiff's view, notice that the agency is processing the request and intends to produce responsive documents, as the FEC provided in this case, is inadequate and the requesting party is entitled to invoke constructive exhaustion after the twenty day period has expired. However, neither the plain text of the statute nor the case law in this Circuit supports Plaintiff's construction.

First, Plaintiff purports to take a "plain language approach" to § 552(a)(6)(A)(i) by relying not on the text of the statute, but on the "Guide to the Freedom of Information Act," published by the Department of Justice. Pl.'s Opp'n at 18. Without further elaboration, the Guide concludes "[a]n agency response that merely acknowledges receipt of a request does not constitute a 'determination' under the FOIA in that it neither denies records nor grants the right to appeal the agency's determination." U.S. Dep't of Justice, Guide to the Freedom of Information Act, 743 (2009 ed.), available at http://www.justice.gov/oip/foia_guide09.htm. Besides the curious basis for this conclusion cited in the Guide (a single district court case from the District of Alaska), the Guide fails to elaborate on what *would* amount to a "determination" under the FOIA. The plain text of the actual statute indicates three things are required in the notice to the requesting party: (1) whether the agency intends to comply with the request; (2) the reasons for the agency's compliance or non-compliance; and (3) notice of the right to appeal *if* the determination was adverse. Relatedly, § 552(a)(6)(C)(i) requires that "[u]pon any

determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request," would guard against any abuse by responding agencies. Clearly, the FOIA does not require the responding agency to respond and produce responsive documents within twenty days in order to require exhaustion of administrative remedies. Rather, in the event the agency intends to produce documents in response to the request, the agency need only (1) notify the requesting party within twenty days that the agency intends to comply; and (2) produce the documents "promptly." In this case, the FEC did more than acknowledge receipt of Plaintiff's request before it filed suit. CREW concedes that within *two days* of transmitting the request to the FEC, the FEC agreed to produce responsive documents on a rolling basis. Rappaport Decl. ¶ 3. The FEC was also reasonably prompt in producing documents to CREW: the parties did not finalize the scope of CREW's request until April 4, 2011 (Rappaport Decl. ¶¶ 8-9; Pl.'s Ex. C at 2); the FEC performed the relevant searches and began reviewing potentially responsive documents within four weeks (Rappaport Decl. ¶ 9); and the FEC produced the responsive documents six weeks later (Pl.'s Exs. C, D). Ten weeks to search, review, and produce documents in response to relatively broad requests in this context is not unreasonably long as to require a finding of constructive exhaustion.

The Court of Appeals confirmed this is the proper interpretation of the FOIA; it held that an agency's response "is sufficient for purposes of requiring an administrative appeal if it includes: the agency's determination of whether or not to comply with the request; the reasons for its decision; and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse." *Oglesby*, 920 F.2d at 65. Several other courts have found

11

that the plaintiffs failed to constructively exhaust their administrative remedies, even where the responding agencies provided no indication of its intent to comply prior to the plaintiffs filing suit, as the FEC did here.  In *Love v. FBI*, 660 F. Supp. 2d 56, the plaintiff sent FOIA requests to various federal agencies, including the Executive Office of the United States Attorney and the Drug Enforcement Agency.  The EOUSA responded that it would comply with the request.  *Id.* at 57.  The DEA indicated it would "process" the request, but that there would be some delay in responding.  *Id.* at 58.  Neither agency produced any documents before the plaintiff filed suit.  *Id.*  Judge Reggie B. Walton concluded that the responses provided precluded the plaintiff from asserting constructive exhaustion, and therefore granted summary judgment in favor of the defendants.  *Id.* at 59-60.  The Court finds Judge Walton's reasoning in *Love* persuasive.

