**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 11-0951 (CKK) |
| FEDERAL ELECTION COMMISSION, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

**STATEMENT**

A landmark ruling by the U.S. Court of Appeals for the D.C. Circuit in this lawsuit

resolved an important procedural question governing all FOIA requesters under the Freedom of

Information Act (FOIA), specifically when a FOIA requester must exhaust administrative appeal

remedies before filing suit in district court.  Plaintiff CREW[1] achieved this significant victory by

advancing an interpretation of the FOIA the D.C. Circuit characterized as "sensibly

harmoniz[ing] the FOIA's provisions in a "comprehensive scheme."  *CREW v. FEC*, 711 F.3d

180, 189 (2013).  By contrast, the appellate court roundly rejected the statutory construction

advanced by defendant Federal Election Commission (FEC) and the U.S. Department of Justice

(DOJ) as "not squar[ing] with the statute," *id.* at 87, and "seek[ing] to jam into FOIA" a "Catch-

22."  *Id.* at 186.  This ruling establishes plaintiff's eligibility for attorneys' fees and costs as a

"substantially prevailing" party under the FOIA.  Further bolstering plaintiff's eligibility for fees

and costs is the fact that only upon filing a complaint was CREW able to obtain the information

_____

[1] CREW is the acronym for Citizens for Responsibility and Ethics in Washington.

it sought through its FOIA request.  The nexus between the filing of CREW's complaint and the

FEC's disclosure of documents demonstrates CREW's eligibility for a fee award here.

CREW is both eligible for fees and entitled to fees under the four-factor balancing test

this Circuit applies.  The public derived a significant benefit from the D.C. Circuit's ruling,

which the court itself characterized as an "important procedural question." *Id.* at 185 n.4.

Because of this ruling, agencies no longer can subject requesters to the Catch-22 situation of

indefinitely awaiting an agency determination, with no ability to resort to judicial relief.

Moreover, CREW derives no commercial benefit from this ruling, as CREW files requests to

serve the public interest in obtaining information on important issues of government

accountability and conduct, thereby advancing a fundamental purpose of the FOIA.  Further, the

D.C. Circuit's categorical rejection of every argument advanced by the FEC and DOJ

demonstrates the unreasonableness of the government's position.  Thus, every factor weighs in

favor of plaintiff's entitlement to fees.

Similarly, the documents the FEC released to CREW only after CREW filed its lawsuit

shed light on some of the outside influences brought to bear on FEC commissioners.  This

information is of particular public interest given those commissioners' clear intent to use their

positions at the FEC to block enforcement of campaign finance laws and the public concern with

the dwindling efficacy of the FEC.

The FEC nevertheless has communicated to CREW its objection to any fee award based

apparently on the lack of any prior precedent concerning what constitutes an agency

"determination" under the FOIA.  That the D.C. Circuit never before had ruled on this issue,

however, does not establish the reasonableness of the agency's position and thereby defeat

CREW's fee request.  Indeed, the D.C. Circuit made quite clear the total lack of merit in the

FEC's arguments, which were unsupported by case law or the statute itself.  Moreover, awarding

CREW its fees and costs here advances the purposes of the FOIA's fee provisions.  Under these

circumstances, the Court should grant this motion.

## **FACTUAL BACKGROUND**[2]

On March 7, 2011, CREW sent by facsimile a FOIA request to the FEC seeking

correspondence between three named FEC commissioners and outside entities and parties;

calendars and agendas for the three commissioners; all written *ex parte* communications

delivered to an ethics official by the three commissioners or someone acting on their behalf; and

statements setting forth the substance and circumstance of any *ex parte* communication prepared

by the three commissioners or someone acting on their behalf.  By email sent March 8, 2011, the

FEC acknowledged receipt of CREW's request and indicated the agency had granted CREW's

request for a fee waiver.

Over the next several months, the parties engaged in a number of discussions about the

scope of CREW's request.  As a result of those discussions, CREW agreed to exclude certain

categories of requested documents from the agency's initial search, and to revisit the full scope

of its request after reviewing what the FEC produced as part of this initial production.  The FEC

agreed to CREW's request that it produce non-exempt documents on a rolling basis.  The

agency, however, failed to provide CREW at any point with a date certain by which it would

---

[2] The facts set forth below already have been presented to this Court in the briefing on the FEC's motion to dismiss or for summary judgment.  *See generally CREW v. FEC*, 839 F. Supp. 2d 17 (D.D.C. 2011).  Accordingly, this section merely summarizes the facts most relevant to CREW's fee petition.

begin or complete document production.

