## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
| CITIZENS FOR RESPONSIBILITY | ) |  |
| AND ETHICS IN WASHINGTON, | ) |  |
|  | ) |  |
| Plaintiff, | ) | Civil No. 11-951 (CKK/JMF) |
|  | ) |  |
| v. | ) |  |
|  | ) | OBJECTIONS TO MAGISTRATE'S |
| FEDERAL ELECTION COMMISSION, | ) | REPORT AND RECOMMENDATION |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

_____

### DEFENDANT FEDERAL ELECTION COMMISSION'S OBJECTIONS
### TO MAGISTRATE JUDGE FACCIOLA'S REPORT AND RECOMMENDATION

Lisa Stevenson (D.C. Bar No. 457628)
Deputy General Counsel — Law
lstevenson@fec.gov

Kevin Deeley
Acting Associate General Counsel
kdeeley@fec.gov

Erin Chlopak (D.C. Bar No. 496370)
Acting Assistant General Counsel
echlopak@fec.gov

Steve N. Hajjar
Charles Kitcher (D.C. Bar No. 986226)
Attorneys
shajjar@fec.gov
ckitcher@fec.gov

FEDERAL ELECTION COMMISSION
999 E Street NW
Washington, DC 20463
(202) 694-1650

March 3, 2014

# TABLE OF CONTENTS

**Page**

BACKGROUND ............................................................................................................2

I.     CREW'S FOIA REQUEST .................................................................................2

II.    PROCEDURAL HISTORY................................................................................4

      A.     District Court Proceedings..................................................................4

      B.     Court of Appeals Proceedings ............................................................5

      C.     The Parties' Settlement......................................................................5

      D.     The Attorneys' Fees Dispute .............................................................8

ARGUMENT .............................................................................................................11

I.     STANDARD OF REVIEW ..............................................................................11

II.    CREW IS NOT ENTITLED TO ANY ATTORNEYS' FEES BECAUSE
THE FEC ACTED REASONABLY ................................................................11

      A.     The Commission's (and This Court's) Interpretation of FOIA's
Administrative Exhaustion Requirement Was Reasonable .............................11

      B.     The Commission Did Not Unreasonably Withhold Responsive Records .......14

III.   CREW HAS FAILED TO SHOW THAT ITS FEES ARE REASONABLE ............21

      A.     CREW's Timesheets Were Not Contemporaneously Prepared......................22

      B.     CREW's Petition Uses Inappropriately Large Time Increments....................24

      C.     CREW's Time Entries Are Vague and "Insufficient" .....................................25

IV.   THE COMMISSION OBJECTS TO OTHER ERRORS IN THE REPORT..............27

CONCLUSION..........................................................................................................28

# TABLE OF AUTHORITIES

## Cases

*Bd. of Regents of Univ. of Wash. v. EPA*, 86 F.3d 1214 (D.C. Cir. 1996)...............................15

*Blackman v. District of Columbia*, 677 F. Supp. 2d 169 (D.D.C. 2010) ................................26

*Bonner v. Soc. Sec. Admin.*, 574 F. Supp. 2d 136 (D.D.C. 2008)............................................12

*Cabreja v. U.S. Citizenship and Immigration Serv.*, No. 08-1992, 2008 WL 4933649
    (D.D.C. Nov. 19, 2008)..................................................................................................12

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.*,
    No. 08-1046, 2010 WL 8971920 (D.D.C. Apr. 21, 2010)....................................22, 25

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 825
    F. Supp. 2d 226 (D.D.C. 2011) ..............................................................22, 23, 24, 25

*CREW v. FEC*, 839 F. Supp. 2d 17 (D.D.C. 2011)........................................................ *passim*

*CREW v. FEC*, 711 F.3d 180 (D.C. Cir. 2013)..................................................................5, 21

*Daskalea v. Washington Humane Soc.*, 275 F.R.D. 346 (D.D.C. 2011) ................................11

*Davy v. CIA*, 550 F.3d 1155 (D.C. Cir. 2008) ..............................................................11, 12

*DL v. District of Columbia*, 256 F.R.D. 239 (D.D.C. 2009)..................................................26

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, __ F. Supp. 2d __,
    2013 WL 5620891 (D.D.C. 2013) ...............................................................................22

*Harvey v. Mohammed*, 951 F. Supp. 2d 47 (D.D.C. 2013)....................................................26

*In re Donovan*, 877 F.2d 982 (D.C. Cir. 1989).....................................................................23

*In re Veiga*, 746 F. Supp. 2d 8 (D.D.C. 2010) .......................................................................5

*Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225 (D.D.C. 2012)................22

*Love v. FBI*, 660 F. Supp. 2d 56 (D.D.C. 2009) ...................................................................12

*Meeropol v. Meese*, 790 F.2d 942 (D.C. Cir. 1986) ..............................................................19

*Mercadante v. Xe Services, LLC*, 864 F. Supp. 2d 54 (D.D.C. 2012) ....................................15

*Percy Squire Co. LLC v. FCC*, 2009 WL 2448011 (S.D. Ohio Aug. 7, 2009)........................12

*Petties v. District of Columbia*, No. 95-0148 (PLF), 2009 WL 8663462
 (D.D.C. Oct. 20, 2009)................................................................................................26

*Role Models Am., Inc. v. Brownlee*, 353 F.3d 962 (D.C. Cir. 2004) ..........................21, 22, 25

*Smith v. District of Columbia*, 466 F. Supp. 2d 151 (D.D.C. 2006).........................................26

*Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997).................................................................25

*Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092 (D.C. Cir. 1992) ..................................12

*Thomas ex rel. A.T. v. District of Columbia*, No. 03-1791 (CKK), 2007 WL 891367
 (D.D.C. Mar. 22, 2007)..............................................................................................11

*Walker v. England*, 590 F. Supp. 2d 113 (D.D.C. 2008) ................................................. 15-16

### Rules and Regulations

11 C.F.R. § 4.8 ..........................................................................................................................20

Fed. R. Civ. P. 72(b)(3)...............................................................................................................5

LCvR 72.3(b) .............................................................................................................................11

LCvR 72.3(c) ..........................................................................................................................5, 11

Pursuant to Rule 72 of the Federal Rules of Civil Procedure and Local Rule 72.3, the Federal Election Commission ("FEC" or "Commission") objects to Magistrate Judge Facciola's February 12, 2014 Report and Recommendation (Docket No. 35) ("Report") that this Court grant in full Citizens for Responsibility and Ethics in Washington's ("CREW") motion for attorneys' fees (Docket No. 24).

The Report recommends that the Commission be ordered to pay CREW $140,000 in attorneys' fees based on the novel rationale that a federal agency acts *unreasonably* where it fails to try to divine what complaints a FOIA requester would pursue regarding the scope or content of the agency's FOIA production and then address such a challenge on behalf of the requester. And the Report recommends this interpretation here, where (1) a federal district court had held that the requester was legally required to pursue any challenge to the agency's FOIA production through the administrative appeals process, and (2) the requester never did so.  There is no legal authority to support such a rule, and it plainly cannot form the basis of an attorneys' fee award against a federal agency.

