**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND )
ETHICS IN WASHINGTON, )
           )
              Plaintiff, )
           )
              v. )       C.A. No. 11-0951 (CKK)
           )
FEDERAL ELECTION COMMISSION, )
           )
              Defendant. )
_____)

**PLAINTIFF'S RESPONSE TO DEFENDANT FEDERAL ELECTION COMMISSION'S**
**OBJECTIONS TO MAGISTRATE JUDGE FACCIOLA'S**
**REPORT AND RECOMMENDATION**

March 20, 2014              ANNE L. WEISMANN
                               D.C. Bar No. 434584
                               MELANIE SLOAN
                               D.C. Bar No. 434584
                               Citizens for Responsibility and Ethics in
                                Washington
                               1400 Eye Street, N.W., Suite 450
                               Washington, D.C.  20005
                               Phone: (202) 408-5565
                               Facsimile: (202) 588-5020

                               Attorneys for Plaintiff

# TABLE OF CONTENTS

**Page**

STATEMENT ............................................................................................1

FACTUAL BACKGROUND ....................................................................3

ARGUMENT ..........................................................................................11

I.   MAGISTRATE JUDGE FACCIOLA'S REPORT AND
     RECOMMENDATION AS TO THE UNREASONABLENESS
     OF THE FEC'S POSITION IS FACTUALLY AND LEGALLY
     CORRECT ......................................................................................11

     A.   The Report Properly Concludes The FEC Acted
          Unreasonably In Delaying Producing Responsive
          Documents For Two Years Without Justification ................11

     B.   The Report Is Grounded In A Correct Construction
          Of The Settlement And Its Impact On CREW's
          Fee Petition ...........................................................................15

II.  THE REPORT AND RECOMMENDATION PROPERLY
     CONCLUDES CREW'S FEES ARE REASONABLE ....................21

     A.   After Examining The Evidence Of Record, Magistrate
          Judge Facciola Properly Concluded CREW Did Not
          Reconstruct Time Records Post Hoc ......................................21

     B.   The Report And Recommendation Properly Concluded
          CREW's Billing Time Intervals Are Not Too Large ..............24

     C.   The Report And Recommendation Properly Found
          CREW's Timesheet Entries Are Sufficiently Specific ...........25

III. THE FEC'S REMAINING OBJECTIONS LACK MERIT ...............27

IV.  CREW IS ENTITLED TO RECOVER THE FEES INCURRED
     IN RESPONDING TO DEFENDANT'S OBJECTIONS USING
     AN UPDATED *LAFFEY* MATRIX ...................................................29

CONCLUSION .......................................................................................32

i

# TABLE OF AUTHORITIES

**Cases**                                              Page(s)

*Bd. of Regents of Univ. of Washington v. EPA*, 86 F.3d 1214
(D.C. Cir. 1996) .................................................................20

Biery v. United States, 2012 U.S. Claims LEXIS 1446 (Fed. Cl. 2012) ......30

*Blackman v. District of Columbia*, 677 F. Supp. 2d 169 (D.D.C. 2010) ......24, 27

*Bolden v. J & R Inc.*, 135 F. Supp. 2d 177 (D.D.C. 2001) ............................29

C & E Servs., Inc. v. Biggs, 539 F. Supp. 2d 316 (D.D.C. 2008) ................19

*Copeland v. Marshall*, 641 F.2d 880 (D.C. Cir. 1980) (*en banc*) ................26

*CREW v. DHS*, Civil No. 08-1046, 2010 U.S. Dist. LEXIS 143517
(D.D.C. April 21, 2010) ....................................................................22, 25

*CREW v. DOJ*, 825 F. Supp. 2d 226 (D.D.C. 2011) ....................................21

*CREW v. FEC*, 839 F. Supp. 2d 17 (D.D.C. 2011) .......................................3

*CREW v. U.S. Dep't of Justice*, Civ. No. 11-0754 (GKK) ...........................31

*Davy v. CIA*, 550 F.3d 1150 (D.C. Cir. 2008) ..............................................14

*Eley v. District of Columbia*, Civ. No. 11-309 (BAH), 2013 U.S.
Dist. LEXIS 164995 (D.D.C. November 20, 2013) .........................29, 30

*Heller v. District of Columbia*, 832 F. Supp. 2d 32 (D.D.C. 2011) ..............30

*Horsehead Indus. v. EPA*, 999 F. Supp. 59 (D.D.C. 1998) ...........................14

*Jordan v. Dep't of Justice*, 691 F.2d 514 (D.C. Cir. 1982) ...........................26

*Judicial Watch, Inc. v. Bureau of Land Mgt.*, 562 F. Supp. 2d
159 (D.D.C. 2008) ............................................................................28, 29

*Judicial Watch v. U.S. Dep't of Justice*, 774 F. Supp. 2d 225
(D.D.C. 2011) ...................................................................................29

*Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983) ...............29

*Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d
    1319 (D.C. Cir. 1982) ........................................................................26, 28

*Northwest Coalition for Alternatives to Pesticides v. EPA*, 421 F. Supp.
    2d 123 (D.D.C. 2006) ..........................................................................29

*Petties v. District of Columbia*, Civ. No. 95-0148, 2009 U.S. Dist.
    LEXIS 127505 (D.D.C. Oct. 20, 2009) ..............................................26

*Role Models Am., Inc. v. Brownless*, 353 F.3d 962 (D.C. Cir. 2004) ............25, 2, 27

*Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000) ...............29

*Salazar v. District of Columbia*, Civ. No. 93-452 (GK), 2014 U.S.
    Dist. LEXIS 10040 (January 28, 2014) ...............................................30

*Scudder v. CIA*, Civ. No. 12-807 (BAH), U.S. Dist. LEXIS 31824
    (D.D.C. March 12, 2014) ....................................................................19

*Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997) .....................................25

## Rules and Regulations

Fed. R. Evid. 408(a)(2) ...................................................................................18, 19

**STATEMENT**

Reduced to its essence, this dispute over plaintiff CREW's[1] entitlement to its attorney

fees and costs concerns, as Magistrate Judge John M. Facciola explained, "an agency that

misread the statute, relied on an appeal from a lower court as a reason to do nothing until that

appeal was resolved against it, and then produced the documents it should have produced two

years earlier had it not misinterpreted FOIA."  Report and Recommendation (Rpt.) at 14 (Dkt.

35).  In these circumstances, "it is unconscionable" for the Federal Election Commission (FEC)

"to refuse to pay the attorney fees it caused CREW to expend to defeat the FEC's resistance to

producing the documents."  *Id.*  Yet that is precisely what the FEC is doing with its objections to

the Report and Recommendation that argue CREW should not recovery *any* of its fees.  Having

gambled and lost, the agency must now pay the consequences.

In its objections, the FEC attempts to manufacture a factual issue that does not exist,

while mischaracterizing what actually did happen.   According to the FEC, Magistrate Judge

Facciola relied on "an incorrect version of the facts," Defendant Federal Election Commission's

Objections to Magistrate Judge Facciola's Report and Recommendation (D's Obj.) at 1, to

conclude the FEC acted unreasonably in refusing to release any additional documents until the

parties reached a settlement post-remand.  In truth, it is the FEC that relies on an incorrect

version of the facts, engaging in revisionist history as to the relief CREW sought throughout this

lawsuit and the relationship between that relief and the acts the FEC agreed to perform in

settlement of all remaining claims.  At bottom, the FEC's so-called factual discrepancies are

nothing more than a red herring to conceal its recalcitrant and obdurate behavior.

The FEC also attempts once again to re-litigate the very issue it lost before the D.C.

---

[1] CREW is the acronym for Citizens for Responsibility and Ethics in Washington.