Similarly, in *Percy Squire Co., LLC v. FCC*, the court found that the FCC cured its initial failure to timely respond to plaintiff's FOIA request when it agreed to a "phased response for the tens of thousands of pages of documents" which were responsive to the request, and thus constructive exhaustion was not applicable.  No. 2:09-cv-428, 2009 WL 2448011, at *4-5 (S.D. Ohio Aug. 7, 2009); *see also Cabreja v. U.S. Citizenship and Immigration Serv.*, No. 08-1992, 2008 WL 4933649, at *1, n.1 (D.D.C. Nov. 19, 2008) (holding plaintiff had not constructively exhausted administrative remedies where the USCIS "acknowledged the request, assigned a project number, and informed [plaintiff] that his request had been assigned to the 'complex' track"); *Bonner v. Soc. Sec. Admin.*, 574 F. Supp. 2d 136, 137-39 (D.D.C. 2008) (noting "there is no dispute" that plaintiff failed to exhaust administrative remedies with respect to request to, among other defendants, the VA, which sent plaintiff letters indicating it had received his request and it was in the queue for processing).  *Cf. In Defense of Animals v. NIH*, 543 F. Supp. 2d 83,

96-97 (D.D.C. 2008) (finding plaintiff constructively exhausted its remedies where "Defendants did not indicate their decision to comply or not comply with Plaintiff's entire request until after Plaintiff filed suit").

Plaintiff argues the weight of controlling case law requires the Court to find it constructively exhausted its administrative remedies. However, Plaintiff does not cite any case in this Circuit (or any other court for that matter), that supports its reading of the constructive exhaustion requirement. Rather, Plaintiff attempts to distinguish two cases underlying the case Defendant cites. Specifically, Plaintiff argues the Court should reject the holding in *Petit-Frere v. U.S. Attorney's Office for the Southern District of Florida*, 664 F. Supp. 2d 69 (D.D.C. 2009). In *Petit-Frere*, the plaintiff submitted a FOIA request to the United States Attorney's Office in Miami in June 2008. The Executive Office for the United States Attorney received the forwarded response from the US Attorney's Office, and responded to plaintiff on August 28, 2008 indicating that it could take approximately nine months to process the request. *Id.* at 70. Ten months later, having failed to receive any further response, the plaintiff appealed to the Department of Justice's Office of Information and Privacy ("OIP"). The OIP responded that since there was no adverse determination, there was nothing to review on appeal. *Id.* The plaintiff then filed suit. Judge Richard W. Roberts concluded that since the EOUSA submitted a response in August 2008, plaintiff was required to exhaust his administrative remedies before filing suit, and dismissed the case. *Id.* at 71-72.

Plaintiff's primary argument is that Judge Roberts improperly relied on two cases in reaching the decision in *Petit-Frere*: *Spannaus v. U.S. Department of Justice*, 824 F.2d 52 (D.C. Cir. 1987), and *Oglesby*. To be fair, this Court cannot find a principled way to distinguish the

holding in *Petit-Frere* from *Spannaus*, which found that a letter acknowledging receipt of a FOIA request and indicating the request would be forwarded to FBI Headquarters was not a "determination" under § 552(a)(6)(A)(i). The response from the EOUSA in *Petit-Frere* did little more as it simply acknowledged the request and indicated the possible time frames for processing. *See Petit-Frere v. U.S. Atty's Office for the So. Dist. of Fla*, No. 09-1732, Compl. Ex. C. However, the Court of Appeals in *Oglesby* indicated it was still an open question as to whether a response indicating the agency was "processing" a claim was a sufficient determination to satisfy the time limits provided in FOIA. *See* 920 F.2d at 69. The *Oglesby* court did not resolve the issue because in the case before it, the FBI responded further with an final adverse decision before the plaintiff filed suit, thus renewing plaintiff's obligation to exhaust administrative remedies. Ultimately, the adequacy of a response indicating a request is being "processed" is irrelevant to this case, as the FEC indicated it would in fact produce records in response to CREW's request. Thus the FEC provided the response that the *Oglesby* court noted is a sufficient "determination" under the FOIA to trigger the administrative exhaustion requirement, and the Court need not rely on *Petit-Frere* to reach this conclusion.

        3.        *Open America* Stays and Exhaustion

Plaintiff next argues that Congress intended to allow direct access to the courts in the face of agency delay. As noted above, § 552(a)(6)(C)(i) provides that if an agency "fails to comply with the applicable time limit[s]," the requesting party is deemed to have constructively exhausted its administrative remedies. This section continues, stating "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time

14

to complete its review of the records." The Court of Appeals in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976) interpreted the phrase "exceptional circumstances" to include agency backlog in processing FOIA requests, so long as the agency shows it is "exercising due diligence" in processing the backlogged requests. *Id.* at 616.