Nearly two months after CREW submitted its request, the FEC for the first time advised CREW it had culled an initial batch of responsive documents and promised production within two weeks and a timetable for completing disclosures within the week. CREW continued to press the FEC for a status update and timetable for completing processing, but had no success in securing either. By May 23, 2011, more than two months after CREW filed its request, CREW had neither received any documents nor any specification from the FEC about what documents it would produce, when, and what exemptions the FEC would claim. CREW therefore filed suit in district court on that date, alleging the FEC had failed to respond to CREW's request in a timely fashion and had wrongfully withheld documents under the FOIA.

Once in litigation, the FEC made three separate productions of responsive documents, culminating in what it characterized as a final production on June 23, 2011. The first production coincided with the filing of the FEC's answer, while the third and purportedly final production coincided with the FEC's motion to dismiss CREW's complaint or, in the alternative, for summary judgment based on a claim the case was moot and CREW had failed to exhaust administrative remedies before filing suit. Letters accompanying the first and second productions stated they were not final agency decisions subject to appeal; a letter accompanying the final production advised CREW of its right to appeal administratively any adverse determination. In all, the FEC produced 835 pages of documents, withheld portions of 219 pages pursuant to Exemptions 2, 4, 6, and 7(C), deemed 25 pages non-responsive, and withheld an unknown number of records in their entirety pursuant to Exemption 6.

After briefing on the FEC's motion, this Court concluded the case was not moot, but

granted the FEC's motion for summary judgment based on a finding CREW had failed to exhaust administrative appeal remedies.  CREW filed a timely appeal from this ruling.  When it emerged at the oral argument before the D.C. Circuit that the FEC had never consulted DOJ on the merits of the agency's position the court, on its own motion, invited DOJ to file a brief expressing the views of the United States on this case.  *CREW v. FEC*, USCA Dkt. 1399979 (Oct. 16, 2012).  DOJ accepted this invitation and filed a brief making essentially the same arguments the FEC had made in support of its view the FOIA required CREW to exhaust administrative appeal remedies before filing suit.

By opinion dated April 2, 2013, the D.C. Circuit held "the FEC did not make and communicate a 'determination' within the meaning of 5 U.S.C. § 552(a)(6)(A)(i) within 20 working days of receiving CREW's FOIA request."  711 F. 3d at 190.  The appellate court accordingly concluded CREW "is deemed to have exhausted its administrative appeal remedies under *Section 552(a)(6)(C)(i)*, and its suit may proceed," and remanded this case "for further proceedings."  *Id.* (emphasis in original).

On remand, the parties engaged in settlement discussions and were able to resolve all outstanding issues regarding the merits of CREW's FOIA request.  The issue of CREW's eligibility and entitlement to an award of attorneys' fees and costs, however, remains.

## ARGUMENT

### I.  AS A SUBSTANTIALLY PREVAILING PARTY CREW IS ELIGIBLE FOR AN AWARD OF FEES AND COSTS.

The FOIA authorizes a court to "assess against the United States reasonable attorney's fees and other litigation costs reasonably incurred in any case under [the Act] in which the complainant has substantially prevailed."  5 U.S.C. § 442(a)(4)(E)(i).  With this attorney fee

provision Congress intended

> 'to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation.'

*Davy v. CIA*, 550 F.3d 1155, 1158 (D.C. Cir. 2008), *quoting Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C. Cir. 1977) (*citing* S. Rep. No. 98-854, at 17).

Congress amended the attorney fee provisions of the FOIA through the OPEN Government Act of 2007, Pub. L. No. 110-175, § 4(a), 121 Stat. 2524, 2525, to provide in relevant part:  "a complainant has substantially prevailed if the complainant has obtained relief through . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  *Id.* at § 4(a)(2), *codified at* 5 U.S.C. § 552(a)(4)(E)(ii).  Congress enacted this amendment to restore the "substantially prevailed" standard in effect before the Supreme Court's decision in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001).[3]

Unquestionably plaintiff here has substantially prevailed within the meaning of the OPEN Government Act of 2007, making it eligible for a fee award.  First, through this litigation plaintiff obtained a landmark procedural ruling clarifying the kind of agency response that qualifies as a "determination" under § 552(a)(6)(A)(i) of the FOIA, which triggers the

---

[3] In *Buckhannon* the Supreme Court interpreted "prevailing party" language in a statute the D.C. Circuit characterized as comparable to the FOIA to hold a plaintiff is entitled to a fee award only where the plaintiff received relief from the court through either a judgment on the merits or a court-ordered consent decree.  *See Oil, Chemical & Atomic Workers Internat'l Union v. Dep't of Energy*, 288 F.3d 452, 455-57 (D.C. Cir. 2002) (explaining effect of *Buckhannon* on FOIA's fee shifting provision).

requirement to exhaust administrative appeal remedies before filing suit.  On a micro level, this

ruling changed the legal relationship between the parties, as it resurrected CREW's lawsuit,

placing a burden on the FEC to justify each of its withholdings on the merits.  *Compare*

*Edmonds v. FBI*, 417 F.3d 1319, 1326-27 (D.C. Cir. 2005) ("substantially prevail" requirement

satisfied where plaintiff has "succeed[ed] on any significant issue in litigation, achieving some of

the benefits the parties sought in bringing the suit.").  Even more significantly, on a macro level

the filing of this lawsuit and the invocation of judicial powers to resolve an important issue of

statutory construction created a legal precedent that inured to the benefit of all FOIA requesters.

*See Halperin v. Dep't of State*, 565 F.2d 699, 706 n.11 (D.C. Cir. 1977) (plaintiff who

established through lawsuit that press conference transcripts were subject to the FOIA

substantially prevailed "by making the Department aware of the laws it must observe").  As in

*Halperin*, CREW has made the FEC and all other agencies aware of the legal definition of a

"determination" under the FOIA, and therefore qualifies as a "substantially prevailing" party.

Just as clearly, plaintiff's claims here are "not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).

To the contrary, the D.C. Circuit adopted all of plaintiff's reasoning regarding the meaning of

"determination" under the FOIA to hold:

> In order to make a 'determination' and thereby trigger the adminis-
> trative exhaustion requirement, the agency must at least: (i) gather
> and review the documents; (ii) determine and communicate the
> scope of the documents it intends to produce and withhold, and
> the reasons for withholding any documents; and (iii) inform the
> requester that it can appeal whatever portion of the 'determination'
> is adverse.

711 F.3d at 188.  Under these circumstances, where as a result of the D.C. Circuit's ruling

plaintiff has now established a claim for relief under the FOIA based on the FEC's failure to

make a "determination" within 20 business days of receiving plaintiff's FOIA request, plaintiff has substantially prevailed on a "not insubstantial" claim.

Second, through this litigation CREW obtained hundreds of pages of documents the agency refused to disclose until CREW filed suit.  As the background to this matter makes clear, the filing of this lawsuit was the catalyst creating a change in the defendant's behavior that inured to plaintiff's benefit, specifically the production of requested documents, making CREW a "substantially prevailing" party.  *See Elec. Privacy Information Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 232 (D.D.C. 2011) ("The key question" under the FOIA's catalyst theory "is whether 'the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation.'" (citation omitted)).  Under this so-called "catalyst theory," *Summers v. Dep't of Justice*, 569 F.3d 500, 502 (D.C. Cir. 2008), a FOIA plaintiff establishes its eligibility for a fee award by showing:  (1) it filed a FOIA request with an agency; (2) the agency failed to disclose the requested records; (3) the plaintiff sued under the FOIA; and (4) after the suit was filed, the agency voluntarily or unilaterally changed its position.  *Judicial Watch v. Bur. of Land Mgmt.*, 610 F.3d 747, 749 (D.C. Cir. 2010).

CREW satisfies each of these prerequisites here.  Specifically, despite multiple pre-litigation promises to produce documents, the FEC did not produce a single document until after CREW filed suit, and then timed its productions to coincide with its answer and motion to dismiss.  These events make clear the agency chose to do nothing until suit was filed and, even then, controlled the timing of its productions to enhance its litigation posture, further reinforcing the link between the filing of the lawsuit and the agency's production of documents.

Under similar facts the district court in Judicial Watch, Inc. v. Bureau of Land Mgmt.

concluded the plaintiff had substantially prevailed for purposes of a fee award.  There, as here, the agency had reneged multiple times on a promise to release information – what the court characterized as a "lackadaisical response" – and did not disclose requested documents until shortly after the lawsuit was filed.  562 F. Supp. 2d at 173.  These facts established "a causal connection between the filing of the complaint and the release of documents," making the requester eligible for a fee award.  *Id.*  The D.C. Circuit reversed this opinion as erroneously applying retroactively the more lenient fee standard set forth in the OPEN Government Act of 2007, rather than the "old," more stringent standard.  *Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 610 F.3d 747, 749 (D.C. Cir. 2010). The appellate court was careful to note, however, "[i]f the 2007 Act were applied to these facts, it would attach new legal consequences to the Bureau's disclosure of the records."  *Id.* at 750.  In other words, while disclosing records after suit is filed would not establish eligibility for attorney fees under the old standard, these same facts compel a different legal conclusion under the standard set forth in the 2007 Act.  *See also Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 232-33 (D.D.C. 2012) (plaintiff eligible for a fee award where agency's document productions, accompanying its motion for summary judgment and reply, "resulted from a review of records that the DOJ conducted 'in the course of preparing' litigation documents in response to [the] FOIA suit, which indicates that the records would not have been released but for this litigation.").

## II.  PLAINTIFF IS ENTITLED TO AN AWARD OF FEES AND COSTS.

Once eligible, a FOIA plaintiff must demonstrate its entitlement to a fee award.  The D.C. Circuit has directed courts to employ a four-factor balancing test to determine a FOIA plaintiff's entitlement that considers:

(1) the public benefit derived from the case; (2) the commercial
benefit to the plaintiff; (3) the nature of the plaintiff's interest in
the records; and (4) the reasonableness of the agency's withhold-
ing of the requested documents.

*Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093-94 (D.C. Cir. 1992).[4]  As the D.C.

Circuit has explained, "[e]ssentially, the first three factors assist a court in distinguishing

between requesters who seek documents for public informational purposes and those who seek

documents for private advantage."  *Davy v. CIA*, 550 F.3d at 1160.  Here, the balancing of these

four factors clearly supports awarding CREW its attorney fees and costs.

### A.  The Public Derived A Significant Benefit From The Legal Precedent CREW's Lawsuit Established And Disclosure Of The Requested Records.

In determining whether the "public benefit" factor weighs in favor of granting a fee

award, the court looks to whether "'the complainant's victory is likely to add to the fund of

information that citizens may use in making vital political choices.'"  *Cotton v. Heyman*, 63 F.3d

1115, 1120 (D.C. Cir. 1995) (citing *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979)).

Plaintiff's successes in this lawsuit satisfy this requirement in two ways.  First, CREW obtained

a procedural ruling clarifying a key part of the FOIA, specifically an agency's obligation to make

---

[4] Several D.C. Circuit judges have questioned the four-factor test as having no basis in the statutory text of the FOIA.  For example, in his dissent in *Davy v. CIA*, Judge Randolph characterized the four-factor test as "a legal relic . . . derived not from the statute but from statements in committee reports" "inconsistent with now-settled FOIA law that the identity of the requester is irrelevant."  550 F.3d at 1166.  Similarly, in a concurring opinion in *Morley v. CIA*, Judge Kavanaugh advocated for "ditch[ing] the four-factor standard" as "arbitrary and inconsistent with the structure and purposes of FOIA," 2013 U.S. App. LEXIS 12243, *4 (D.C. Cir. June 18, 2013), and "so vague and malleable that they [the four factors] provide very little guidance to district courts."  *Id.* at *8.  The ultimate effect is to "undermine[] whatever incentive the four-factor standard is supposed to create in the first place for plaintiffs with meritorious FOIA claims."  *Id.*

a determination within 20 business days.  This pivotal decision has government-wide

implications for agencies and requesters alike; as a result of the D.C. Circuit's ruling, requesters

will have the access to judicial relief intended by Congress when it enacted the FOIA.  The net

effect is to enhance the public's access to vital information about what our government is up to

and why.  The significance and widespread effect of this ruling plainly satisfy the first factor for

entitlement to a fee award.

Second, through this lawsuit CREW obtained never-before released documents on a

matter of great public interest that shed light on the propriety of government conduct and the

influences brought to bear on government officials.  *See Davy v. CIA*, 550 F.3d at 1159-60.  The

hundreds of pages of documents CREW finally received from the FEC after filing suit added

significantly to the body of evidence that the Republican FEC commissioners worked in concert

with outside allies to thwart the FEC's mission based on their opposition to the federal regulation

of campaign spending.  *See* Documents Show Republican FEC Commissioners Working In

Concern With Outside Allies, *available at*

http://crew.3cdn.net/e96220a7af6a2d0143_eum6bx04c.pdf.  For example, the newly disclosed

documents suggest Commissioner Donald McGahn may have engaged in *ex parte*

communications with Cleta Mitchell, a prominent Republican campaign attorney, concerning a

pending FEC rulemaking proceeding for revising regulations on coordinated communications.

*Id.*  More broadly, the documents reveal the support of Republican lawyers and outside groups

for the agenda of the three Republican commissioners.  *Id.*

When considered with the other publicly available information documenting the refusal

of the three Republican commissioners in the vast majority of enforcement matters to enforce the

laws they are charged with enforcing, a fuller picture emerges about who is influencing that

inaction.  CREW has rounded out that picture through its FOIA request and the documents the

request generated, thereby providing the public with a substantial benefit.

> **B.  CREW Derives No Commercial Benefit From The Procedural
> Ruling and Disclosures It Obtained From This Lawsuit, And
> Instead Shares The Public Interest In The Ruling And The
> Contents Of The Disclosed Documents.**

The "commercial benefit" and "plaintiff's interest" factors are closely related and

typically considered together.  *Tax Analysts*, 965 F.2d at 1095.  Here, CREW is a nonprofit

corporation organized under section 501(c)(3) of the Internal Revenue Code.  Complaint, ¶ 4.

CREW is committed to protecting the right of citizens to be informed about the activities of

government officials and to ensuring the integrity of government officials.  *Id.*  To advance its

mission CREW uses research based in part on government records made available to it under the

FOIA.  *Id.*  CREW disseminates publically all documents it acquires from its FOIA requests,

including those at issue here, through its own website as well as another website on which

CREW posts documents for public review at no charge.  Complaint, ¶ 6.  CREW filed the FOIA

request at issue in this public interest capacity.

Further, CREW has no commercial interest in the requested documents.  As CREW

explained in justifying its request for fee waiver (which the FEC granted), CREW sought the

documents at issue expressly for public dissemination on an issue of public importance.  CREW

has now disseminated the documents it acquired from these FOIA requests on its website and on

www.scribd.com at no charge, and published on its website a free report based on information it

gleaned from the released documents, Documents Show Republican FEC Commissioners

Working In Concern With Outside Allies, *available at*

http://crew.3cdn.net/e96220a7af6a2d0143_eum6bx04c.pdf.  As an entity that "gathers

information of potential interest to a segment of the public, uses [its] editorial skills to turn the

raw materials into a distinct work, and distributes that work to an audience," CREW is "among

those whom Congress intended to be favorably treated under FOIA's fee provisions."  *Davy v.

CIA*, 550 F.2d at 1161-62, *quoting Tax Analysts*, 965 F.2d at 1095-96.  *See also CREW v. U.S.

Dep't of Justice*, 820 F. Supp. 2d 39, 45 (D.D.C. 2011).

 Awarding CREW its attorney fees here would further the underlying purpose of the

FOIA's fee provision:  "encourag[ing] Freedom of Information Act suits that benefit the public

interest."  *LaSalle Extension Univ. v.  Fed. Trade Comm'n*, 627 F.2d 481, 484 (D.C. Cir. 1980).

*See also Davy v. CIA*, 550 F.3d at 1160-61 ("'a court would generally award fees if the

complainant's interest in the information sought was scholarly or journalistic or public-interest

oriented, [unless] . . . his interest was of a frivolous or purely commercial nature.'") *(quoting

Fenster v. Brown*, 617 F.2d 740, 742 n.4 (D.C. Cir. 1979)); *CREW v. U.S. Dep't of Justice*, 820

F. Supp. 2d at 46.  Under these circumstances, CREW, as an entirely non-commercial entity

serving the public interest exclusively, satisfies the second and third factors for a fee award.

   **C.  DOJ's Interpretation Of The FOIA's 20-Business Day
    "Determination" Requirement And Its Withholding Of
    Requested Documents Until CREW Filed Suit Lacked
    A Reasonable Basis In Law.**

 The fourth factor in the balancing test "considers whether the agency's opposition to

disclosure 'had a reasonable basis in law,' and whether the agency 'had not been recalcitrant in

its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Davy v. CIA*, 550

F.3d. at 1162 (citations omitted).  When measured against this standard, the FEC's conduct here

was unreasonable.

First, the FEC advanced an interpretation of the 20 business day determination requirement that has no basis in law and, in fact, conflicts with the statutory text, other provisions of the FOIA, and the FOIA's purpose.  The FEC argued here that all the FOIA requires an agency to do within 20 business days is advise the requester "that the agency will produce non-exempt responsive documents and claim exemptions in the future."  *CREW v. FEC*, 711 F.3d at 182.  To the contrary, as the D.C. Circuit explained, "[f]our aspects of the statute . . . demonstrate that the FEC's . . . interpretation is incorrect."  *Id.* at 186.  First, the FOIA's "requirement that the agency provide 'the reasons' for its 'determination' strongly suggests that the reasons are particularized to the 'determination' – most obviously the specific exemptions that may apply to certain withheld records.  *Id.*  Second, the FOIA requires agencies to "immediately notify the requester of the right 'to appeal to the head of the agency any adverse determination.'" *Id.*  This further indicates the "'determination' must be substantive, not just a statement of a future intent to produce non-exempt responsive documents," as the FEC claimed. 711 F.3d at 182.  Indeed, the D.C. Circuit deemed this a "critical point" that "both highlights and unravels the maneuver that the FEC (backed by the Department of Justice) is attempting here." *Id.*  Third, the "'unusual circumstances' safety valve in the statute that permits agencies to extend their time to make a determination by an additional 10 days in certain circumstances would be "a worthless addendum to the statute" under the FEC's interpretation.  *Id.* at 187, 188. And finally, the "'exceptional circumstances' safety valve" likewise would be unnecessary under "the FEC's theory of the statute."  *Id.* at 188.  For all these reasons, the D.C. Circuit rejected the government's interpretation of the statute and sided with CREW to adopt a "reading of 'determination' that sensibly harmonizes the default 20-working-day-timeline, the unusual

circumstances safety valve, the exceptional circumstances safety valve, and the prompt production requirement." 711 F.3d at 189.

Most notably, none of the arguments advanced by the government had any sway with the D.C. Circuit, which instead agreed with CREW in all respects. In fact, the court addressed the government's arguments in a fairly dismissive manner, characterizing them variously as "not squar[ing] with the statute," 711 F.3d at 186, creating an "impermissible Catch-22," *id.*, constituting an attempted "maneuver," *id.* at 182, and advancing the agency's interest in "keep[ing] FOIA requests bottled up in limbo for months or years on end," a result "the statute simply does not countenance." *Id.* at 187. Further the appellate court indicated this case presented no close question. To the contrary, while the court noted "we have not had occasion to previously decide this important procedural question," that was because "in part . . . individual FOIA requesters apparently have not thought it worth the candle to press this point . . ." *Id.* at 185. Moreover, the court noted two previous decisions of this Circuit, *Spannaus v. DOJ*, 824 F.2d 52 (D.C. Cir. 1987), and *Oglesby v. Dep't of the Army*, 920 F.2d 57 (D.C. Cir. 1990), neither analyzed nor described "the contours of what constituted a 'determination,'" 711 F.3d at 185, and therefore provided no precedent for the question before it.[5]

That this Court reached the opposite conclusion when first presented this issue does not

---

[5] In its finding below this Court relied on *Oglesby* in accepting the FEC's interpretation of "determination" under the FOIA. *CREW v. FEC*, 839 F. Supp. 2d 17, 27 (D.D.C. 2011) ("the FEC provided the response that the *Oglesby* court noted is a sufficient 'determination' under the FOIA to trigger the administrative exhaustion requirement."). As the D.C. Circuit's opinion makes clear, however, that reliance was misplaced. By contrast, in *Cotton v. Heyman*, the D.C. Circuit found the agency's position was reasonable, even though it lost before the district court, because the agency "could reasonably interpret our precedent to support its position." 63 F.3d at 1123. No such reasonable interpretation is present here.

negate CREW's entitlement to a fee award.  The reasonableness of the agency's position must be assessed by reference to the finding of the D.C. Circuit, which found the FEC's position entirely without merit.  In fact, while this Court rested its decision on "the plain text of the statute" and "the case law in this Circuit," *CREW v. FEC*, 839 F. Supp. 2d at 25, the D.C. Circuit found explicitly both the statute and the case law conflict directly with the agency's position and compelled the opposite result.  Moreover, if an adverse district court decision alone could defeat a fee award, a FOIA requester successful at the appellate level could never recover fees, no matter how erroneous the decision of the district court.  Neither the statute nor interpretative case law supports such an outcome.[6]

Second, the FEC's failure to produce any responsive documents until CREW filed suit is unreasonable.  The FOIA unequivocally requires agencies within 20 business days of receiving a FOIA request to determine "whether to comply with such request" and to "immediately notify" the requester "of such determination."  5 U.S.C. § 552(a)(6)(A)(I).  In "unusual circumstances" – defined as the need to search field offices, matters involving voluminous records, and the need

---

[6] *Tax Analysts* is not to the contrary.  In that case, the D.C. Circuit agreed with the district court that the plaintiff was not entitled to a fee award even though the plaintiff had prevailed on the merits before both the D.C. Circuit and the Supreme Court.  While the D.C. Circuit cited to the district court's merits decision to support its conclusion the agency position was not unreasonable, that was just one of a number of factors on which the appellate court relied.  965 F.2d at 1097.  The D.C. Circuit appeared to find most persuasive the fact that the disclosure achieved by the plaintiff in the case "was 'not the commonly perceived purpose of the FOIA,'" 965 F.2d at 1096 (quoting *Tax Analysts*, 845 F.2d 1065 at 1065-66), which the Court in a subsequent case described as an underlying interest in the "mining of government records for private advantage."  *Davy v. CIA*, 550 F.3d at 1164 (citing *Tax Analysts*, 965 F.2d 1092, 1095 (D.C. Cir. 1992)).  The *Tax Analysts* court also cited to the existence of a dissent by Justice Blackmun on the merits, which the Court was "unwilling" to conclude "had no reasonable basis in law."  *Id.*  These additional factors are not present here, where the D.C. Circuit's opinion leaves no room to argue either the statute or prior case law supports the government's position.

for consultation – agencies may extend the response time by an additional 10 working days, but must provide the requester with notice of the unusual circumstances and a date by which the agency will complete its processing.  5 U.S.C. § 552(a)(6)(B).  If the agency cannot process the request within this extended time limit, it must provide the requester an opportunity to limit the scope of its request so that it may be processed in a shorter time frame.  *Id.* at § 552(a)(6)(B)(ii).

Here, the FEC failed to produce any responsive documents within 20 days, failed to avail itself of the "unusual circumstances" provision, and produced no document until CREW filed suit.  These failures support the conclusion the agency had no reasonable, legitimate basis for withholding the documents it ultimately released once in litigation.          *See Elec. Privacy Information Ctr.*, 811 F. Supp. 2d at 236; *see also Davy*, 550 F.3d at 1165 (FOIA's purpose "ill-served if the government can prevail . . . by saying nothing and forcing the requester to sue, only then to offer 'no resistance.'"); *Elec. Privacy Information Ctr. v. Dep't of Homeland Sec.*, 892 F. Supp. 2d 28, 52 (critical to court's finding that agency's opposition to disclosure did not have a reasonable basis in law was fact that the agency did not disclose documents until after the plaintiff filed suit).

### III.  THE REQUESTED FEE AWARD IS REASONABLE.

After determining a plaintiff's eligibility and entitlement to attorney's fees, the court must determine "the proper amount of the fee award, *Summers v. Dep't of Justice*, 477 F. Supp.2d 56, 63 (D.D.C. 2007).  Fee awards are calculated employing the "usual method of . . . multiply[ing] the hours reasonably expended in the litigation by a reasonable hourly fee, producing the lodestar amount."  *Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 562 F. Supp.2d 159, 175 (D.D.C. 2008) (internal quotation and citation omitted).

17

Plaintiff's attorneys, as public interest lawyers, do not have customary hourly billing rates.  For purposes of a fee award under the FOIA courts calculate their fees using the prevailing market rates in the community.  *Blum v. Stenson*, 465 U.S. 886, 896 (1984).  In this jurisdiction, the hourly rates set forth in the *Laffey* matrix are considered to be "the most accurate evidence of a reasonable hourly rate."  *Northwest Coalition for Alternatives to Pesticides v. EPA*, 421 F. Supp.2d 123, 129 (D.D.C. 2006).[7]

A fee applicant bears the burden of demonstrating "the reasonableness of its fee request," a burden met by supporting documentation "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended.  *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (citations and internal quotation marks omitted); *see also American Petroleum Inst. v.  EPA*, 72 F.3d 907, 915 (D.C. Cir. 1996) ("petitioner must submit 'sufficiently detailed information about the hours logged and the work done'") (citation omitted).

Here, CREW's counsel are submitting itemizations of their time expended on this matter that detail the number of hours counsel devoted on specified days to discrete litigation tasks.  *See* Declaration of Anne L. Weismann (Weismann Decl.) (attached as Exhibit B), Declaration of Adam Rappaport (Rappaport Decl.) (attached as Exhibit C), and Declaration of Melanie Sloan (Sloan Decl.) (attached as Exhibit D).  These itemizations are based on daily time sheets and contemporaneous notes.  All three of CREW's counsel exercised considerable billing judgment to reduce the number of hours for which they are seeking compensation.  Weismann Decl. at ¶ 4,

---

[7] The *Laffey* matrix of hourly rates is based on years of experience and is updated periodically by the U.S. Attorney's Office for the District of Columbia.  The most current version is attached as Exhibit A.

Sloan Decl. at ¶ 5, Rappaport Decl. at ¶ 5.  All seek fees based on hourly rates adopted from the *Laffey* Matrix.

Ms. Weismann currently serves as chief counsel for CREW, a position she has held since March 2005.  In that capacity she serves as lead counsel in this matter.  She has been an active member of the bar and has practiced law since November 1979.  Weismann Decl., ¶ 2.  As an attorney with over 25 years of experience, Ms. Weismann is entitled to compensation at an hourly rate of $495 for work performed from June 2011 through May 2012, and $505 for work performed from June 2012 through the present.

Ms. Sloan is the executive director of CREW and has served in that capacity since February 2003.  Sloan Decl., ¶ 2.  Part of her responsibilities include reviewing litigation matters.  She is an attorney, has been an active member of the bar, and has practiced law since December 1991. *Id.*  As an attorney with over 20 years of experience, Ms. Sloan is entitled to compensation at an hourly rate of $495 for work performed from June 2011 through May 2012, and $505 for work performed from June 2012 through the present.

Mr. Rappaport is a senior counsel for CREW and has served in that capacity since March 2009.  Part of his responsibilities include drafting FOIA requests and assisting with litigation that stems from those requests.  Rappaport Decl., ¶ 3.  He is an attorney, has been an active member of the bar, and has practiced law since April 2002. *Id.*, ¶ 2.  Mr. Rappaport is entitled to compensation at an hourly rate of $350 for work performed from June 2011 through May 2012, and $355 for work performed from June 2012 through the present.

Further, the hours for which CREW's counsel seek compensation were reasonably expended in litigating this matter.  For work done in the district court, CREW seeks

compensation for drafting and filing the complaint; preparing for and responding to the defendant's motion to dismiss or, in the alternative, for summary judgment; and preparing plaintiff's notice of recent decision.  *See* Exhibit A to Weismann Decl., Sloan Decl., Rappaport Decl.  CREW has exercised considerable billing judgment, focusing primarily on the time spent in responding on the merits to the FEC's motion to dismiss on mootness grounds and its motion for summary judgment based on the claim CREW failed to exhaust administrative remedies.  *Id.* CREW further exercised billing judgment by reducing hours claimed for preparing briefs at both the district and appellate court levels, especially those involving multiple attorneys, to account for unnecessary duplication.  Weismann Decl., ¶ 4.

The bulk of the hours for which CREW seeks compensation were expended working on CREW's appeal before the D.C. Circuit.  CREW requests compensation for preparing the initial papers in the appeal; preparing the appendix for filing; preparing appellant's opening and reply briefs; preparing for and presenting oral argument; and preparing a supplemental brief to respond to the brief filed by DOJ at the request of the appellate court.  Exhibit 1 to Weismann Decl., Exhibit 1 to Sloan Decl., Exhibit 1 to Rappaport Decl.  The issues on appeal required counsel to extensively research the legislative history of the FOIA from its inception to the present.  The majority of the appellate work was done by Anne Weismann, which limited the number of hours necessary to pursue the appeal given her extensive FOIA experience.  That the D.C. Circuit adopted not only the position but the reasoning of CREW on the meaning of "determination" under the FOIA reflects the thoroughness and high caliber of CREW's work.

Finally, CREW seeks reimbursement of costs reasonably incurred in the amount of $500, which is limited to the filing fee CREW paid to the Court upon the initiation of this action and

the cost of perfecting service of the complaint.  Weismann Decl., ¶ 6.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion and order defendant DOJ to pay CREW attorneys' fees in the amount of $122,813.75 and costs in the amount of $500, which includes the filing fee and the cost of serving the complaint.[8]

September 9, 2013                          Respectfully submitted,

                                          _/s/ Anne L. Weismann_____
                                          ANNE L. WEISMANN
                                          D.C. Bar No. 434584
                                          MELANIE SLOAN
                                          D.C. Bar No. 434584
                                          Citizens for Responsibility and Ethics in
                                            Washington
                                          1400 Eye Street, N.W., Suite 450
                                          Washington, D.C.  20005
                                          Phone: (202) 408-5565
                                          Facsimile: (202) 588-5020

                                          Attorneys for Plaintiff

---

[8] CREW intends to supplement its request for attorneys' fees to account for additional time spent in the preparation if its reply in support of this motion.