The Report further errs by ignoring the fact that prior to the Court of Appeals decision in this case, the authorities on which the Commission relied provided an ample basis in law for the agency's legal position that CREW was required to administratively exhaust its FOIA request before pursuing litigation, a position with which this Court fully agreed.  The Commission's eminently reasonable basis for its actions and lack of any dilatory behavior weigh heavily against making any fee award, much less the six-figure one CREW now seeks.

Moreover, the Report's legal errors are compounded by the magistrate judge's reliance on an incorrect version of the facts.  Contrary to CREW's misleading suggestion in its reply brief, which the Report uncritically adopts, the parties' ultimate resolution of CREW's specific

concerns, through a settlement, did not involve some new, broader search that the Commission

had initially failed to perform, or any production of records that the Commission had

intentionally-but-wrongfully withheld.  The evidence submitted in connection with these

Objections makes plain that (1) the Commission responded to CREW's specific concerns as soon

as CREW finally communicated them to the Commission, (2) the parties were able to resolve all

of those concerns through just a few communications over the course of about six weeks, and

(3) the supplemental material provided to CREW in the context of the parties' settlement was

narrow in scope and insubstantial in content and volume.  The Commission's disclosure, once

CREW finally communicated its specific concerns to the FEC, of about 40 additional pages of

arguably responsive email replies and attachments does not remotely warrant the $140,000 fee

award CREW seeks in this case.

The Court should reject the Report and deny CREW's fee petition, or, in the alternative,

significantly reduce the award CREW seeks in light of the deficiencies of its petition.

## BACKGROUND

### I.    CREW'S FOIA REQUEST

CREW's March 7, 2011 FOIA request sought various broad categories of records related

to communications between three Commission members and individuals and entities outside the

FEC.  After a series of communications regarding the scope and production of responsive

documents, the parties had agreed, by early April 2011, that the Commission would exclude

certain documents from its initial search for responsive records.  *CREW v. FEC*, 839 F. Supp. 2d

17, 20-25 (D.D.C. 2011).  In particular, the parties agreed that the Commission would "exclude

from the initial search the FEC's official files of federal campaign-related matters (such as

Matters Under Review, enforcement actions, applications for public funding, audits, litigation,

and advisory opinions) and rulemaking proceedings." (FEC Mot. to Dismiss or in the Alternative for S.J., Matthis Decl. Exh. 2 (Mar. 29, 2011 Letter from Adam J. Rappaport) (Docket No. 4-1).) The parties also agreed that the Commission would provide any responsive documents to CREW on a rolling basis. *CREW*, 839 F. Supp. 2d at 20-21, 25. CREW indicated that after it reviewed the records produced as a result of that search, it would "further clarify whether additional searches were needed to fulfill the request." (Compl. ¶ 18; Mem. of Points and Authorities in Support of Pl.'s Mot. for an Award of Att'ys' Fees and Costs ("CREW Fee Pet.") (Docket No. 24-1) at 3 ("CREW agreed to exclude certain categories of requested documents from the agency's initial search, and to revisit the full scope of its request after reviewing what the FEC produced as part of this initial production.").)

Ten weeks after the parties had finalized the scope of CREW's request, the Commission had searched for, reviewed, and begun producing responsive documents. *CREW*, 839 F. Supp. 2d at 21, 25. By June 23, the Commission had completed that production and provided CREW with 835 pages of Commission records. *Id.* at 21, 25.

Nearly two years elapsed between the Commission's production of those 835 pages of responsive records and the Court of Appeals decision on the procedural question at issue in this litigation. At no time during those 21 months did CREW even attempt to administratively appeal any aspect of the Commission's response to its FOIA request, or otherwise ask the Commission to perform "additional searches" or "revisit the full scope of its request," which CREW had indicated it would do if it believed such follow-up actions "were needed." (Compl. ¶ 18; CREW Fee Pet. at 3.)

**II.      PROCEDURAL HISTORY**

    **A.      District Court Proceedings**

CREW filed this lawsuit on May 23, 2011, alleging that the Commission had violated

FOIA by not providing CREW any records.  On June 23, the same date the Commission

completed its rolling production of records responsive to CREW's FOIA request, the

Commission filed its Motion To Dismiss, or in the Alternative, for Summary Judgment (Docket

No. 4).  On December 30, this Court issued a Memorandum Opinion declining to dismiss

CREW's complaint for lack of subject-matter jurisdiction, because CREW's complaint included

a general substantive challenge to the Commission's FOIA response that precluded a finding of

mootness, but granting the Commission's alternative request for summary judgment.  *CREW*,

839 F. Supp. 2d at 29.

This Court concluded that the "FEC provided an adequate determination [within the

meaning of 5 U.S.C. § 552(a)(6)(A)(i)] in response to CREW's FOIA request prior to CREW

filing suit, [and] thus CREW was required to exhaust its administrative appeals within the FEC

before challenging the adequacy of the FEC's response in this Court."  *Id.* at 24.  The Court

analyzed "both the text of the relevant provisions and case law" and concluded that the relevant

authorities "show the FEC's response prior [to the date CREW brought suit] was sufficient to

require CREW to exhaust its administrative remedies within the FEC before filing suit."  *Id.* at

28-29.  The Court held that CREW could not bring suit before first lodging its objections with

the Commission "through the administrative appeals process" and thus providing the

Commission with an opportunity to correct any errors alleged by CREW.  *Id.* at 28-29.  CREW

chose not to pursue that administrative process and instead appealed the Court's ruling.

**B.     Court of Appeals Proceedings**

On October 16, 2012, a three-judge panel of the United States Court of Appeals for the District of Columbia Circuit heard argument in CREW's appeal, and on April 2, 2013, the Court of Appeals reversed the Court's decision.

The appellate court noted that "[d]espite the significant amount of FOIA litigation in this Court," it had never addressed the question of what constitutes a "'determination' so as to trigger the exhaustion requirement," because "FOIA requesters apparently have not thought it worth the candle to press this point, rather than work with the agency in an effort to obtain the requested documents." *CREW v. FEC*, 711 F.3d 180, 185 & n.4 (D.C. Cir. 2013). It then concluded that in this case, the Commission had not issued a timely "determination" and that CREW accordingly was not required to exhaust administrative remedies before filing suit. *Id.* at 183, 186.

**C.     The Parties' Settlement**

Shortly after the Court of Appeals remanded the case to this Court, the parties commenced settlement discussions and resolved — without any further action by the Court — "all outstanding issues regarding the merits of CREW's FOIA request." (CREW Fee Pet. at 5.)

In a letter dated June 25, 2013, CREW identified the "remaining issues" it sought to resolve. (Declaration of Steve N. Hajjar, Mar. 3, 2014 ("Hajjar Decl.") Exh. 1.)[1] In particular, CREW inquired about calendars belonging to two commissioners, metadata showing which commissioner received produced emails, and *ex parte* communications notices in the possession

---

[1]     The Court may review and rely on evidence concerning the settlement even though it was not before the magistrate judge. Fed. R. Civ. P. 72(b)(3); LCvR 72.3(c); *In re Veiga*, 746 F. Supp. 2d 8, 13-14 (D.D.C. 2010). The Commission submits this evidence now, in light of CREW's introduction of a new issue in its reply brief, *see infra* p. 9, the Report's note that the record concerning the parties' settlement was unclear, Report at 10 n.5, and the inaccurate assumptions that form the basis for the Report's recommendation, *compare* Report at 13-14, *with infra* pp. 5-7.

of an ethics officer.  (*Id.* at 1.)  CREW also asked about certain exemption and "non-responsive" claims and about particular emails that appeared to reference a reply or an attachment that appeared to be absent from the June 2011 production.  (Hajjar Decl. Exh. 1.)

In the Commission's July 31 response, it explained the reasons it had not produced material for several of the categories about which CREW had inquired.  (Hajjar Decl. Exh. 2 at 1-2.)  In particular, the Commission clarified that the two commissioners for whom calendars had not been produced did not maintain calendars that constituted agency records subject to FOIA, that the metadata CREW had requested was neither accessible nor "readily reproducible" by the Commission (and thus not required to be provided under FOIA), and that the Commission had not located any records related to *ex parte* communications that were responsive to CREW's request.[2]  (*Id.*)  The Commission further explained that material redacted as "non-responsive" was withheld because it did not relate to any Commission business and was thus outside the scope of CREW's request.  (*Id.* at 3.)

In addition to providing these explanations, the Commission produced 12 pages of replies and attachments to previously produced emails that were either arguably responsive to CREW's request, inadvertently omitted from the Commission's June 2011 FOIA production, or both, along with a log regarding any claimed exemptions for redacted material in those documents. (Hajjar Decl. Exh. 2 Attachs. A-B.)  The Commission also disclosed some additional (previously redacted) material from three emails it had already produced as part of its June 2011 FOIA production.  (Hajjar Decl. Exh. 2 Attach. C.)

---

[2]     Regarding CREW's inquiry about *ex parte* communications in the possession of an ethics officer, the Commission further noted that "under 11 C.F.R. § 201.4, *ex parte* communications concerning [Commission] rulemakings or advisory opinions within a certain period are provided to the Commission Secretary and placed in the public file of the rulemaking or advisory opinion," and that "[a]lthough any such communications would not be responsive to CREW's FOIA request, they are already publicly available."  (Hajjar Decl. Exh. 2 at 2.)

Finally, the Commission explained that it was re-reviewing the entire 835-page production it had completed in June 2011 to identify any additional emails that reference a reply or attachment that appeared to be absent from that production, and that it would promptly produce any responsive documents identified through that review.  (Hajjar Decl. Exh. 2 at 2.)

One week later, on August 6, 2013, the Commission sent CREW an additional 12 email replies and attachments (totaling 28 pages) that had been inadvertently omitted from the June 2011 FOIA production.  (Hajjar Decl. Exh. 3.)  CREW communicated to the Commission that same day that it was satisfied with the Commission's supplemental responses and would not pursue litigation of any substantive challenge to the Commission's FOIA response.  (Hajjar Decl. ¶ 7.)

In total, the Commission's supplemental production consisted of three pages of already produced emails containing material that had been previously redacted in part and 40 pages of email replies and attachments that were not included in the Commission's 835-page production in June 2011.  Among those 40 pages were two publicly available statements of reasons regarding a closed Commission investigation, a publicly available Federal Register Notice, a map of the Heritage Foundation, a generic description of a conference panel, a blank form for requesting CLE credit, a blank speaker release form for a conference participant, two law firm memoranda describing recent court decisions, an email reply confirming a Commissioner's participation in a conference, and thirteen replies to emails generally thanking the recipients for complimenting a Commissioner on a published editorial.  (Hajjar Decl. Exhs. 2-3.)

On August 12, 2013, the parties jointly moved to dismiss CREW's claims with prejudice, except as to the issue of attorneys' fees and costs.  The Court granted the motion one day later.

### D.      The Attorneys' Fees Dispute

CREW moved for an award of attorneys' fees and costs on September 9, 2013.  In its motion, CREW claimed that it was entitled to attorneys' fees because the D.C. Circuit "agreed with CREW in all respects" regarding the procedural question the parties litigated, and because, in CREW's view, "the FEC's failure to produce any responsive documents until CREW filed suit [was] unreasonable."  (CREW Fee Pet. at 15-17; *see id.* at 17 (arguing that the Commission acted unreasonably because it "failed to produce any responsive documents within 20 days")).)

The Commission opposed CREW's fee petition.  (FEC Opp'n to Pl.'s Mot. for Att'ys' Fees ("FEC Fee Opp'n") (Docket No. 29).)  Among other things, the Commission explained that the Court of Appeals decision had no effect on the legal relationship between CREW and the Commission and that the Commission's good-faith efforts to comply with CREW's FOIA request before CREW filed suit precluded any claim that the lawsuit caused the Commission's production of responsive records.  (*Id.* at 8-17.)  The Commission also explained that CREW was not entitled to attorneys' fees because the Commission had never opposed disclosure, and because the Commission's interpretation of FOIA's administrative exhaustion requirement and the timing of the Commission's FOIA production were both reasonable.  (*Id.* at 18-23.)  The Commission further explained that awarding attorneys' fees here, where the Commission had not engaged in any "dilatory tactics" and where the entire litigation concerned resolution of a novel procedural question that had nothing to do with the FOIA records requested and had no impact on the outcome of this case, would not serve the legislative purpose underlying FOIA's fee provision.  (*Id.* at 23-25; *see also id.* at 9-11.)  Finally, the Commission challenged whether CREW had met its burden to establish entitlement to the amount of fees it seeks.  (*Id.* at 25-33.)

In its reply brief, CREW asserted for the first time that the parties' settlement also "establish[es] CREW's eligibility for attorney fees and costs."  (Reply in Supp. of Pl.'s Mot. for Att'ys' Fees and Costs ("CREW Fee Reply") at 1 (Docket No. 30).)  CREW's Fee Reply alleged without any evidentiary support that it was "worth noting that, as part of that settlement, the FEC agreed to conduct the additional search CREW sought from the outset, which led to the production of additional responsive documents."  (*Id.* at 4.)

On February 12, 2014, the magistrate judge issued his Report recommending that this Court grant CREW's fee petition in full and award CREW $139,998.68 in fees and $500 in costs.  In summarizing the factual background of this case, the Report relies on CREW's statement in its Fee Reply that the parties' "settlement involved 'an additional search' for responsive documents by the FEC and an additional production of those documents," and explains that "CREW characterizes this as the 'additional search CREW sought from the start.'" Report at 4 (quoting CREW Fee Reply at 1, 4).

The Report first concludes that CREW is eligible for attorneys' fees.  Specifically, the Report finds that CREW "substantially prevailed" because the D.C. Circuit's procedural ruling "informed the FEC of its legal obligations to give a 'determination' within twenty work days." *Id.* at 9.  The Report separately concludes that CREW substantially prevailed because the parties' August 2013 settlement, which the Report says "encompassed an additional search by the FEC for responsive documents and an additional release of documents," demonstrates that CREW's lawsuit caused a voluntary change in the Commission's position.  *Id.* at 9-11.

The Report next concludes that CREW is entitled to attorneys' fees.  *Id.* at 11-15.  In reaching that conclusion, the Report finds that the Commission acted reasonably in completing its 835-page FOIA production in June 2011.  Report at 13 ("This timeframe, combined with

[Commission declarations], convinces the Court that the government did act reasonably and in a manner that was not obdurate.").

The Report acknowledges the lack of clarity in the record as to the scope and content of the parties' settlement. *Id.* at 10 n.5. It concludes, however, that "[t]he documents released in conjunction with the settlement agreement" demonstrate that the Commission, when "[c]onfronted with the D.C. Circuit's opinion and the realization that CREW's lawsuit would continue . . . folded: it provided no legal justification — reasonable or otherwise — for its refusal over the preceding two years to release those additional documents." *Id.* at 13-14.

The Report suggests that the Commission's actions were unreasonable for the additional reason that "the court of appeals rejected in its entirety the FEC's argument on appeal and accepted all of CREW's arguments without dissent." *Id.* at 14. In the magistrate judge's view, therefore, the Commission acted unreasonably because it "misread the statute" and then failed to moot CREW's substantive FOIA claim during "the intervening two years" by producing whatever Commission records CREW still intended to seek based on its March 2011 FOIA request. *Id.*

Lastly, the Report concludes that Commission should pay the full amount of fees CREW seeks. *Id.* at 15-29. The Report explains that "[t]his was hardly a run-of-the-mill FOIA case." *Id.* at 22. Among other things, "[t]his case presented novel legal issues that required substantial analysis and advocacy," *id.* at 19, and such novelty warranted CREW's "extensive[] research [of] the legislative history of FOIA from its inception to the present, . . . [to] understand[] how a statute has evolved over the past forty years," *id.* at 21.

**ARGUMENT**

## I.     STANDARD OF REVIEW

Local Rule 72.3 provides that "[a]ny party may file . . . written objections to the magistrate judge's proposed findings and recommendations" and that these objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection."  LCvR 72.3(b).  This Court then "shall make a *de novo* determination of those portions of [the] magistrate judge's findings and recommendations to which objection is made," and may do so "based solely on the record developed before the magistrate judge, or may conduct a new hearing, receive further evidence, and recall witnesses."  LCvR 72.3(c); *Daskalea v. Washington Humane Soc'y*, 275 F.R.D. 346, 355 (D.D.C. 2011); *see also Thomas ex rel. A.T. v. District of Columbia*, No. 03-1791 (CKK), 2007 WL 891367, *1-6 (D.D.C. Mar. 22, 2007) (reducing magistrate judge's recommended fee award).

## II.    CREW IS NOT ENTITLED TO ANY ATTORNEYS' FEES BECAUSE THE FEC ACTED REASONABLY

### A.    The Commission's (and This Court's) Interpretation of FOIA's Administrative Exhaustion Requirement Was Reasonable

As the Commission demonstrated in its opposition to CREW's fee petition (FEC Fee Opp'n at 19-23), its defense of this Court's legal conclusion — that the Commission had rendered a "determination" on CREW's FOIA request prior to CREW's lawsuit and that CREW accordingly was required to exhaust administrative remedies before filing suit — was more than reasonably based in the law and certainly did not demonstrate "recalcitran[ce] in . . . opposition to a valid claim or otherwise . . . obdurate behavior."  *Davy v. CIA*, 550 F.3d 1155, 1162 (D.C. Cir. 2008).

Indeed, that interpretation of FOIA's administrative exhaustion requirement was reasonably grounded in several opinions, including three from this District.  *See CREW*, 839 F. Supp. 2d at 25-26 ("Several other courts have found that the plaintiffs failed to constructively exhaust their administrative remedies, even where the responding agencies provided no indication of its intent to comply prior to the plaintiffs filing suit, as the FEC did here.") (discussing *Love v. FBI*, 660 F. Supp. 2d 56 (D.D.C. 2009); *Cabreja v. U.S. Citizenship and Immigration Servs.*, No. 08-1992, 2008 WL 4933649 (D.D.C. Nov. 19, 2008); *Bonner v. Soc. Sec. Admin.*, 574 F. Supp. 2d 136 (D.D.C. 2008) and *Percy Squire Co. LLC v. FCC*, 2009 WL 2448011 (S.D. Ohio Aug. 7, 2009)); FEC Fee Opp'n at 20-23.  CREW, by contrast, did not "cite any case in this Circuit (or any other court for that matter), that support[ed] its reading of the constructive exhaustion requirement."  *CREW*, 839 F. Supp. 2d at 26.  Considered in this legal context, the Commission's reliance on this Court's ruling in its favor far from demonstrates "recalcitran[ce] in . . . opposition to a valid claim or otherwise . . . obdurate behavior."  *Davy*, 550 F.3d at 1162; *see* FEC Fee Opp'n at 19-23.

The magistrate judge's Report improperly ignores all of this and concludes that CREW merits an award of its fees because the Court of Appeals "rejected in its entirety" the Commission's interpretation of FOIA's "determination" provision "without dissent."  Report at 14.  But it is immaterial whether the Court of Appeals rejected all or merely some of the Commission's arguments, and the panel's unanimity is likewise not dispositive.  *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1097 (D.C. Cir. 1992) ("[N]either our unanimity [in rejecting the government's arguments] nor the presence of only one dissent in the Supreme Court compels the conclusion that the government's position was baseless.").  As the Commission previously explained (FEC Fee Opp'n at 19-23), the relevant inquiry for determining a FOIA

12

requester's entitlement to attorneys' fees is whether the government's position had a *reasonable basis in the law*, not whether or how unanimously the government lost. Under the proper standard, the Commission's (and this Court's) interpretation of FOIA's administrative exhaustion requirement was plainly reasonable. *See* FEC Fee Opp'n at 19-23; *CREW*, 839 F. Supp. 2d at 28-29.

Moreover, the Report's conclusion that the Commission's litigation position was unreasonable is further undermined by the Report's contradictory assessments of the reasonableness of the Commission's actions, on the one hand, and of the novelty and complexity of the appeal CREW pursued, on the other. The Report criticizes the Commission for "misread[ing a] statute" and characterizes the error as one of the most basic mistakes possible: the Commission simply "misinterpreted FOIA." Report at 14. The Report appears to conclude that the simplicity and obviousness of the Commission's (and this Court's) error was the reason that "the court of appeals rejected in its entirety the FEC's argument on appeal and accepted all of CREW's arguments without dissent." *Id.*

But the Report takes precisely the opposite view in purporting to justify CREW's entitlement to the substantial volume of fees it seeks. It states that "[t]his was hardly a run-of-the-mill FOIA case," requiring "extensive briefing on D.C. Circuit precedent and the legislative history and purpose" of FOIA. *Id.* at 22. "This case presented novel legal issues that required substantial analysis and advocacy." *Id.* at 19. "Given that navigating legislative history and understanding how a statute has evolved over the past forty years can be a perilous undertaking, this Court does not view it as 'basic legal research.'" *Id.* at 21. The Report's conclusion that the FEC's position was unreasonable because it simply misread the statute cannot be squared with its contrary conclusion that the issues in the case were so novel and complicated as to warrant the

expenditure of nearly 300 attorney work hours, *id.* at 18, encompassing extensive research and appellate briefing, *id.* at 20-22.

### B.       The Commission Did Not Unreasonably Withhold Responsive Records

CREW's argument in its fee petition that the Commission unreasonably withheld documents responsive to its FOIA request was premised *exclusively* on the fact that the Commission did not produce "any responsive documents until CREW filed suit." (CREW Fee Pet. at 16; *id.* at 17 (arguing that the Commission acted unreasonably by "fail[ing] to produce any responsive documents within 20 days" of receiving CREW's FOIA request).)

The magistrate judge's Report correctly rejected CREW's argument on this point. It properly concluded that the Commission "at the very least" acted reasonably when it produced 835 pages of records responsive to CREW's FOIA request "shortly after suit was filed." Report at 13. This Court had previously reached the same conclusion in this matter, albeit in a different context. *CREW*, 839 F. Supp. 2d at 25 (concluding that "[t]he FEC was . . . reasonably prompt in producing documents to CREW" and that "[t]en weeks to search, review, and produce documents in response to relatively broad requests in this context is not unreasonably long as to require a finding of constructive exhaustion").

The Report, however, goes beyond the arguments presented in CREW's fee petition. The Report acknowledges, Report at 4, that it relies on CREW's "characteriz[ation]" of the parties' settlement, which was that it included "the additional search CREW sought from the outset, which led to the production of additional responsive documents." (CREW Fee Reply at 4.) Though CREW offered this characterization for the first time in one passing reference in its Fee Reply and with zero evidentiary support, the Report transforms CREW's unsubstantiated description of the settlement into an independent legal basis for finding that the Commission

unreasonably withheld responsive documents.  Report at 13-14.  The Report's conclusion was improper and incorrect.

First, because CREW's initial fee submission did not argue that it was the settlement of this matter that entitled CREW to fees, CREW waived that argument.  *Bd. of Regents of Univ. of Washington v. EPA*, 86 F.3d 1214, 1221 (D.C. Cir. 1996) ("By failing to make any specific objection until their reply brief, petitioners deprived the [other party] of the opportunity to respond.  To prevent this sort of sandbagging of appellees and respondents, we have generally held that issues not raised until the reply brief are waived.").  Even in CREW's Fee Reply, the argument was only presented in a few unsubstantiated sentences (one of which characterized the point as something merely "worth noting," (CREW Fee Reply at 4)), hardly enough to put the argument in issue or necessitate the extraordinary request of seeking leave to file a corrective sur-reply.  *Accord Board of Regents* 86 F.3d at 1221 ("Petitioners were obscure on this issue in their *opening* brief, merely stating, in conclusory fashion and without visible support, that 'EPA has not made an independent identification and delineation of on-site wetlands.'" (emphasis added; internal quotation marks omitted)).  These actions unfairly deprived the Commission "of an opportunity to render a meaningful response."  *Mercadante v. Xe Services, LLC*, 864 F. Supp. 2d 54, 57 (D.D.C. 2012).

Second, as the Report itself acknowledges, Report at 10 n.5, the record was unclear regarding what documents the Commission produced pursuant to the parties' settlement.  In the face of an admittedly unclear record, the magistrate judge improperly (and unfairly) relied on CREW's one-sided, last-word "characterization" of the parties' settlement.  *See Mercadante*, 864 F. Supp. 2d at 57 (ordering further briefing regarding contested issue); *Walker v. England*, 590 F.

Supp. 2d 113, 123 n.9 (D.D.C. 2008) (dismissing briefs' characterizations of facts that were unsupported by the record).

In fact, CREW's Fee Reply *mis*characterized the nature and scope of the parties' settlement.  At no point during the settlement negotiations did CREW ask the Commission, let alone did the Commission agree, "to conduct the additional search CREW sought from the outset."  (CREW Fee Reply at 4.)  As explained *supra* pp. 2-3, the parties agreed, between March and April 2011, that the Commission could exclude certain correspondence to and from the three selected Commissioners contained in the Commission's files, such as rulemakings, advisory opinions, enforcement Matters Under Review, and audits.  Pursuant to that agreement, the Commission conducted a search and produced 835 pages of responsive material, but did not undertake the extensive task of combing through nearly three years of such official Commission files, which contain many already publicly available documents.  *CREW*, 839 F. Supp. 2d at 21; *supra* pp. 2-3.  CREW has repeatedly stated that in agreeing to those narrowed parameters, it was not waiving any right to revisit the full scope of records that its March 2011 FOIA request purported to seek.  Indeed, CREW adamantly relied on its reservation of rights in order to avoid a finding of mootness following the Commission's production.  (*See* CREW's Opp'n to FEC Mot. to Dismiss or, in the Alt., for S.J. (Docket No. 5) ("CREW S.J. Opp'n") at 4 ("CREW explained that by agreeing to this procedure CREW was *not* narrowing the scope of its request."); *id.* at 10 (referencing "CREW's express reservation of the right, after seeing the FEC's *initial* document production, to request additional documents within the scope of its FOIA request").)  CREW in fact *never* actually asked the Commission to search its official Commission files or otherwise expand its search beyond the narrower parameters that controlled

the Commission's June 2011 FOIA production.[3]  *See supra* pp. 2-3, 4.  CREW's ultimate

decision not to pursue the search it sought "from the outset" (CREW Fee Reply at 4) confirms

the Commission's reasonableness in not conducting that search *sua sponte* during the pendency

of these court proceedings.

Third, and even worse, the Report's speculative description of the Commission's

settlement-related actions does not nearly resemble what actually occurred.  The Report

hypothesizes that the Commission, with "no legal justification — reasonable or otherwise,"

resisted providing CREW with responsive records for two years until it lost on appeal of the

unrelated procedural question, at which point the Commission "folded" and gave CREW

everything it wanted from the beginning.  Report at 13-14.

That is demonstrably incorrect.  Instead, on June 25, 2013, CREW inquired with the

Commission — *for the first time since the Commission completed its 835-page FOIA production*

*two years earlier* — about certain, specific material it had not received as part of the

Commission's June 2011 production.  (Hajjar Decl. Exh. 1.)  As noted above, CREW had

explicitly claimed a *right* to ask the Commission to perform "additional searches" or "revisit the

full scope of its request," if, upon reviewing the Commission's June 2011 production, CREW

believed such follow-up actions "were needed."  (Compl. ¶ 18; CREW Fee Pet. at 3.)  But

CREW had never even purported to execute that right, through an administrative appeal or any

---

[3]      CREW has suggested (*e.g.*, CREW Fee Reply at 9) that the Commission's efforts to take
the parties' FOIA dispute from the courtroom back to the Commission somehow interfered with
CREW's right to review the documents it received and make any inquiries or requests of the
Commission regarding the scope of the Commission's search or the content of its production.
That accusation not only defies common sense, but CREW's suggestion that the Commission
*prematurely* completed its FOIA production by failing to wait some unspecified period of time
for CREW to make any further inquiries or requests is irreconcilable with CREW's legal
argument that the Commission acted unreasonably by failing to complete its FOIA production
"within 20 days."  (*Compare* CREW Fee Reply at 9, *and* CREW S.J. Opp'n at 7, 11, *with* CREW
Fee Pet. at 16-17.)

other request or inquiry made to the Commission.  *See supra* pp. 2-3, 4; CREW S.J. Opp'n at 11

(blaming CREW's failure to review FEC FOIA production and make any follow-up inquiries on

FEC's motion to dismiss CREW's lawsuit).

In CREW's June 25 letter, CREW asked about calendars belonging to two

commissioners, metadata showing which commissioner received produced emails, and *ex parte*

communications notices in the possession of an ethics officer.  (Hajjar Decl. Exh. 1 at 1.)

CREW also asked about particular exemption and "non-responsive" claims, and about certain

emails that appeared to reference a reply or an attachment that appeared to be absent from the

June 2011 production.  (*Id.* at 1-2.)  Finally, CREW asked the Commission "to *re-review* its

production and withholdings to determine what additional information the FEC can provide

CREW and, if the FEC continues to rely on an exemption, an explanation for why the exemption

applies."  (*Id.* at 2 (emphasis added).)

The Commission responded to CREW's inquiries by explaining the reasons it had not

produced documents for several of the categories about which CREW had inquired.  (Hajjar

Decl. Exh. 2 at 1-2.)  Specifically, the Commission clarified that it had not produced any

calendars for two members of the Commission because neither of those individuals maintained a

calendar that constituted an agency record subject to FOIA; that the metadata CREW had

requested was inaccessible and not "readily reproducible," and thus not required to be provided

under FOIA; and that the Commission had not produced any responsive records related to *ex

parte* communications because it had not located any.  *Id.*; *see supra* p. 6 n.2.  The Commission

further explained that material redacted as "non-responsive" was withheld because it did not

relate to any Commission business and was thus not responsive to CREW's request.  (*Id.* at 3.)

In addition to these explanations, the Commission provided some material previously redacted

from three pages of the June 2011 production along with 40 additional pages of arguably responsive replies and attachments to previously produced emails that were inadvertently omitted from the June 2011 FOIA production, along with logs regarding any claimed exemptions for redacted material in those documents.  Hajjar Decl. Exhs 2-3; *see supra* p. 7 (describing content of documents provided to CREW as part of parties' settlement).

At a minimum, the Commission's uncontested explanations — in response to direct questions from CREW in its July 2013 letter — for the agency's justified non-production of various categories of documents, particular documents, and portions of produced documents, directly refute the magistrate judge's supposition, Report 13-14, that such requested documents were unlawfully withheld for two years.  In fact, such material fell outside the scope of CREW's FOIA request, was otherwise not subject to disclosure under FOIA, or simply did not exist.

Similarly, the Commission's release of 40 additional pages of arguably responsive email replies and attachments along with three pages containing some previously redacted material as part of the parties' settlement far from demonstrates that the Commission "unlawfully withheld records that it knew were responsive to CREW, or . . . stalled doing what it was supposed to do for no good reason."  Report at 14.[4]  The 43 total pages of material provided to CREW as part of the parties' settlement amounted to less than five percent of the total volume of FEC records provided in response to CREW's FOIA request and consist of insubstantial and/or publicly available material.  (Hajjar Decl. Exhs. 2-3.)

---

[4]    The Commission's inadvertent omission of this small number of records from the previous 835 pages provided to CREW hardly suggests that the Commission searched in bad faith and made a deficient production.  *See Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986) ("As we have already explained . . . a search is not unreasonable simply because it fails to produce all relevant material.").

The record thus belies the Report's assumption that the Commission settled the merits of this FOIA case by belatedly conducting the broad search CREW had "sought from the outset" and finally turning over some vast cache of records the Commission had been intentionally and unjustifiably withholding for two years.  In fact, CREW ultimately declined to seek the full scope of records outlined by its FOIA request, the majority of records it inquired about in the context of the parties' settlement were justifiably never produced, and the few additional records that actually were provided as part of the settlement were small in number, insignificant in content, and not intentionally withheld as the Report suggests.

The factual record also highlights the problems with the Report's finding, Report at 13-14, that the Commission acted unreasonably by failing to pursue CREW's administrative appeal on CREW's behalf or otherwise to unilaterally moot CREW's lawsuit during the two years between CREW's FOIA request and the parties' settlement.

First, the Report ignores the fact that CREW itself did nothing to advance its purported challenge to the scope of the Commission's search or the content of the June 2011 production during that two-year period.  It is neither legally correct nor practically possible[5] to expect a federal agency to seek out all administrative challenges a requester *might* make to the agency's FOIA production, or to pursue such challenges on the requester's behalf.  *See* 11 C.F.R. § 4.8 (outlining procedure for appealing a FOIA response by FEC).

---

[5]     The magistrate judge's suggestion that a federal agency, to avoid attorneys' fees under FOIA, must actively seek out an administrative challenge to a completed FOIA production, even where the requester itself has not pursued such a challenge (and a district court has held that the requester was required to do so), is also incompatible with the Report's recognition of the "reality [that] FOIA offices . . . are underfunded and understaffed" and thus face significant challenges even in handling the administrative requests that are *properly* before them.  *See* Report at 13-14.

Second, even if that were not the case, it is far from clear that the Commission *could* have mooted CREW's lawsuit by providing CREW sooner with the few supplemental documents produced during the parties' settlement.  Indeed, CREW was able to litigate its appeal by maintaining its broad but never-specified challenge to the full scope of the Commission's search and production.  *See CREW*, 839 F. Supp. 2d at 23-24 (declining to find lawsuit moot because CREW's complaint "does assert a substantive challenge to the agency's response"); *CREW*, 711 F.3d at 184 (agreeing with district court that CREW's lawsuit is not moot for same reasons); CREW Fee Pet. at 3 (citing CREW's reservation of its right to revisit "the full scope of its request after reviewing what the FEC produced").  Even if the Commission had provided the supplemental documents to CREW sooner, CREW could have kept its lawsuit alive (and thus enabled its pursuit of the D.C. Circuit's procedural ruling) by continuing to assert its unspecified challenge to the scope of the Commission's search or its reserved right "to revisit the full scope of its request" at some unspecified later date.  (*See* CREW Fee Pet. at 3.)

Though CREW did not rely in its Fee Petition on the parties' settlement as a justification for its fees, the Report nevertheless relied on a misguided understanding of that settlement to find that the Commission had acted unreasonably after its June 2011 production.  The Commission reasonably responded to the FOIA request before, during, and after this litigation, including by making the legal assertions that CREW had failed to exhaust administrative remedies that were actually litigated here.

## III.    CREW HAS FAILED TO SHOW THAT ITS FEES ARE REASONABLE

CREW bears "the burden of establishing the reasonableness of its fee request."  *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004).  Its "[s]upporting documentation must be of sufficient detail and probative value to enable the court to determine

with a high degree of certainty that such hours were actually and reasonably expended." *Id.* (internal quotation marks omitted). Even if the Court finds that CREW should receive *some* fee award in this case, CREW has failed to carry its burden and a reduction is thus clearly warranted, including for CREW's "fees on fees."[6]

## A.     CREW's Timesheets Were Not Contemporaneously Prepared

The Commission's opposition to CREW's fee petition showed that CREW's submission suffers from many of the same defects that have been previously identified and criticized by the courts of this District, including reliance on "reconstructed timesheets" rather than contemporaneous records. (FEC Fee Opp'n at 25-28 (citing two FOIA matters involving CREW in which courts in this District reduced the fee awards CREW sought, *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 825 F. Supp. 2d 226 (D.D.C. 2011) ("*CREW v. DOJ*") and *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, No. 08-1046, 2010 WL 8971920 (D.D.C. Apr. 21, 2010) ("*CREW v. DHS*")).)

The Report nevertheless concludes, inexplicably, that "[*n*]*othing* suggests that [CREW's lead attorney, Anne Weismann,] submitted 'reconstructed timesheets.'" Report at 25 (emphasis added). That is incorrect. CREW has in this case submitted precisely the same kind of reconstructed timesheets that it submitted in previous cases, particularly *CREW v. DOJ*, as comparison of the materials the Commission has cited makes plain. *Compare CREW v. DOJ*,

---

[6]     Any reduction the Court deems appropriate should also be applied to the "fees on fees" that CREW seeks for the instant petition. *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, __ F. Supp. 2d __, 2013 WL 5620891, *3 (D.D.C. 2013) ("This Court will therefore award . . . the same percentage of fees for fee litigation as it does for fees on the merits."); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 241 (D.D.C. 2012) ("[T]he Court must reduce Judicial Watch's requested fees on fees award commensurate with the Court's reduction of Judicial Watch's award for the litigation of this case."); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 825 F. Supp. 2d 226, 233 (D.D.C. 2011) (reducing "fees on fees" by the same "across-the-board 37.5% cut" applied to other fees).

825 F. Supp. 2d 226, Declarations of Anne L. Weismann and Melanie Sloan, June 9, 2011, (Docket No. 7-2) (Exh. P),[7] *with* Declarations of Anne L. Weismann and Melanie Sloan, Sept. 6, 2013, CREW Fee Pet., Exhs. B, D (Docket No. 24-2).  Though CREW's counsel "are experienced litigators" and it knew "it would be seeking a fee award" in this case, *CREW v. DOJ*, 825 F. Supp. 2d at 230, and its declarations reference, but do not attach, "daily time sheets and separate notes," (Weismann Decl., CREW Fee Pet., Exh. B ¶ 3), CREW has again failed to submit contemporaneously prepared records of its work.  *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989) ("[T]his court will require that fee applications include contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents, if any."); FEC Fee Opp'n at 26-27 (citing overwhelming precedent requiring parties to file contemporaneous time charges with motions for attorneys' fees *as a matter of course*).

The Report's conclusion that CREW has reformed its billing practices is also unsound. That conclusion was based on the view that Ms. Weismann's declaration here differs from what she submitted in the past, because (1) this declaration omits language stating that Ms. Weismann reconstructed her work using sources such as "her notes and the docket," and (2) contrary to a few instances of "aggregate" time entries batching work performed over multiple days in the declaration submitted in *CREW v. DOJ*, these timesheets list each day's work separately in all cases instead of merely the vast majority of them.  Report at 24-25.  Contrary to the Report's conclusion that these minor changes render the declarations "a far cry" from CREW's previous ones, *id.* at 25, the differences are superficial (or inaccurate:  in fact, here Ms. Weismann again reconstructed work using her "notes").  The omission of references to "the docket" and other

---

[7]     For the Court's convenience, copies of these declarations are attached as Exhibit 4 to the Hajjar Declaration accompanying these Objections.

reconstruction sources merely deemphasizes the post hoc preparation of the timesheets but does not change the fact that they were prepared post hoc.  And as for the batching of multiple days' work in single entries in the declaration submitted in *CREW v. DOJ*, that difference is the distinction between writing "'5/23-5/26/11, 6/3-6/6/11 Research and draft motion for attorneys' fees and costs 7 [hours],'" Report at 24, as was done in three instances in that declaration, and writing, *e.g.*, "[r]esearch and draft brief" for eleven consecutive separately dated entries, as CREW did here (*see* Weissman Decl., CREW Fee Pet., Exh. B, Exh. 1 at 2).  That is an exceedingly fine distinction.

When Judge Boasberg explained in *CREW v. DOJ* that CREW's billing practices are "significantly below what is expected of fee applicants in this Circuit," 825 F. Supp. 2d at 230, and instructed CREW to "maintain better contemporaneous records and record . . . time in more appropriate increments" "[i]f CREW wishes to receive unreduced fee awards" in "future" cases such as this, *id.* at 231, it is unlikely that his expectation was limited to the slight wording and formatting revisions the Report identifies here.  CREW has in fact made no significant changes to the way it records time in FOIA cases.  If the declarations and timesheets submitted in *CREW v. DOJ* were "plainly inadequate," as the Report states, Report at 30 n.22, the instant ones are too.

### B.    CREW's Petition Uses Inappropriately Large Time Increments

The Report also accepts CREW's use of inappropriately large time increments, despite acknowledging the "unquestionabl[e]" preference for recording time in "at most" quarter-hour intervals and admittedly relying on a reversed case.  Report at 26; *see also CREW v. DOJ*, 825 F. Supp. 2d at 230 ("[C]ourts in this District and others have often required that attorneys bill in *ten-minute or six-minute increments*." (internal quotation marks omitted) (emphasis added)).

The Report relies on recitals by CREW's attorneys that they made unspecified reductions to their hours, Report at 26, even though CREW's assertions of unidentified reductions are for the most part indistinguishable from the reductions CREW claimed in *CREW v. DOJ* that did not stop Judge Boasberg from finding that an additional 37.5% across-the-board reduction was necessary. *See CREW v. DOJ*, 825 F. Supp. 2d at 231; *compare id.* at 230 (quoting declarations of Ms. Weismann and Ms. Sloan stating that they "'exercised considerable billing judgment'" and "'reduced . . . hours'"), *with* Declarations of Adam J. Rappaport and Melanie Sloan ¶ 5, Sept. 6, 2013, CREW Fee Pet., Exhs. C-D (Docket No. 24-2) (same).  Of course, had CREW provided its time sheets, the Court could see for itself exactly what reductions were made.  *CREW v. DHS*, 2010 WL 8971920, at *2 ("CREW has failed to include [its] daily time sheets in [its] motion for attorneys' fees").[8]

## C.     CREW's Time Entries Are Vague and "Insufficient"

The Report acknowledges that the D.C. Circuit's decision in *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962 (D.C. Cir. 2004), indicates that cursory time entries such as those submitted by CREW in this case are "insufficient and must be discounted."  Report at 28.  The Report declines to recommend any discount, however, because (1) courts have purportedly narrowly interpreted *Role Models* and (2) again, CREW asserts that it has already reduced its fees.

---

[8]     Contrary to the Report's contention, Report at 17-18, *CREW v. DHS* was a similar FOIA matter.  That case involved several rounds of briefing on a series of substantive and procedural issues, covered a similar time span, and involved the same party and even the same counsel.  The final fee award in that case of less than $45,000 is instructive in analyzing CREW's request for nearly $100,000 more in this case.  *Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997) is also comparable.  Even if the Court subtracts the hours CREW expended on appeal spent on additional tasks, *see* Report at 18-19, the prevailing party in *Tax Analysts* still expended nearly one-third fewer attorney hours.  That is a material difference, which would translate to a $25,000-$35,000 reduction from CREW's appellate bill, which the Report dismisses out of hand as "not objectively unreasonable."  *Id.* at 19.

The cases the Report cites do not support its recommendation.  In *Smith v. District of Columbia*, the court reduced fees by 25% across the board for unreasonably excessive hours in light of the result obtained.  466 F. Supp. 2d 151, 156-61 (D.D.C. 2006).  In *DL v. District of Columbia*, after making very substantial disallowances and observing that "[t]his case possesses many of the same characteristics as *Role Models*," the court further reduced fees by 10% across the board because it was not convinced by "generic descriptions such as 'draft reply brief.'"  256 F.R.D. 239, 246 (D.D.C. 2009).  In *Blackman v. District of Columbia*, after reducing certain attorneys' billing rates and the time an attorney spent on one project by 30%, the court awarded fees with a 7% across-the-board reduction that the petitioner applied to account for billing record deficiencies.  677 F. Supp. 2d 169, 175, 178-80 (D.D.C. 2010).  And in *Harvey v. Mohammed*, the court made substantial reductions, including a reduction of $21,000 worth of time for entries that "lack[ed] sufficient detail."  951 F. Supp. 2d 47, 67 (D.D.C. 2013).  In *Petties v. District of Columbia*, the court distinguished *Role Models* as a case that — like this one — required no discovery, travel, evidentiary hearings, contested facts, or petitions for rehearing, contrasting it with the "very complex case" before the court, which "ha[d] been actively litigated for fourteen years, during which time defendants have yet to comply fully with federal law, requiring plaintiffs' class counsel to litigate numerous issues and counsel and the Special Master to continue to engage in extensive monitoring work."  No. 95-0148 (PLF), 2009 WL 8663462, *7 (D.D.C. Oct. 20, 2009).  More importantly, the court in *Petties* did not reduce fees because it was not confronted with vague time entries.  *Id.* at *7-10.

By contrast, here the Report acknowledges the insufficiency of CREW's time entries. Although the Report states that any vagueness problems are ameliorated by CREW's claimed

reductions, neither the Court nor the Commission can tell if this is so because CREW has failed to identify the reductions that were made.

## IV.     THE COMMISSION OBJECTS TO OTHER ERRORS IN THE REPORT

Finally, the Commission further objects to the following errors.

1.       For reasons the Commission has previously explained (FEC Fee Opp'n at 9-15), the Report's analysis of CREW's *eligibility* for attorneys' fees is also flawed because the Court of Appeals decision in this case had no effect on the resolution of CREW's substantive FOIA claim (*see id.* at 14-15), and this litigation likewise had no effect on the Commission's legal position regarding the substance of CREW's FOIA request, *see supra* pp. 5-7, 17-21.

2.       The Report incorrectly concludes that CREW satisfied its burden of demonstrating that the $140,000 it seeks here was reasonably incurred, based on the mistaken premise that the "appeal was essential in obtaining [CREW's] ultimate relief."  Report at 15-16. In fact, CREW's choice to litigate a procedural question, while not pursuing any administrative challenge to the Commission's FOIA production, served only to delay the parties' ultimate conclusion of this FOIA matter.  The Report itself underscores the irrelevance of the outcome of CREW's appeal by explaining that, "*win, lose, or draw*," the FEC would have had to produce any additional documents CREW continued to seek.  Report at 14 (emphasis added).  As demonstrated above and in the Commission's Fee Opposition, CREW's lawsuit was plainly unnecessary — and its expenditure of $140,000 was clearly excessive — as a means for resolving the substance of CREW's FOIA request.  *See supra* pp. 5-7, 17-21; FEC Fee Opp'n at 14-15.

3.       The Commission's analysis above and in its Fee Opposition demonstrate that the fee award recommended in the Report *dis*serves the legislative purpose underlying FOIA's fee

provision.  The Report's recommendation would force the federal government to finance

CREW's endeavor to establish new precedent that was neither necessary nor even helpful to the

timely resolution of CREW's FOIA request in this case, plainly not the circumstances Congress

envisioned when it established FOIA's fee provision.  (FEC Fee Opp'n at 23-25.)

## CONCLUSION

For the foregoing reasons, the Court should reject the Report and issue an order denying

CREW's motion, or, in the alternative, substantially reduce the amount of any fee award.

Respectfully submitted,

Lisa Stevenson (D.C. Bar No. 457628)
Deputy General Counsel — Law
lstevenson@fec.gov

Kevin Deeley
Acting Associate General Counsel
kdeeley@fec.gov

Erin Chlopak (D.C. Bar No. 496370)
Acting Assistant General Counsel
echlopak@fec.gov

Steve N. Hajjar
/s/ Charles Kitcher
Charles Kitcher (D.C. Bar No. 986226)
Attorneys
shajjar@fec.gov
ckitcher@fec.gov

FEDERAL ELECTION COMMISSION
999 E Street NW
Washington, DC 20463
March 3, 2014                                  (202) 694-1650