Circuit, arguing the reasonableness of a legal position the appellate court rejected entirely as having no basis in the express language, provisions, and legislative history of the Freedom of Information Act (FOIA). From this, the FEC asserts Magistrate Judge Facciola erred in concluding the agency did not act reasonably, construing that finding as based on the agency's legal position on the meaning of "determination." To the contrary, Magistrate Judge Facciola found it unreasonable that over the two years that followed this Court's initial ruling, the FEC refused to release any additional responsive documents. Even if the FEC had prevailed before the D.C. Circuit on its procedural objections to further disclosure as Magistrate Judge Facciola noted, it "would have had to produce the documents eventually." Rpt. at 14. Lacking any cogent objection to this conclusion, the FEC falls back on its familiar refrain that CREW, not the agency, is at fault here because CREW failed to file an administrative appeal after this Court ruled against it. This is sheer nonsense.

The FEC further objects to the reasonableness of the recommended fee award, arguing CREW failed to properly document its fee request, relied on records not contemporaneously prepared, billed in inappropriately large time increments, and submitted time entries that are "[v]ague and '[i]nsufficient.'" D's Obj. at 25. Magistrate Judge Facciola properly considered and rejected each of these claims, and the FEC has offered no valid basis to depart from his conclusions.

Finally on the merits, the FEC offers a grab bag of objections, each of which it addresses in the most cursory fashion. *See* D's Obj. at 27-28. With virtually no support, they reinforce the overall unreasonableness of the agency's position and the appropriateness of each of the findings and recommendations of Magistrate Judge Facciola.

In addition to the fees Magistrate Judge Facciola recommended CREW be awarded, CREW also is entitled to recover fees incurred in responding to the FEC's objections.  Further, in calculating those fees, the Court should use an updated *Laffey* Matrix that relies on the legal services component of the Consumer Price Index (CPI).  As recent decisions from this District explain, those rates more accurately reflect prevailing market rates for attorney fees in the Washington, D.C. area.[2]

## **FACTUAL BACKGROUND**

Much of the factual background to this case is well known to the Court, given the parties' prior submissions, and is summarized below drawn in large part from this Court's initial decision.  *See CREW v. FEC*, 839 F. Supp. 2d 17 (D.D.C. 2011).  On March 7, 2011, CREW sent by facsimile a FOIA request to the FEC seeking correspondence between three named FEC commissioners and outside entities and parties; calendars and agendas for the three commissioners; all written *ex parte* communications delivered to an ethics official by the three commissioners or someone acting on their behalf; and statements setting forth the substance and circumstance of any *ex parte* communication prepared by the three commissioners or someone acting on their behalf.  By email sent March 8, 2011, the FEC acknowledged receipt of CREW's request and indicated the agency had granted CREW's request for a fee waiver.

Over the next several months, the parties engaged in a number of discussions about the scope of CREW's request.  As a result of those discussions, CREW agreed to exclude certain categories of requested documents *from the agency's initial search*, and to revisit the full scope

---

[2] Recognizing it did not file timely objections to the *Laffey* Matrix used by Magistrate Judge Facciola, CREW seeks the updated rates only for the work performed responding to the FEC's objections.

of its request *after* reviewing what the FEC produced as part of this initial production.  Critically, during these discussions CREW never detailed for the FEC what a follow-up search would entail because CREW had not yet seen a single fruit of the agency's initial search.  The FEC agreed to CREW's request that it produce non-exempt documents on a rolling basis.  The agency, however, failed to provide CREW at any point with a date certain by which it would begin or complete document production.

Nearly two months after CREW submitted its request, the FEC for the first time advised CREW it had culled an initial batch of responsive documents and promised production within two weeks and a timetable for completing disclosures within the week.  CREW continued to press the FEC for a status update and timetable for completing processing, but had no success in securing either.  By May 23, 2011, more than two months after CREW filed its request, CREW had neither received any documents nor any specification from the FEC about what documents it would produce, when any documents would be produced, and what exemptions the FEC would claim.  CREW therefore filed suit in district court on that date, alleging the FEC had failed to respond to CREW's request in a timely fashion and had wrongfully withheld documents under the FOIA.

Once in litigation, the FEC made three separate productions of responsive documents, culminating in what it characterized as a final production on June 23, 2011.  The third and purportedly final production coincided with the FEC's motion to dismiss CREW's complaint or, in the alternative, for summary judgment based on a claim the case was moot and CREW had failed to exhaust administrative remedies before filing suit.  Letters accompanying the first and second productions stated they were not final agency decisions subject to appeal; a letter

accompanying the final production advised CREW of its right to appeal administratively any adverse determination. By that time, of course, CREW already was in litigation with the FEC. In all, the FEC produced 835 pages of documents, withheld portions of 219 pages pursuant to Exemptions 2, 4, 6, and 7(C), deemed 25 pages non-responsive, and withheld an unknown number of records in their entirety pursuant to Exemption 6.

In its memorandum in support of its motion to dismiss (Dkt. 4) (D's MTD), the FEC asserted CREW's claim is moot "[b]ecause CREW has received all the documents to which it is entitled under FOIA." D's MTD at 6. CREW objected, outlining how the FEC's production fell short of its legal obligations. Specifically, CREW challenged the FEC's failure to produce five categories of records: (1) replies to many of the emails produced by the FEC; (2) critical metadata; (3) all attachments to emails; (4) calendars for FEC Commissioners Hunter and McGahn; and (5) *ex parte* communications notices in the possession of an FEC ethics official. Plaintiff's Opposition to Defendant's Motion to Dismiss, Or, In The Alternative, For Summary Judgment (P's Opp. to MTD) (Dkt. 5) at 10. CREW also pointed to its express reservation of the right, after reviewing the records the FEC produced in response to its initial search, to "*further clarify whether additional searches are needed to fulfill the request*." *Id.* at 10-11, quoting Letter from Adam J. Rappaport to Nicole St. Louis Matthis, March 29, 2011 (Dkt. 4-1) (emphasis in original).

This Court concluded the case was not moot because the complaint "assert[s] a substantive challenge to the agency's response[.]" 839 F. Supp. 2d at 24. The Court, however, granted the FEC's motion for summary judgment based on a finding CREW had failed to exhaust administrative appeal remedies. *Id.* at 27-28. CREW filed a timely appeal from this

ruling, and the issues were fully briefed in the appellate court.  When it emerged at the oral

argument before the D.C. Circuit that the FEC had never consulted the Department of Justice

(DOJ) on the merits of the agency's position the court, on its own motion, invited DOJ to file a

brief expressing the views of the United States on this case.  DOJ accepted this invitation and

filed a brief agreeing with the FEC that the FOIA required CREW to actually exhaust

administrative appeal remedies before filing suit.

By opinion dated April 2, 2013, the D.C. Circuit held "the FEC did not make and

communicate a 'determination' within the meaning of 5 U.S.C. § 552(a)(6)(A)(i) within 20

working days of receiving CREW's FOIA request."  CREW v. FEC, 711 F. 3d 180, 190 (D.C.

Cir. 2013).  The appellate court accordingly concluded CREW "is deemed to have exhausted its

administrative appeal remedies under *Section 552(a)(6)(C)(i)*, and its suit may proceed," and

remanded this case "for further proceedings."  *Id.* (emphasis in original).

The D.C. Circuit issued its mandate on June 4, 2013, and on June 12, 2013, this Court

issued a Minute Order directing the parties to submit a joint status report by June 26, 2013.

Minute Order, June 12, 2013.  Thereafter, the parties engaged in settlement discussions initiated

by CREW's counsel, which resolved all issues with the exception of CREW's request for

attorneys' fees and costs.  Specifically, by letter dated June 25, 2013, nearly three months after

the appellate court ruling, CREW's counsel outlined the five categories of records it had yet to

receive:  the identical categories outlined in its opposition to the FEC's Motion to Dismiss.

*Compare* Letter from Anne Weismann to Steve Hajjar, June 25, 2013 (June 25, 2013 Letter)

(Dkt. 36-2) *with* P's Opp. to MTD at 10.  CREW also outlined specific redactions under FOIA

Exemptions 2, 4, 6, and 7(C) it deemed "questionable" in the absence of additional information.

June 25, 2013 Letter at 1-2. CREW further identified portions of 25 pages of documents withheld as "non-responsive," but lacking a clear explanation for this status. *Id.* at *2*. Finally, based on this outline of outstanding issues, CREW requested that the FEC "re-review its production and withholdings to determine what additional information the FEC can provide CREW and, if the FEC continues to rely on an exemption, an explanation for why the exemption applies." *Id.* at 2. CREW stated explicitly its identification of remaining issues was "for settlement purposes only," and if settlement did "not prove fruitful, we will consider litigating a broader array of issues." *Id.* at 1.

The FEC responded by letter dated July 31, 2013 (July 31, 2013 Letter) (Dkt. 36-3). First, the FEC stated neither Commissioner McGahn nor Commissioner Hunter maintained calendars "that constitute[] an agency record subject to FOIA," and characterized the requested metadata as "neither accessible nor 'readily reproducible'" by the agency. July 31, 2013 Letter at 1-2. Second, as to the replies to disclosed emails, the FEC represented it had "located each of these eleven replies," claimed two were non-responsive, and included copies of the other nine along with a log of redacted portions. *Id.* at 2. Third, the FEC noted it had "located" the three missing attachments, copies of which it included with its letter. *Id.* Fourth, as to additional replies and attachments not enumerated in CREW's letter, the FEC represented it had reviewed "the entire set of produced documents," and was "in the process of searching for and collecting the few outstanding replies and attachments that we identified." *Id.* Fifth, the agency explained it had not located any *ex parte* communications notices in the possession of an ethics officer, but identified other communications that are publicly available. July 31, 2013 Letter at 2. Sixth, the FEC noted it had reviewed each questioned redaction and was now producing most of the

redacted material together with a log regarding the other redactions CREW was challenging. *Id.*
at 2-3.  Finally, the FEC offered an additional explanation for why certain portions of documents
had been treated as "non-responsive."  *Id.* at 3.

By follow-up letter dated August 6, 2013 (August 6, 2013 Letter) (Dkt. 36-4), the FEC
notified CREW of the results of the agency's re-review of "the entire set of documents produced
in response to CREW's March 2011 FOIA request."  As a result of that additional review, the
agency located 12 additional documents, claimed two were exempt in their entirety, and
provided CREW with the remaining documents with the exception of one for which the FEC did
not have an "accessible, readily reproducible record[.]"  August 6, 2013 Letter.

The parties were unable to resolve the issue of attorney fees and, accordingly, CREW
filed a petition for fees on September 9, 2013 (Dkt. 24).  After full briefing, this matter was
referred to Magistrate Judge Facciola, who issued his Report and Recommendation on February
12, 2014.  Magistrate Judge Facciola recommended CREW be awarded $139,990.68 in
attorneys' fees and $500 in costs.[3]  Rpt. at 30.  First, Magistrate Judge Facciola concluded
CREW was eligible for attorney fees because it had substantially prevailed through a judicial
order, specifically the D.C. Circuit opinion and order "validating its position and providing
instructions to the FEC[.]"  *Id.* at 9.  Second, the Report and Recommendation concluded CREW
also meets the eligibility requirement for fees because CREW caused a voluntary change in the
FEC's position, which came about only after CREW's "victory in the court of appeals."  *Id.* at
10.  That victory led to settlement discussions that "encompassed an additional search by the

---

[3] As the Report and Recommendation notes, the FEC did not contest CREW's claimed
costs of $500.  Rpt. at 30 n.23.

FEC for responsive documents and an additional release of documents." *Id.* Magistrate Judge Facciola characterized this as "additional relief[.]" *Id.* at 11.

The Report and Recommendation further concluded CREW is entitled to attorney fees because its lawsuit served a public benefit, Rpt. at 11, CREW derived no commercial benefit, and CREW's interest in the records satisfies the fee requirements. *Id.* at 12. Magistrate Judge Facciola also found the FEC's withholding of certain responsive records was not sufficiently reasonable because the FEC "provided no legal justification – reasonable or otherwise – for its refusal over the preceding two years to release" the documents it ultimately released "in conjunction with the settlement agreement." *Id.* at 13. As he concluded, "the release of the documents two years later can only be justified by the FEC's defense of a losing appeal." *Id.* at 15.

Finally, the Report and Recommendation analyzed and rejected each of the FEC's arguments as to why CREW's fees should be reduced. Rpt. at 15-29. Magistrate Judge Facciola rejected the claim CREW should not be reimbursed for hours spent pursuing its appeal, noting "[i]f CREW had not done so, it would not have received the additional documents." *Id.* at 16. He also rejected the claim CREW's request is objectively unreasonable, analyzing precisely how it contrasts with other dissimilar cases where courts concluded the fee requests were unreasonable. *Id.* at 16-19. The Report and Recommendation further rejected the notion CREW's fees should be docked because it failed to use a "template" for its briefs, explaining in the context of such "novel legal issues that required substantial analysis and advocacy," "[n]o competent lawyer would use a 'template[.]'" *Id.* at 19. As to the claim CREW had under-delegated attorney work, the Report and Recommendation examined the actual work done by

CREW's attorneys, noted the FEC's failure to criticize "any specific entries in CREW's time records," Rpt. at 21, and concluded the "extensive briefing" in the case "on D.C. Circuit precedent and the legislative history and purpose of FOIA" made this a far cry from "a run-of-the-mill FOIA case." *Id.* at 22. Further, Magistrate Judge Facciola refused to discount the 2.5 hours CREW spent reviewing released documents, explaining "[o]nly by reviewing the documents would it know whether to challenge the exemptions or know whether all of the documents had even been produced." *Id.* at 23.

The Report and Recommendation also accepted CREW's timekeeping practices, rejecting the FEC's claim CREW had reconstructed its time records *post hoc*, and noting specifically how the declarations CREW's attorneys submitted here differed from those in cases where courts had reached the opposite conclusion. *Id.* at 23-25. Nor did Magistrate Judge Facciola find the time intervals used by CREW to be too large, particularly given the percentage deductions CREW's attorneys made to avoid seeking compensation for inflated hours. Rpt. at 26. He also noted the failure of the FEC to identify any specific time entry "reporting more time than was necessary to complete the task." *Id.* at 27. As for the sufficiency of CREW's timesheet entries, Magistrate Judge Facciola concluded, "when viewed in context" they provide "sufficient detail for each . . . entr[y][.]" *Id.* at 29. At bottom, he noted, to anyone familiar with this case – such as the FEC or this Court – CREW's entries are clear and carry its burden of proof. Rpt. at 30.

The FEC filed objections to the Report and Recommendation on March 3, 2014.

**ARGUMENT**

I.    **MAGISTRATE JUDGE FACCIOLA'S REPORT AND
      RECOMMENDATION AS TO THE UNREASONABLENESS
      OF THE FEC'S POSITION IS FACTUALLY AND LEGALLY
      CORRECT.**

   A.    **The Report Properly Concludes The FEC Acted Unreasonably
         In Delaying Producing Responsive Documents For Two Years
         Without Justification.**

Apparently conceding CREW's *eligibility* for attorney fees here[4] – an eligibility

grounded, as the Report and Recommendation found, in CREW substantially prevailing through

the judicial order it obtained from the D.C. Circuit (Rpt. at 7-9) and the voluntary change it

caused in the FEC's position (*id.* at 9-11) – the FEC instead takes on the issue of CREW's

*entitlement* to fees.  D's Obj. at 11.  According to the FEC, Magistrate Judge Facciola erred

because he failed to properly credit the legal context in which the Commission argued its

interpretation of the FOIA's "determination" provision, specifically other cases the agency

continues to insist support its rejected statutory interpretation.  D's Obj. at 12.  Because, the FEC

argues, its legal position on the meaning of the "determination" provision under the FOIA had "*a

reasonable basis in the law*," *id.* at 13 (emphasis in original), it necessarily follows CREW was

---

[4] The FEC pays lip service to challenging CREW's eligibility for fees in a single
sentence, thrown in at the end of its brief, where it states without explanation or proof that the
decision of the D.C. Circuit in this case "had no effect on the resolution of CREW's substantive
FOIA claim," nor did this litigation have an "effect on the Commission's legal position
regarding the substance of CREW's FOIA request."  D's Obj. at 27, point 1.  But LCvR 72.2(b)
requires any party objecting to the ruling of a magistrate judge to "specifically designate the
order or part thereof to which objection is made, and the basis for the objection."  Magistrate
Judge Facciola devoted five pages to explaining why CREW is eligible for fees here (Rpt. at 6-
11).  The FEC's one-sentence objection does not come close to the specific designation and basis
the rule requires, and in any event provides no basis to disturb Magistrate Judge Facciola's
conclusion CREW meets the eligibility criteria for a fee award.

not entitled to a fee award.  *Id.*

The FEC, however, seriously misconstrues the basis for Magistrate Judge Facciola's findings.  First, as he clarified, the government, not plaintiff, bears the burden of showing it had a "reasonable basis for not disclosing the material until after the plaintiff filed suit."  Rpt. at 12 (citation and quotation omitted).  Magistrate Judge Facciola concluded the FEC failed to carry its burden here because while it reasonably released documents shortly after CREW filed this lawsuit, it refused for the following two years to release anything more, providing "no legal justification – reasonable or otherwise – for its refusal[.]"  *Id.* at 13.  Thus, the issue here, as Magistrate Judge Facciola explained, is not whether the agency acted reasonably in taking the position CREW had failed to exhaust administrative remedies.[5]  Rather, the issue is whether the FEC acted reasonably in refusing to complete its processing of responsive documents until after the D.C. Circuit rejected its procedural argument, remanded the case to this Court for further proceedings, and CREW initiated settlement discussions with the government.

When properly framed, it is clear the FEC's position was far from reasonable.  While the agency's arguments against initially producing documents until after CREW filed suit may seem reasonable (something CREW does not concede),[6] there is nothing reasonable about its refusal to complete its processing obligations for two additional years, even in the face of a loss before the

---

[5] For the reasons outlined in CREW's memorandum in support of its fee petition, CREW continues to believe the FEC acted unreasonably in advancing an interpretation of the "determination" provision of the FOIA that has no basis in law and fact, which provides an independent basis for awarding CREW its fees in this action.  *See* Memorandum Of Points And Authorities In Support Of Plaintiff's Motion For An Award Of Attorneys' Fees And Costs (Dkt. 24-1) at 13-16 (P's Fee Pet.).  If this Court accepts Magistrate Judge Facciola's reasoning, however, it need not reach this issue.

[6] *See* P's Fee Pet. at 16-17.

D.C. Circuit.  Under these circumstances Magistrate Judge Facciola correctly reasoned, "win, lose, or draw" on its appeal "the FEC would have had to produce the documents eventually:  had it won on appeal, CREW would have needed only to exhaust whatever administrative remedy the FEC imposed before the FEC would have to turn over the documents."  Rpt. at 14.  Gambling on a win in the appellate court, the FEC took no steps to complete its processing of CREW's request.  Once the D.C. Circuit handed the FEC a loss by rejecting its interpretation of the "determination" provision of the FOIA, thereby resurrecting CREW's legal claim, the FEC still failed to take any affirmative action to produce to CREW or otherwise account for all additional unprocessed responsive documents.  Not until CREW requested additional documents in the course of settlement discussions did the FEC finally address the five categories of missing documents CREW identified early on in this case and other issues CREW enumerated going to the adequacy of the agency's search and the propriety of its withholdings.

The FEC offers no justification for this delay, relying solely on the reasonableness of its legal arguments concerning the meaning of a "determination" under the FOIA.  But those arguments are beside the point.  Having lost its gamble, the FEC must now "accept the consequences of losing and the reality that its doing so caused CREW to expend the legal fees it did to win the appeal."  Rpt. at 14.  Those consequences include liability for the fees and costs CREW expended to secure an appellate victory, as CREW was "compelled to press an appeal to get what the FEC [now] claims it would have given in the first place."  *Id.*[7]

---

[7] Further highlighting the unreasonableness of the FEC's position is its attempt here to re-litigate the reasonableness of a legal position the D.C. Circuit rejected entirely as having no basis in the FOIA's express language, statutory structure, or legislative history.  Such continued insistence on a flatly rejected interpretation is the very essence of "recalcitrant" or "obdurate behavior," a factor that is considered in assessing the reasonableness of the agency's behavior,

In short, as the analysis of Magistrate Judge Facciola makes clear, CREW's entitlement

to fees flows from the unreasonable decision of the FEC to not produce additional responsive

documents, regardless of the merits of its position on appeal.  Nor does the FEC's belated excuse

that CREW at any time could have approached the FEC with any follow-up inquiries, D's Obj. at

16-17, excuse its failure to produce all responsive documents.  It is the FEC, not CREW, that is

subject to the affirmative obligations under the FOIA to conduct a reasonable search for all

responsive documents and withhold only properly exempt material.  Equally weak is the FEC's

continued insistence that CREW could have, at any time after its loss in this Court, filed an

administrative appeal.  *See, e.g.*, D's Obj. at 17.  Not only did CREW's appeal to the D.C.

Circuit negate any obligation to simultaneously pursue an administrative appeal, had CREW

opted for the administrative review course it likely would have lost the ability to appeal a

significant procedural issue with wide applicability beyond this case on either mootness or

ripeness grounds.[8]

Further reinforcing CREW's entitlement to fees is the treatment CREW's appeal received

in the D.C. Circuit, which "rejected in its entirety the FEC's argument on appeal and accepted all

---

*Davy v. CIA*, 550 F.3d 1150, 1162 (D.C. Cir. 2008), and which amounts to "a 'stubbornness' or 'mulishness' standard[.]" *Horsehead Indus. v. EPA*, 999 F. Supp. 59, 66 n.5 (D.D.C. 1998) (citations omitted).

[8] In attempting to justify its failure to release any documents during the two years that followed this Court's ruling on exhaustion, the FEC argues providing CREW the additional documents earlier would not have mooted CREW's appeal as "CREW could have kept its lawsuit alive . . . by continuing to assert its unspecified challenge to the scope of the Commission's search or its reserved right 'to revisit the full scope of its request' at some unspecified later date."  D's Obj. at 21.  Not only is the argument sheer speculation, but it defies reason to believe the appellate court would have allowed CREW to maintain its appeal based only on the preservation of a right to complain at some future date about some as yet unidentified aspect of the agency's search.

of CREW's arguments without dissent." Rpt. at 14, cited in D's Obj. at 12. While this is not the linchpin of Magistrate Judge Facciola's finding on the reasonableness of the agency's position, as the FEC erroneously suggests (D's Obj. at 12), it certainly adds weight to his conclusion that relying on a misinterpretation of the FOIA for two years to excuse an ongoing obligation to produce further responsive documents is not reasonable.[9]

**B.      The Report Is Grounded In A Correct Construction Of The Settlement And Its Impact On CREW's Fee Petition.**

Having failed to demonstrate any flaw in Magistrate Judge Facciola's legal reasoning, the FEC pivots to the facts, arguing he misconstrued the nature and scope of the settlement discussions and therefore improperly concluded the FEC unreasonably withheld responsive records. It is the FEC, not Magistrate Judge Facciola, that has misconstrued the facts and offered a highly distorted and inaccurate description of the record here.

First, as even the FEC concedes, from the outset CREW reserved its right to request an additional search to locate all responsive documents after reviewing documents produced from the initial search. *See* D's Obj. at 3. CREW highlighted this reservation in its opposition to the defendant's motion to dismiss, explaining it defeated any claim of mootness. *See* P's Opp. to MTD at 10. In that same brief, CREW also enumerated the gaps in the FEC's production to date:

_____

[9] It necessarily follows that the FEC's arguments concerning a purported tension between Magistrate Judge Facciola's findings on reasonableness and his findings that CREW is entitled to all of its requested fees in part because of the complexity of the issues raised on appeal, D's Obj. at 13-14, are beside the point. In any event, even though the agency was just flat wrong in its interpretation of the "determination" provision of the FOIA, demonstrating the fallacy of the agency's legal position still required CREW on appeal to research and brief the FOIA's full legislative history and other provisions of the FOIA that conflict with the agency's interpretation.

Many of the emails produced by the FEC denote they were replied to, but the FEC has failed to produce those replies . . . The FEC's production omits critical metadata . . . The FEC also has failed to produce all attachments to emails . . . although CREW's request sought 'all calendars, agendas, or other recordations of the schedules of FEC Commissioners Peterson, Hunter, and McGahn . . . the FEC produced calendars for only Commissioner Peterson . . . Similarly, although CREW sought *ex parte* communications notices in the possession of an ethics official, the FEC produced none.

*Id.*

The settlement discussions CREW initiated with the FEC followed this same course. CREW's Letter of June 25, 2013 lists the identical five categories of missing records, offering some additional detail such as those emails for which replies appear to be missing.  June 25, 2013 Letter at 1.  Similarly, in opposing the FEC's motion to dismiss CREW argued the agency had failed to explain the propriety of its exemption claims, P's Opp. to MTD at 11-3, a theme CREW also took up in its June 25 Letter, when it enumerated specific redactions it continued to question.  Letter of June 25, 2013 at 1-2.

As this comparison between CREW's initial position, articulated in a filing with this Court on July 7, 2011, and CREW's settlement position, set forth in its letter of June 25, 2013, makes clear, CREW consistently has identified to the FEC and this Court the nature and scope of what is missing from the agency's productions submitted to CREW in 2011.  Accordingly, it cannot seriously be disputed that in its reply in support of its fee petition (Dkt. 30), CREW accurately described the additional search the FEC conducted as part of the settlement as that which CREW "sought from the outset[.]"  Reply in Support of Plaintiff's Motion For An Award Of Attorneys' Fees And Costs at 4.

Nevertheless, the FEC takes issue with this characterization and faults Magistrate Judge

Facciola for "uncritically adopt[ing]" CREW's description of the settlement reached by the parties, D's Obj. at 2, because, according to the FEC, the settlement "did not involve some new, broader search that the Commission had initially failed to perform[.]"  *Id.* at 2.  While it is true that Magistrate Judge Facciola did not have the correspondence between the parties memorializing the settlement and its contents when he described the settlement, the FEC has now supplied the missing evidentiary support, which confirms – not contradicts – what CREW described and Magistrate Judge Facciola found.

The agency's own letter of July 31, 2013, which it submitted in support of its objections to the Report and Recommendation (Dkt. 36-3), provides direct and unequivocal evidence that the FEC conducted an additional search that led to the production of previously withheld documents.  After responding to CREW's questions about the missing calendars and metadata, the FEC's counsel advised CREW "[w]e have located each of [the missing] eleven replies." Letter of July 31, 2013 at 2.  Similarly, the FEC counsel described "locat[ing] each of the[] three attachments" that it was now providing for the first time.  *Id.*  Surely the FEC cannot be disputing that these documents were located after a search.  Even more explicit is the FEC's explanation of the additional review it conducted for replies or attachments not included in the agency's initial production.  Counsel wrote: "We have completed that review and are now in the process of *searching for* and collecting the few outstanding replies and attachments that we identified."  *Id.* (emphasis added).  Quite simply, the FEC conducted additional searches to find additional documents it failed to produce in its initial response to CREW's FOIA request, but which CREW identified as missing early on in this litigation.  This reality tracks precisely Magistrate Judge Facciola's factual description of the settlement as giving CREW the documents

CREW had made clear it still sought.  *See* Rpt. at 13-14.[10]

Moreover, that CREW accepted *for settlement purposes* the FEC's explanation for the missing calendars, metadata, and notices of *ex parte* communications does not undermine Magistrate Judge Facciola's finding that the agency acted unreasonably.  According to the FEC, its "uncontested explanations [provided during settlement negotiations] . . . directly refute the magistrate judge's supposition, Report 13-14, that such requested documents were unlawfully withheld for two years."  D's Obj. at 19.  But the FEC's attempt to prove the merits of an underlying claim through statements made in settlement discussions is barred directly by Rule 408(a)(2) of the Federal Rules of Evidence.  That Rule prohibits any party from relying on statements made during settlement negotiations to "prove or disprove the validity or amount of a disputed claim."  Here, the FEC offers the July 31, 2013 letter it sent to CREW during the settlement process and the explanations therein concerning the purported non-existence or unavailability of certain categories of requested documents as proof of the validity of its claim those documents were not unlawfully withheld.  Accepting the FEC's argument runs directly

---

[10] The FEC suggests the additional email replies and attachments it released are only "arguably responsive."  D's Obj. at 19.  But the FEC provides no explanation for why their responsiveness should be questioned at all, much less a compelling basis to disturb the findings of the Report and Recommendation.  Similarly, the FEC claims the documents it finally produced during the settlement process were "not intentionally withheld[.]"  *Id.* at 20.  Beyond the fact the agency offers no support for this claim, the record is quite clear that – regardless of motive – the FEC did not produce these documents until "the appeal was resolved against it," Rpt. at 14, the case was back in this Court where the agency once again was going to have to demonstrate the adequacy of its search and the propriety of its withholdings, and CREW sought production as part of a settlement.  Finally, whatever lack of clarity was in the record considered by Magistrate Judge Facciola pertaining to "whether the settlement also resulted in the FEC releasing documents or portions of documents that had been previously redacted in full or in part," Rpt. at 10 n.5, has now been addressed through the documents submitted by the FEC in support of its objections.  In any event, Magistrate Judge Facciola did not rely on any such release in concluding the agency acted unreasonably.

counter to the language and purpose of Fed. R. Evid. 408(a)(2).[11]  That CREW was willing to

compromise these claims by accepting the FEC's explanations rather than continue the litigation,

ongoing for nearly three years, provides no basis to call those explanations "uncontested," and

certain provides no basis to upset the Report and Recommendation on the unreasonableness of

the FEC's two-year refusal to release responsive documents.[12]

The FEC also insists it was harmed by CREW's reference in its reply brief to the

settlement and the documents the FEC produced to CREW as part of that settlement.

Characterizing these statements as a new argument that formed part of the basis for the Report

and Recommendation, the FEC argues CREW waived the right to claim the settlement entitles it

to fees here because of its belated inclusion.  D's Obj. at 15.  All that CREW included was the

factual statement that, as a result of the legal obligations reinstated by the ruling of the D.C.

Circuit, "the FEC conducted an additional search[.]"  D's Reply at 1.  *See also id.* at 4 ("It is

---

[11] The Advisory Committee Notes to the 1974 Enactment describe the purpose of the rule as "encourag[ing] settlements which would be discouraged if such evidence were admissible." *See also C & E Servs., Inc. v. Biggs*, 539 F. Supp. 2d 316, 319 (D.D.C. 2008) ("The Rule is drafted to provide every incentive for compromise, and without such a broad rule of exclusion, litigants would be deterred from free-flowing settlement negotiations[.]") (quotation and citation omitted).

[12] Nor is this an academic question, as CREW certainly could have challenged, for example, the FEC's curiously worded assertion that neither Commissioner McGahn nor Commissioner Hunter "maintains a calendar *that constitutes an agency record subject to FOIA*," July 31, 2013 letter at 1 (emphasis added), which may have led to a dispute over whether the calendars the two maintained were, in fact, agency records subject to FOIA.  Similarly, the FEC claimed the requested metadata is "neither accessible nor 'readily reproducible' by the Commission," *id.* at 2, a claim equally subject to challenge on both legal and factual grounds. *See, e.g.*, *Scudder v. CIA*, Civ. No. 12-807 (BAH), U.S. Dist. LEXIS 31824 (D.D.C. March 12, 2014) (discussing meaning of "readily reproducible" under the FOIA).  That CREW chose instead to not pursue these claims further as part of a settlement simply has no legal bearing here under Fed. R. Evid. 408(a)(2).

worth noting that, as part of that settlement, the FEC agreed to conduct the additional search CREW sought from the outset.").  It is difficult to understand how the FEC is harmed by a truthful reference to the settlement that occurred here.  At bottom, the FEC's quarrel is with the magistrate judge and his reliance on the settlement in awarding CREW its requested fees, a reliance that, as explained, was entirely proper.  As to waiver, courts are disinclined to consider arguments raised for the first time in a reply brief because they deprive the opposing party of an opportunity to respond.  *See, e.g.*, *Bd. of Regents of Univ. of Washington v. EPA*, 86 F.3d 1214, 1221 (D.C. Cir. 1996) (cited at p. 15 of D's Obj.).  Here, however, the FEC through its 28-page objections and submission of new evidence has had a more than adequate opportunity to address this issue fully, defeating any waiver claim.

Grasping at straws, the FEC argues that because the most recently released documents comprise only a small percentage of the total volume of material the FEC produced, they do not justify finding CREW eligible for a fee award.  D's Obj. at 19-20.  Again, however, the FEC misses the point that its liability for a fee award flows not from the volume and significance of the documents it withheld for two years, but the fact that CREW had to pursue an appeal before the D.C. Circuit in order to obtain those documents.

Nor, contrary to the suggestion of the FEC, did Magistrate Judge Facciola place the onus on the FEC "to pursue CREW's administrative appeal on CREW's behalf[.]"  *Id.* at 20.  This is not a case where the FEC was left to guess at what issues CREW considered still outstanding.  As explained above, CREW has consistently described the outstanding issues and missing documents from the very early stages of the district court litigation through the settlement discussions that took place last summer.  In any event, the only onus the FEC bore was to

comply fully with its legal obligations under the FOIA, which included producing all responsive, non-exempt material.

## II.   THE REPORT AND RECOMMENDATION PROPERLY CONCLUDES CREW'S FEES ARE REASONABLE.

### A.   After Examining The Evidence Of Record, Magistrate Judge Facciola Properly Concluded CREW Did Not Reconstruct Time Records *Post Hoc*.

In both its initial opposition to CREW's fee petition and its objections to the Report and Recommendation the FEC has attempted to recast the timekeeping evidence here as identical to that submitted by CREW in other cases and found deficient.  After conducting a close analysis of all referenced declarations, Magistrate Judge Facciola properly found the FEC to be "plainly wrong on this point."  Rpt. at 23.  The FEC has offered no basis to deviate from this finding.

The Report and Recommendation examines closely the language used in declarations submitted in other cases and found lacking, noting specifically how that language differs from the declaration submitted in this case.  Indeed, Magistrate Judge Facciola went beyond the descriptions of the declarations in the opinions to examine the declarations themselves.  Specifically, in *CREW v. DOJ*, 825 F. Supp. 2d 226 (D.D.C. 2011), he noted the declaration (Dkt. 7-2) stated that in calculating her hours for the fee petition undersigned counsel Anne Weismann:

> reviewed the hours [she] spent on the case in coordination with the docket sheet, [her] case files, and periodic notes of daily activities that [she] maintain[ed] on [her] calendar, all of which informed [her] as to the specific matter pending on a date on which [she] had expended time.

Rpt. at 24, quoting *CREW v. DOJ*, 825 F. Supp. at 230.  From this Magistrate Judge Facciola concluded, "Weismann's declaration made it clear that she engaged in post hoc reconstruction of

her hours based on a combination of her timesheets, notes, and the docket; no detailed

contemporaneous records were kept, only aggregate totals, and even the reconstructed records

conflated multiple days' worth of work." Rpt. at 24.

Magistrate Judge Facciola also closely examined the record in *CREW v. DHS*, Civil No.

08-1046, 2010 U.S. Dist. LEXIS 143517 (D.D.C. April 21, 2010), a second case on which the

FEC relied in support of its claim CREW's timesheets were not contemporaneously prepared and

otherwise deficient. Again, after examining the declaration CREW actually submitted in that

case (Dkt. 50-4), Magistrate Judge Facciola found it reflected "even worse" timekeeping than

*CREW v. DOJ*, because it "provided no specific dates and grouped multiple entries together[.]"

Rpt. at 24. In the case at bar, by contrast, the declaration submitted by Ms. Weismann in support

of the fee petition notes it was prepared after reviewing Ms. Weismann's "daily time sheets and

separate notes [she] maintain[ed] on individual cases." *Id.* at 25. As an exhibit to the

declaration, Ms. Weismann included a specific break-down "of [her] time by day on specific

litigation activities in this case at both the district court and court of appeals level." *Id.* In other

words, the declaration submitted here is "a far cry from previous declarations." *Id.*

Nevertheless, the FEC continues to insist CREW is relying here on "precisely the same

kind of reconstructed timesheets that it submitted in previous cases[.]" D's Obj. at 22. To the

contrary, as the precise comparison Magistrate Judge Facciola conducted makes clear, the

declaration here is critically different, and the FEC fails to explain how a "daily" time record,

such as that attested to by Ms. Weismann, does not qualify as "contemporaneous." In the face of

this unequivocal evidence all the FEC can muster is the objection that, having failed to "submit

contemporaneously prepared records of its work," CREW once again has fallen short of its

22

evidentiary burden.  D's Obj. at 23.  But the fact that CREW supported its fee petition with declarations, attested to under penalty of perjury, that describe the contemporaneous records its attorneys maintain together with a detailed summary of each task, including the date on which it was prepared and the amount of time spent, more than compensates for the lack of the actual time records, particularly given the failure of the FEC to produce any evidence to put any aspect of CREW's factual submission at issue.

Nor does the FEC labeling the differences in the prior declarations found wanting and those submitted here as "minor" and "superficial," D's Obj. at 23, make it so.  In prior cases CREW was faulted for reconstructing hours based on daily timesheets that failed to "itemize the specific tasks [they] performed," together with the docket sheet, case files, and periodic notes. *CREW v. DOJ*, 825 F. Supp. 2d at 230.  Here, however, Ms. Weismann submitted a fee request based on her review of "daily time sheets and separate notes [she] maintain[s] on individual cases."  Exhibit B to P's Fee Pet. (Dkt. 24-2).  The breakdown submitted with that declaration describes each specific task performed, the date on which it was performed, and the amount of time it consumed.  Exhibit 1 to Weismann Declaration (Dkt. 24-22, pp. 7-10).  Far from minor, the declaration and accompanying breakdown submitted here differ significantly from the evidence criticized in other cases.  At bottom, the FEC is left with a speculative and unsubstantiated claim that the timesheets "were prepared post hoc," D's Obj. at 24, which provides no basis whatsoever to reject the contrary reasoned factual findings of Magistrate Judge Facciola.

### B.   The Report And Recommendation Properly Concluded CREW's Billing Time Intervals Are Not Too Large.

In its objections to the Report and Recommendation the FEC resurrects a claim it made initially that the time intervals CREW used are inappropriately large because they generally are in one hour or half hour increments.  D's Obj. at 24-25.  Magistrate Judge Facciola properly rejected this claim based on the sworn declarations of all three CREW attorneys attesting to "actually *reduc[ing]* their hours specifically to avoid seeking compensation for an inflated number of hours[.]"  Rpt. at 26 (emphasis in original).  Again, the FEC has offered no basis to disturb this conclusion, insisting without support this case is like *CREW v. DOJ*, where the court applied a 37.5% across-the-board reduction.  D's Obj. at 25.

As the Report and Recommendation concluded, "concerns about 'inaccuracies and overbilling' that may be present in other cases are not present here."  Rpt. at 27.  This is because CREW's attorneys "affirmatively reduc[ed] their bills for most entries," *id.*, which more than compensates for the concern that billing in larger than quarter-hour increments risks overbilling. Ms. Weismann attested to "often reduc[ing] hours assigned to a specific litigation task by 10 percent . . . to avoid redundancy[.]" Declaration of Anne Weismann (Dkt. 24-2) at 2.  *See Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 179 (D.D.C. 2010) (plaintiffs' own seven percent across-the-board reduction in fees compensated for any deficiencies in the billing records).

Moreover, the overwhelming majority of the tasks for which CREW seeks reimbursement involved research, drafting, and reviewing legal briefs.  Such tasks, by their very nature, involve considerable time and stand in stark contrast to tasks such as phone calls that typically consume time increments of 15 minutes or less.  Accordingly, that the attorneys

typically billed in 30-minute or one-hour increments in this context raises no red flags and, standing alone provides no basis to reduce CREW's requested fees.  Underlining this conclusion is the failure of the FEC, either in its initial opposition to the fee petition or its opposition to the Report and Recommendation, to identify a single, specific entry "for which it believes CREW is reporting more time than was necessary to complete the task," Rpt. at 27, or on which FEC attorneys spent less than the time reported by CREW's attorneys.[13]

### C.     The Report And Recommendation Properly Found CREW's Timesheet Entries Are Sufficiently Specific.

Finally on the merits of the amount CREW seeks, the FEC faults Magistrate Judge Facciola for not penalizing CREW by discounting the fee award based on time entries the FEC insists are vague and insufficient.  In support of its generalized criticisms of the fee petition, the FEC cites the D.C. Circuit's opinion in *Role Models Am., Inc. v. Brownless*, 353 F.3d 962 (D.C. Cir. 2004).  D's Obj. at 25.  But what led the court in that case to find the fee request inadequate were several key factors not present here.  Specifically, that case involved what courts

---

[13] In its opposition to the fee petition, the FEC argued CREW's requested fee was objectively unreasonable, comparing the requested amount here to that awarded in *CREW v. DHS*.  The Report and Recommendation found to the contrary, Rpt. at 17-18, and while the FEC does not specifically take issue with that finding – at least in the manner required by LCvR 72.2(b) – it suggests the fee award in *CREW v. DHS* is "instructive in analyzing CREW's request for nearly $100,000 more in this case."  D's Obj. at 25 n.8.  Contrary to the FEC's unsupported suggestion of similarities between the two cases, the careful review conducted by Magistrate Judge Facciola revealed "the two cases are quite different[.]"  Rpt. at 17.  In *CREW v. DHS*, CREW was involved in only one brief on the merits of its claim, a partial summary judgment motion.  Accordingly, the Report and Recommendation rejected the notion that case was instructive here "because it [CREW] did not engage in the same type of substantive legal contest that it did here."  *Id.* at 18.  And in continuing to argue *Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997), also is comparable for similar reasons, D's Obj. at 25 n.8, the FEC ignores the facts ferreted out by Magistrate Judge Facciola that through three separate orders Tax Analysts actually received $147,830.94 – more than CREW claimed here.  Rpt. at 18.

subsequently have characterized as "an extraordinarily high bill for a garden variety case." *Petties v. District of Columbia*, Civ. No. 95-0148, 2009 U.S. Dist. LEXIS 127505, *25 (D.D.C. Oct. 20, 2009) (citation omitted). The fees requested by counsel in *Role Models* were "dramatically disproportionate to the work required." *Id.* This case, by contrast, was far from a "garden variety case," and the hours CREW claims are proportionate to the demands of litigating a complex issue.

Moreover, as Magistrate Judge Facciola noted, several judges in this court have given *Role Models* a narrow construction. Rpt. at 28. This is consistent with the purpose a fee application must serve: "the application must be sufficiently detailed to permit the District Court to make an independent determination whether or not the hours claimed are justified[.]" *Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). Likewise, a fee application must "enable opposing counsel adequately to assess the merits of the motion," and toward that end,

> no more is necessary than 'fairly definite information as to the hours devoted to various general activities, *e.g.*, pretrial discovery, settlement negotiation, and the hours spent by various classes of attorneys, *e.g.*, senior partners, junior partners, [and] associates[.]"

*Jordan v. Dep't of Justice*, 691 F.2d 514, 520 (D.C. Cir. 1982) (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (*en banc*)).

When assessed against the role it must play, CREW's fee petition clearly enables both the FEC and this Court to assess its merits. As the Report and Recommendation explains, here, as in *Blackman*, "the records, 'when reviewed by an individual with knowledge of the case, and in light of the surrounding entries' provide 'sufficient information to determine what work was performed and why it was relevant to the case.'" Rpt. at 28-29 (quoting *Blackman*, 677 F. Supp.

2d at 179-180).

That Magistrate Judge Facciola and the plaintiff can understand each of CREW's time entries and how they relate to this case is further illustrated by the failure of the FEC, in either its initial opposition to the fee petition or its objections to the Report and Recommendation, to identify a single entry that is unclear or seemingly bears no relationship to the events in this case. Accordingly, as the Report and Recommendation concludes, CREW's fee petition satisfies its ultimate objective by permitting the Court to conclude, "'with a high degree of certainty,' that [CREW's] hours were reasonably expended."  Rpt. at 29 (quoting *Role Models*, 353 F.3d at 970 (internal citation and quotation omitted)).

### III.      THE FEC'S REMAINING OBJECTIONS LACK MERIT.

At the end of its objections, despite being well under the page limitation, the FEC tags on three numbered points it labels additional "errors"committed by Magistrate Judge Facciola with little, if any, explanation.  D's Obj. at 27-28.  Because their lack of specificity and explanation does not meet the requirements of LCvR 72.1(b) (requiring objections to "specifically designate the order or part thereof to which objection is made, and the basis for the objection"), they merit little discussion.

First, the FEC attempts to preserve an objection to CREW's *eligibility* for attorney fees based, apparently, on its arguments concerning CREW's *entitlement* to fees.  D's Obj. at 27, point 1.  Eligibility and entitlement, however, are two separate requirements.  Eligibility depends on a showing that a plaintiff has "'substantially prevailed,'" Rpt. at 5 (quoting 5 U.S.C. § 552(a)(4)(E)(ii)), while entitlement depends on the assessment of four factors (public benefit, commercial benefit to the plaintiff, the nature of the plaintiff's interest, and the reasonableness of

the agency's withholding).  Rpt. at 5 (citation and quotation omitted).  The FEC's effort to conflate the two cannot succeed.

Second, the FEC faults the Report and Recommendation for concluding CREW demonstrated the fees it seeks were reasonably incurred, claiming CREW's lawsuit on a procedural question was "unnecessary" and "served only to delay the parties' ultimate conclusion of this FOIA matter," making its $140,000 in claimed fees "clearly excessive."  D's Obj. at 27, point 2.  As discussed herein, Magistrate Judge Facciola provided detailed reasoning as to why CREW had to pursue an appeal in order to obtain all the documents to which it was entitled.  The FEC's claims to the contrary fly in the face of reason and the evidence of record.

Finally, the FEC argues a fee award here would "disserve[] the legislative purpose underlying FOIA's fee provision."  D's Obj. at 27-28, point 3.  The FEC provides no support for this extraordinary assertion, which is belied directly by the FOIA's legislation history, as interpreted by judges in this court.  *See, e.g.*, *Concerned Veterans*, 675 F.2d at 1324; *Judicial Watch, Inc. v. Bureau of Land Mgt.*, 562 F. Supp. 2d 159, 175 (D.D.C. 2008).  Indeed, as Magistrate Judge Facciola observed,

> [i]f fees are not available in this situation, where a party is compelled to press an appeal to get what the FEC claims it would have given in the first place, then the fee provision of FOIA is rendered nugatory in a case where it is needed most.

Rpt. at 14.

IV.     **CREW IS ENTITLED TO RECOVER THE FEES INCURRED IN RESPONDING TO DEFENDANT'S OBJECTIONS USING AN UPDATED *LAFFEY* MATRIX.**

As public interest lawyers, plaintiff's attorneys do not have customary hourly billing rates.  In these circumstances, courts use the hourly market rate reflected in the *Laffey* Matrix,[14] which is "the most accurate evidence of a reasonable hourly rate."  *Northwest Coalition for Alternatives to Pesticides v. EPA*, 421 F. Supp. 2d 123, 129 (D.D.C. 2006).  *See also Judicial Watch v. U.S. Dep't of Justice*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011); *Bolden v. J & R Inc.*, 135 F. Supp. 2d 177, 179 (D.D.C. 2001).

Since at least 2000, courts in this District have approved the use of a version of the *Laffey* Matrix updated through the application of the legal services component of the CPI to bring rates from earlier years in line with current economic realities.  *See Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 11-15 (D.D.C. 2000) (*Salazar I*).  Two recent decisions solidify the utility and wisdom of using the updated matrix.  First, in *Eley v. District of Columbia*, Civ. No. 11-309 (BAH), 2013 U.S. Dist. LEXIS 164995 (D.D.C. November 20, 2013), Judge Beryl A. Howell conducted a lengthy and detailed analysis of the appropriate methodology to determine "prevailing market rates" for attorney fee awards.  After surveying relevant data from a variety of sources, and considering some judicial critiques of the Legal Services Index (LSI) component of the CPI as a means of determining market rates,[15] Judge Howell concluded "the LSI-adjusted

---

[14] The *Laffey* Matrix was developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), and is "a schedule of charges based on [particular attorneys] years of experience."  *Judicial Watch v. Bureau of Land Mgmt.*, 562 F. Supp. 2d 159, 175 (D.D.C. 2008).

[15] Cases that have declined to adopt the LSI component of the CPI to calculate hourly rates have relied, in part, on declarations submitted by Dr. Laura A. Malowane attesting the USAO *Laffey* rates more accurately reflect the prevailing market rates in Washington, D.C.  *See*,

matrix is probably a *conservative* estimate of the actual cost of legal services in this area, but at the very least it appears to be a more accurate reflection of the cost of legal services both in this community and nationwide" than the matrix maintained by the U.S. Attorney's Office (USAO). *Id.* at *37-38 (emphasis in original).  Accordingly, the court concluded "the LSI-adjusted rates are an appropriate measure of the prevailing community rates for attorneys in the Washington, D.C. area." *Id.* at *44.

More recently, Judge Gladys Kessler reached the same conclusion in *Salazar v. District of Columbia*, Civ. No. 93-452 (GK), 2014 U.S. Dist. LEXIS 10040 (January 28, 2014) (*Salazar II*).  Noting the court previously had ruled on several occasions the proper measurement for updating *Laffey* rates is the LSI component of the CPI rather than the matrix calculated by the USAO, the court reiterated it "remains convinced that this methodology is appropriate." *Id.* at *7.  Judge Kessler relied extensively on the opinion in *Eley*, which "point[ed] out that, 'considering that Washington, D.C. is among the most expensive legal services markets in the country, . . . it would appear that the use of a nationwide legal service index is, if anything, likely to underestimate the costs of local legal services because such a rate is an average of all costs nationwide.'" *Salazar II*, 2014 U.S. Dist. LEXIS 10040, at *9 (quoting *Eley*, 2013 U.S. Dist. LEXIS 164995, at *37).

---

*e.g.*, *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 43 (D.D.C. 2011).  Dr. Malowane's opinions on attorney fee rates in Washington, D.C., however, have not been consistent.  In a decision concerning appropriate fees for work performed in 2011, the Court of Federal Claims found "based on Dr. Malowane's data, . . . the requested forum rate of $706 is in the mid-range for 'national' law firms with principal offices in Washington, D.C." *Biery v. United States*, 2012 U.S. Claims LEXIS 1446, 21 (Fed. Cl. 2012).  Significantly, these rates are almost identical to those in the *Laffey* Matrix based on the LSI component of the CPI for that same time period.  *See* Exhibit A, Attachment 3.

It is now clear under the considerable weight of authority in this District the appropriate matrix of hourly rates is calculated under the legal services component of the CPI.  For purposes of this case, CREW relies upon a recently updated *Laffey* Matrix calculated by Dr. Michael Kavanaugh, the expert economist whose analytical method the courts adopted in *Salazar I*, *Salazar II*, and *Eley*.  As set forth in the attached declaration of Dr. Kavanaugh (Exhibit A)[16], Dr. Kavanaugh has calculated the prevailing market rate for work performed by attorneys with more than 20 years of experience (like Ms. Weismann and Ms. Sloan) as $771 per hour for work performed between June 1, 2013 and May 31, 2014, and for attorneys with between 11 and 19 years of experience (like Mr. Rappaport) $640 per hour for that same time period.  Attachment 3 to Kavanaugh Decl.  Notably, these rates are consistent with the findings of a survey conducted by the *National Law Journal* in 2012, which reported on rates for partners in four large Washington, D.C. law firms, with "high" reported rates ranging from $1,250 to $985 per hour, and "median" rates ranging from $750 to $560 per hour.  A Nationwide Sampling Of Law Firm Billing Rates, *National Law Journal* (attached as Exhibit B).

Applying these rates to the hours detailed in the declarations of plaintiff's counsel (Exhibit C), CREW is entitled to an additional award of attorneys' fees for the preparation of this response as follows:

| Attorney | Hours | Rate | Lodestar |
|----------|-------|------|----------|
| Anne Weismann | 24.03 | $771 | $18,527.13 |
| Melanie Sloan | 1 | $771 | $771 |

---

[16] That declaration was submitted in *CREW v. U.S. Dep't of Justice*, Civ. No. 11-0754 (GKK), another FOIA lawsuit in which CREW is seeking its attorney fees and costs.

|                 |     |       |       |
|-----------------|-----|-------|-------|
| Adam Rappaport  | 1.1 | $640  | $704  |

When added to the fees already recommended by Magistrate Judge Facciola, CREW is entitled to a total award of attorneys' in the amount of $160,000.81 and costs of $500.

## CONCLUSION

The FEC's challenge to CREW's fee petition clearly lacks merits in all respects and should be rejected.  To deny CREW its requested fees would "frustrate the purposes of FOIA," *Concerned Veterans*, 675 F.2d at 1324, especially in light of the FOIA's legislative history, which "evinces a strong desire for courts to be aggressive in awarding attorney's fees to prevailing parties." *Judicial Watch, Inc.*, 562 F. Supp. 2d at 175.  Accordingly, based on the careful review and analysis conducted by Magistrate Judge Facciola, this Court should accept his conclusion that CREW be awarded $139,998.68 in attorneys' fees and $500 in costs, together with the additional compensation it seeks for time expended responding to the FEC's objections to the Report and Recommendation.

March 20, 2014                              Respectfully submitted,

                                           */s/ Anne L. Weismann*
                                           ANNE L. WEISMANN
                                           D.C. Bar No. 434584
                                           MELANIE SLOAN
                                           D.C. Bar No. 434584
                                           Citizens for Responsibility and Ethics in
                                             Washington
                                           1400 Eye Street, N.W., Suite 450
                                           Washington, D.C.  20005
                                           Phone: (202) 408-5565
                                           Facsimile: (202) 588-5020

                                           Attorneys for Plaintiff