Curiously, Plaintiff never cites § 552(a)(6)(C)(i) in support of this argument, and seems to believe that the stays are a creation of the Judiciary. *See* Pl.'s Opp'n at 18. In any case, Plaintiff contends that requiring exhaustion in cases such as this "would deprive this judicially sanctioned approach of any utility." *Id.* This is incorrect. Under the Court's interpretation of the § 552(a)(6)(A), requesting parties still have immediate access to the courts in the event that the agency fails to (1) respond at all; or (2) merely indicates it is "processing" the request, but does not indicate whether the agency will comply.[3] The Court is not unsympathetic to the Plaintiff's concern that this interpretation could theoretically lead to the situation where, as in *Petit-Frere*, the agency failed to produce documents for nearly a year, yet the requesting party was still unable to seek judicial intervention. The Court notes that adherence to the language of the third sentence of § 552(a)(6)(C)(i), which requires "prompt" production of responsive documents if an agency intends to comply with the request, will guard against any abuse by responding agencies.

Furthermore, the rationale underlying the exhaustion requirement itself supports requiring CREW to exhaust its remedies in this case.

---

[3] Under *Petit-Frere*, the "processing" response would require administrative exhaustion, but the Court does not go so far in this case because the FEC's response indicated it would comply with the request, not that the request was merely being "processed."

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

*Weinberger v. Salfi*, 422 U.S. 749, 765 (1975). Exhaustion also plays an important role in ensuring consistency in responding to FOIA requests. As the Court of Appeals explained:

> Allowing a FOIA requester to proceed immediately to court to challenge an agency's initial response would cut off the agency's power to correct or rethink initial misjudgments or errors. The extra several weeks consumed in processing an administrative appeal to completion must surely have been thought a tolerable price to ask from a requester who has already chosen to wait for a response from the agency. If there is to be any uniformity in FOIA interpretations within a given agency, and if agencies are to have an opportunity to revise their responses in light of intervening responses to the same FOIA request by other agencies, such uniformity can best be afforded through the administrative appeal process.

*Oglesby*, 920 F.2d at 133-34. Thus, a finding of constructive exhaustion is not appropriate where it would be "contrary to orderly procedure and good administration and unfair to those who are engaged in the tasks of administration to decide an issue which [an agency] never had a fair opportunity to resolve prior to being ushered into litigation." *Lowe*, 2007 WL 2104309, at *4 (quoting *Dettmann v. U.S. Dep't of Justice*, 802 F.2d 1472, 1476 (D.C. Cir. 1986)) (internal quotation marks omitted). Here, the FEC has not had the opportunity to address any of the objections CREW lodges to scope of the production, adequacy of the searches, or claimed exemptions and withheld documents. Providing the FEC the opportunity to review CREW's objections through the administrative appeals process would among other things allow the agency time to correct any errors alleged by CREW, and create a full record for the Court to review should CREW seek additional review of the FEC's decision. Requiring exhaustion in this case will only further the ends of justice.

16

In sum, both the text of the relevant provisions and case law show the FEC's response prior to May 23, 2011, was sufficient to require CREW to exhaust its administrative remedies within the FEC before filing suit. None of Plaintiff's arguments to the contrary are persuasive. The FEC provided notice within two days that it intended to comply with CREW's request, and worked diligently with CREW to clarify and narrow the scope of the requests, then to perform searches, to review, and ultimately to produce responsive documents. This was a sufficient response as required by the FOIA, and thus CREW cannot claim to have constructively exhausted its administrative remedies.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss for lack of subject matter jurisdiction is DENIED. Although Plaintiff's claims regarding the timeliness of the FEC's response to its FOIA request were rendered moot by the agency's response, the Court retains subject matter jurisdiction over the issue of the adequacy of the FEC's response. Defendant's motion for summary judgment for failure to exhaust administrative remedies is GRANTED. Defendant provided an adequate "determination" prior to Plaintiff filing suit, and thus Plaintiff is required to exhaust its administrative remedies within the FEC before challenging the adequacy of the FEC's response in this Court. Therefore the Court shall dismiss the case in its entirety.

An appropriate Order accompanies this Memorandum Opinion.

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge