**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, |
| Plaintiff, |
| v. |
| FEDERAL ELECTION COMMISSION, |
| Defendant. |

Civil Action No. 11-951 (CKK)

**MEMORANDUM OPINION**
(September 5, 2014)

Plaintiff, Citizens for Responsibility and Ethics in Washington ("CREW"), filed a Motion for Attorney Fees which the Court referred to Magistrate Judge John M. Facciola.  Pl.'s Mot. Atty. Fees, ECF No. [24]; Order (Nov. 20, 2013), ECF No. [31].  Magistrate Judge Facciola submitted a Report and Recommendation to the Court, recommending that Defendant, Federal Election Commission ("FEC"), pay $139,998.68 in attorney fees and costs in the amount of $500 to CREW. Report & Recomm. ("R&R"), ECF No. [35].  Presently before the Court is the FEC's Objection to the Report and Recommendation. Def.'s Objs., ECF No. [36].  Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds none of the FEC's objections have merit.  Magistrate Judge Facciola's Report and Recommendation is ADOPTED as modified in this Memorandum Opinion, for substantially the same reasons as

---

[1]   While the Court's decision is based on the record as a whole, the Court's analysis focuses on the following documents: Pl.'s Mot. Atty. Fees ("Pl.'s Mot."), ECF No. [24]; Def.'s Opp'n to Pl.'s Mot. Atty. Fees ("Def.'s Opp'n to Pl.'s Mot."), EFC No. [29]; Pl.'s Reply to Mot. Atty. Fees ("Pl.'s Reply to Def.'s Opp'n"), ECF No. [30]; Report & Recomm. ("R&R"), ECF No. [35]; Def.'s Objs. to R&R ("Def.'s Objs."), ECF No. [36]; Pl.'s Resp. to Def.'s Objs. ("Pl.'s Resp."), ECF No. [37]; Def.'s Reply to Pl.'s Resp., ECF No. [39] ("Def.'s Reply"); Pl.'s Supp. Auth., ECF No. [41]; and Def.'s Resp. to Supp. Auth., ECF No. [42].

articulated by Magistrate Judge Facciola.  Additionally, the Court has determined that the FEC shall pay CREW an additional $13,260.30 for attorney fees expended by CREW in preparing its response to the FEC's objections to the Report and Recommendation, for a total attorney fee award of $153,258.98 and $500 in costs.

## II. BACKGROUND

On May 7, 2011, CREW sent a request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the FEC via facsimile, which the FEC acknowledged receiving on the following day via e-mail.  Pl.'s Mot. at 3.  The request was related to communications between three FEC commissioners and individuals and entities outside of the FEC, as well as the calendars and other recordation of meetings and appointments of these commissioners. Pl.'s Mot. at 3.  After discussions between the parties, CREW agreed to exclude certain files from the FEC's initial search.  *Id.*  CREW specifically reserved the right to revisit the full scope of its request after reviewing the documents that were produced as a result of the initial search.  *Id.*

On May 23, 2011, CREW filed the instant action, asserting that the FEC failed to produce any documents in response to CREW's FOIA request.  *See* Compl., ECF No. [1].  On June 23, 2011, the FEC filed a Motion to Dismiss Or, In the Alternative, for Summary Judgment.  Def.'s Mot. to Dismiss, ECF No. [4].  After full briefing, the Court entered an Order on December 30, 2011, granting the FEC's Motion for Summary Judgment and holding that CREW had failed to exhaust administrative remedies.  *Citizens for Responsibility & Ethics in Wash. v. FEC*, 839 F. Supp. 2d 17 (D.D.C. 2011) ("*CREW I*").  CREW filed an appeal.  On June 4, 2013, the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") reversed the Court's ruling and remanded this matter for further proceedings.  *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180 (D.C. Cir. 2013) ("*CREW II*").  On June 12, 2013, the Court ordered that the

parties to file a joint status report.  Min. Order (June 12, 2013).  After the Court granted two joint motions requesting extensions of time, the parties filed a Stipulation of Dismissal, stipulating that the above-captioned matter be dismissed without prejudice, on August 12, 2013.  Jt. Mt. for Ext. of Time, ECF No. [17]; 2d Jt. Mt. for Ext. of Time, ECF No. [20]; Stip. of Dism., ECF No. [21].  On its terms, the stipulation had no effect on CREW's ability to seek attorney fees.  Stip. of Dism., ECF No. [21].

CREW subsequently filed a motion seeking $122,813.75 in attorney fees and costs in the amount of $500, which the FEC opposed.  The Court referred the matter to Magistrate Judge John M. Facciola who issued a Report and Recommendation on February 12, 2104, recommending that the Court award CREW $139,998.68 in attorney fees and $500 in costs.  R&R at 1.  Magistrate Judge Facciola explained that the total arrived at in the Report and Recommendation was the result of totaling all the fees requested by CREW, even though that amount was different from the one initially requested in the motion.  *Id.* at 1 n.1.  The FEC filed an Objection to the Report and Recommendation, arguing two major points: (1) that CREW is not entitled to attorney fees because it failed to establish that it was either eligible or entitled for attorney fees; and (2) that CREW failed to show that its fees are reasonable.  *See generally* Def.'s Objs.  CREW opposes the FEC's objections and requests that the Court order that the FEC pay CREW an additional $20,002.13 to cover CREW's attorney fees in responding to the FEC's objections to the Report and Recommendation.  Pl.'s Resp. at 31-32.

## II.  LEGAL STANDARD

Under Local Civil Rule 72.2(b), "[a]ny party may file written objections to a magistrate judge's ruling under [Local Civil Rule 72.2(a)] within 14 days[.]"  Local Civ. R. 72.2(b).  Local Civil Rule 72.2(b) further provides that "[t]he objections shall specifically designate the order or

part thereof to which objection is made, and the basis for the objection." *Id.* Pursuant to Local

Civil Rule 72.2(c), "a district judge may modify or set aside any portion of a magistrate judge's

order under this Rule found to be clearly erroneous or contrary to law." *See also* Fed. R. Civ. P.

72(a) ("The district judge in the case must consider timely objections and modify or set aside any

part of the [magistrate judge's] order that is *clearly erroneous or is contrary to law*.") (emphasis

added).  A court should make such a finding when the court "'is left with the definite and firm

conviction that a mistake has been committed.'" *Am. Soc'y for Prevention of Cruelty to Animals

v. Feld Entm't*, 659 F.3d 13, 21 (D.C. Cir. 2011) (quoting *Anderson v. City of Bessemer City*, 470

U.S. 564, 573 (1985)).

## II.  DISCUSSION

### A.    CREW's Eligibility and Entitlement for Attorney Fees

Pursuant to 5 U.S.C. § 552(a)(4)(E)(i), the court may award reasonable attorney fees and

other litigation costs reasonably incurred by a plaintiff who substantially prevails in an action

against the government for the fulfillment of a FOIA request.  In this Circuit, the attorney-fee

inquiry is divided into two prongs, the fee "eligibility" and the fee "entitlement" prongs.

*Brayton v. Office of the United States Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011).

Under the eligibility prong, the Court must determine whether a plaintiff has substantially

prevailed and, as a result, *may* receive attorney fees. *Id.*  A plaintiff has substantially prevailed if

he or she has obtained relief either through a judicial order, enforceable written agreement,

consent decree or, alternatively, through a voluntary or unilateral change in position by the

agency, if the plaintiff's claim is not insubstantial. 5 U.S.C. § 552(a)(4)(E)(ii)(I)-(II).

If the eligibility prong is satisfied, the Court next considers the entitlement prong to

determine whether a plaintiff *should* receive fees.  *Brayton*, 641 F.3d at 524.   Under the

4

entitlement prong, the Court must weigh four factors: "'(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding.'" *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 371 (D.C. Cir. 2008) (quoting *Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)). While no one factor is dispositive, *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008), "[t]he sifting of those criteria over the facts of a case is a matter of district court discretion . . . ," *Tax Analysts*, 965 F.2d at 1094.

a.   *CREW's Eligibility for Attorney Fees*

Magistrate Judge Facciola first found that CREW satisfied the eligibility prong. First, Judge Facciola found that CREW substantially prevailed by obtaining a successful ruling in the D.C. Circuit. R&R at 7-9. The FEC objects to this finding, arguing that neither the D.C. Circuit's opinion nor the proceedings before this Court had an effect on the resolution of CREW's substantive FOIA claim, and instead only dealt with a procedural question that was resolved by the D.C. Circuit's ruling. Def.'s Objs. at 27. CREW argues that the Court should not consider the FEC's argument regarding CREW's eligibility for attorney fees because the challenge was only mentioned briefly at the end of the FEC's objections and, even if the Court were to consider the FEC's argument, it provides no basis to disturb the conclusion in the Report and Recommendation that CREW meets the eligibility requirement for a fee award. Pl.'s Resp. at 11 n.4. The Court shall first address CREW's argument that the Court need not consider the FEC's objection.

CREW argues that the Court should not consider the FEC's objection to the finding that CREW is eligible for attorney fees because the FEC failed to comply with the provisions of

LCvR 72.3(b).[2]   LCvR 72.3(b) requires that "[t]he objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection."  The Court finds that the FEC's objection to the finding that CREW is eligible for attorney fees complies with the requirements of LCvR 72.3(b) in that it clearly indicates that finding to which it objects, namely that CREW is eligible for a fee award, and provides its argument and references relevant parts of both the FEC's Objection to the Report and Recommendation and its Opposition to CREW's Motion for Attorney Fees as additional support for its argument.  Def.'s Objs. at 27.  Accordingly, the Court shall consider the FEC's argument that CREW is not eligible for a fee award.

In the Report and Recommendation, Judge Facciola found that CREW was eligible for a fee award because of CREW's successful appeal of this Court's ruling in the D.C. Circuit.  The crux of the parties' dispute on appeal was whether the FEC had properly communicated a "determination" on CREW's FOIA request pursuant to 5 U.S.C. § 552(a)(6)(A)(i), thus triggering the requirement that CREW exhaust administrative remedies before being able to proceed at the district court level.  This Court held that the FEC had sufficiently communicated a determination on CREW's FOIA request and, accordingly, granted FEC's motion for summary judgment for failure to exhaust administrative remedies on December 30, 2011.  *Citizens for Responsibility & Ethics in Wash. v. FEC*, 839 F. Supp. 2d 17, 28-29 (D.D.C. 2011) ("*CREW I*").  On appeal, the D.C. Circuit reversed and held that the FEC had not communicated a determination to CREW within the requisite time period and, accordingly, CREW was not required to exhaust administrative remedies before proceeding at the district court level.  *Citizens*

---

[2] CREW's Response incorrectly points to rule LCvR 72.2(b) rather than 72.3(b), but properly quotes rule 72.3(b).  Pl.'s Resp. at 11 n.4.

*for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 182-83 (D.C. Cir. 2013) ("*CREW*

*II*").  The D.C. Circuit held in *CREW II* that:

> [I]n order to make a 'determination' and thereby trigger the administrative
> exhaustion requirement, the agency must at least: (i) gather and review the
> documents; (ii) determine and communicate the scope of the documents it intends
> to produce and withhold, and the reasons for withholding any documents; and (iii)
> inform the requester that it can appeal whatever portion of the 'determination' is
> adverse.

*Id.* at 188.

Judge Facciola relied on the D.C. Circuit's opinion in finding that CREW had

substantially prevailed through a judicial order.  The FEC argues that this finding is incorrect

because the D.C. Circuit did not direct the FEC to provide CREW with responsive documents to

CREW's FOIA request, it only held that CREW could proceed with its complaint in district

court.  Def.'s Objs. at 27 (citing *id.* at 5-7, 17-21 and Def.'s Opp'n to Mot. For Atty. Fees at 9-

15).  Defendant's argument is flawed because, as the Report and Recommendation properly

describes, a plaintiff in this Circuit may establish that he or she has substantially prevailed by

obtaining a ruling that will force an agency to more fully comply with FOIA, even if such a

ruling does not require the actual release of the requested documents in that matter.  R&R at 7-8.

In *Halperin v. Department of State*, 565 F.2d 699 (D.C. Cir. 1977), the D.C. Circuit remanded a

matter back to the district court to allow the district court to complete an *in camera* review of

certain redacted documents responsive to a FOIA request to determine if release of portions of a

transcript of a background press conference that was attended by many people who did not have

a security clearance, would damage national security.  *Id.*  With regards to the plaintiff's possible

future request for attorney fees, the D.C. Circuit in *Halperin* noted:

> Appellee, by virtue of his persistence, has at least benefited the nation by making
> the Department aware of the laws it must observe if these adventures are to be

> continued. It would thus appear that appellee has, irrespective of the outcome of the proceedings on remand, "substantially prevailed" within the meaning of 5 U.S.C. § 552(a)(4)(E) (Supp. IV 1974) relating to assessment against the United States of litigation expense, thereby fulfilling one of the conditions for the invocation of possible disciplinary proceedings under 5 U.S.C. § 552(a)(4)(F) (Supp. IV 1974).

*Id.* at 706 n.11; *see also Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (noting that *Halperin* applies to the determination of whether a party has substantially prevailed under fee "eligibility" prong of the test, but did not apply to the public-benefit factor of the "entitlement" prong of the test); *Church of Scientology of California v. Harris*, 653 F.2d 584, 589 (1981) (citing *Halperin* and noting that "[p]laintiff substantially prevails when its litigation benefits the nation by making an agency aware of duties imposed upon it by FOIA").  Here, relying on *Halperin*, Judge Facciola found that CREW had substantially prevailed by virtue of its favorable appellate decision, regardless of the fact that neither the D.C. Circuit nor this Court ultimately issued an order requiring the FEC to provide CREW with the requested documents.  R&R at 7.  In the instant matter, as the Report and Recommendation properly indicates, the D.C. Circuit clarified that CREW's request could be litigated in this Court because the FEC had not provided CREW with a determination within the meaning of the statute.  R&R at 8.  By doing so, the D.C. Circuit provided guidance as to what type of response from an agency constitutes a determination that must be communicated to a FOIA requester in the future in order to trigger the requirement that a FOIA requester must exhaust administrative remedies before he or she may proceed in district court.  Judge Facciola explained: "By obtaining its ruling [from the D.C. Circuit] in this case, CREW informed the FEC of its legal obligations to give a 'determination' within twenty work days." R&R at 9.   The Court agrees with the reasoning in the Report and Recommendation that CREW substantially prevailed by virtue of the favorable D.C. Circuit

opinion pursuant *Halperin*.[3]

>    b.   *CREW's Entitlement to Attorney Fees*

Judge Facciola also found that CREW was entitled to attorney fees after weighing the four relevant factors: "'(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding.'"   *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 371 (D.C. Cir. 2008) (quoting *Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)); *see also* R&R at 11-14.  The Court shall address each of the entitlement factors in turn.

>    1.   <u>Public Benefit Derived from Case</u>

Judge Facciola noted that the instant matter unquestionably benefits the public because it "has 'add[ed] to the fund of information that citizens may use in making vital political choices' because the documents have helped to better explain the inner workings of the FEC—an agency with the important power to regulate elections to ensure they are fair and free."  R&R at 11-12. The FEC does not raise any objection to Judge Facciola's analysis of this factor and therefore, the Court shall consider it conceded in favor of CREW.

>    2.   <u>Commercial Benefit to Plaintiff</u>

Judge Facciola found that this factor was effectively conceded by the FEC in favor of CREW.  R&R at 12.  The FEC does not raise any objection to Judge Facciola's analysis of this factor and therefore, the Court shall consider it conceded in favor of CREW.

---

[3] Judge Facciola also found that CREW substantially prevailed by causing a voluntary change in the FEC's position when the FEC produced additional responsive documents to CREW's request during settlement after the D.C. Circuit's ruling. R&R at 9-11.  Because the Court concludes that CREW has met the eligibility requirement for an attorney fees award as described, the Court shall not address the second basis in the Report and Recommendation for determining that CREW was eligible for fees.

### 3.   Plaintiff's Interest in Records

Judge Facciola found that this factor was conceded by the FEC in favor of CREW.  R&R

at 12.   The FEC does not raise any objection to Judge Facciola's finding on this factor and

therefore, the Court shall consider it conceded in favor of CREW.

### 4.   Reasonableness of Agency's Withholding

Judge Facciola also found that the FEC acted unreasonably in withholding documents in

response to CREW's FOIA request and, thus, found that this final factor weighed in favor of

CREW.   R&R 12-14.   The FEC objects to the finding, arguing that the Report improperly

concludes that the FEC acted unreasonably in delaying production of responsive documents for

two years without justification. Def.'s Objs. at 11-21.   For the reasons described herein, the

Court finds that the reasoning in the Report and Recommendation on this issue is sound and shall

be adopted by the Court.

The Court must take into account two factors when determining the reasonableness of an

agency's withholding of responsive documents: (1) "whether the agency's opposition to

disclosure 'had a reasonable basis in the law'"; and (2) "whether the agency 'had not been

recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Davy

v. CIA*, 550 F.3d 1155, 1162 (D.C. Cir. 2008) (quoting *Tax Analysts v. United States Dep't of

Justice*, 965 F.2d 1092, 1096 (D.C. Cir. 1992); *LaSalle Extension University v. Federal Trade

Comm'n*, 627 F.2d 481, 486 (D.C. 1980)).   As Judge Facciola explained, the D.C. Circuit in

*LaSalle* held that:

> [t]o rebut a claim of Government unreasonableness or obduracy, the Government
> need not prove that the information was in fact exempt, only that the Government
> had a reasonable basis in law for concluding that the information in issue was
> exempt and that it had not been recalcitrant in its opposition to a valid claim or
> otherwise engaged in obdurate behavior.

R&R at 12 (quoting *LaSalle*, 627 F.2d at 486).  Accordingly, the Report and Recommendation properly frames the issue as "whether the FEC's withholding of documents was reasonable," and indicates that the burden is on the FEC to establish the reasonableness of its actions.  R&R at 13. Here, Judge Facciola distinguishes between two batches of documents that were released by the FEC to CREW in response to the FOIA request: one release shortly after the filing of the instant action; and one released after settlement discussions following the D.C. Circuit's ruling in this action.  R&R at 13.  As to the first batch of documents produced, Judge Facciola found that the FEC acted reasonably and in a manner that was not obdurate based on the timeframe presented and the declarations of Nicole St. Louis Matthis, former Assistant General Counsel for General Law & Advice in the Office of General Counsel of the FEC, and Katie A. Higginbothom, attorney in the General Law & Advice Division of the Office of General Counsel at the FEC, that were filed alongside the FEC's Motion to Dismiss.  R&R at 13 (citing Def.'s Mot. to Dismiss, Ex. 1, ECF No. [4-1] (Declaration of Nicole St. Louis Matthis); *Id.* at Ex. 2, ECF No. [4-2] (Declaration of Katie A. Higginbothom)).  The Court agrees with the analysis of the Report and Recommendation as to this issue.  In contrast, Judge Facciola found that the FEC did not act reasonably in failing to produce the second batch of documents until settlement negotiations after the D.C. Circuit's ruling, over two years later.  *Id.* at 13.  Indeed, properly placing the burden on the FEC, Judge Facciola noted that the FEC did not provide any justification for its refusal to release additional documents over the preceding two years. *Id.* at 13.  Ultimately, Judge Facciola found that the FEC failed to act reasonably with respect to the second batch of documents and, accordingly, this factor also weighed in favor of CREW.  R&R at 14-15.  The Court agrees with the analysis in the Report and Recommendation for the reasons described herein.

First, the FEC asserts that CREW waived its argument that the FEC acted unreasonably in producing the second set of responsive documents after the D.C. Circuit's ruling because this argument was first raised in CREW's reply to the motion for attorney fees.  The FEC argues that by failing to raise the argument about the second set of documents in its motion, and instead only mentioning the second set of documents in its reply "in a few unsubstantiated sentences (one of which characterized the point as something merely 'worth noting')," the issue should not be considered by the Court.  Def.'s Objs. at 15 (internal citation omitted).  The FEC asserts that raising the issue of the second set of documents in this manner was "hardly enough to put the argument in issue or necessitate the extraordinary request of seeking leave to file a corrective sur-reply."  *Id.*  To the extent that the FEC argues that the Report and Recommendation incorrectly relies on CREW's assertions in its reply regarding the second set of documents, the Court notes that the FEC through its objection and reply has had a sufficient opportunity to lay out its response to the reasonableness of that document production.  Notably, the FEC has produced additional exhibits which the Court shall, but is not required to, consider in reaching its decision.  LCvR 72.3(c) ("A district judge shall make a *de novo* determination of those portions of a magistrate judge's findings and recommendations to which objection is made . . . . A district judge may make a determination based solely on the record developed before the magistrate judge, or may conduct a new hearing, receive further evidence, and recall witnesses.").  As the Court concludes that each party has had a sufficient opportunity to present its arguments, the Court shall consider the merits of parties' arguments as they relate to the second set of documents.

In its objection, the FEC argues that it reasonably relied on this Court's holding that CREW was required to exhaust administrative remedies before its action at the district court

level was permitted, as a justification for not producing additional responsive documents.  Def.'s Objs. at 11-14.  Relying on this ruling, the FEC points to CREW's failure to seek administrative remedies while the appeal was pending as a rationale for its failure to produce additional responsive documents at an earlier time.  Def.'s Objs. at 3, 21.  Judge Facciola properly rejected this argument, noting that this Court's ruling dealt only with the avenue, i.e. administrative means or a district court action, that CREW would use to challenge the FEC's response to its request, and not with the FEC's legal obligation to produce the responsive documents to the CREW's request. As Judge Facciola aptly explained: "[W]in, lose, or draw, the FEC would have had to produce the documents eventually: had it won on appeal, CREW would have needed only to exhaust whatever administrative remedy the FEC imposed before the FEC would have to turn over the documents." R&R at 14. Indeed, the FEC itself asserts that its position throughout this litigation was that CREW was entitled to the requested documents.  Def.'s Opp'n to Pl.'s Mot. at 18 ("CREW cannot demonstrate that the Commission's 'opposition to disclosure' was unreasonable; the Commission never *opposed* disclosure").  Accordingly, the Court agrees that reliance on this Court's ruling on a procedural issue was not a reasonable basis for failing to produce documents that the FEC, by its own admission, was still required to produce by law.

The FEC next argues that it did not produce additional documents until settlement because of the parties' agreement reached prior to the production of the first batch of documents. Def.'s Objs. at 16.  The FEC asserts that during negotiations in March and April 2011, in between the receipt of the FOIA request and the filing of the instant action, the parties agreed that the FEC could exclude from its search "certain correspondence to and from the three selected Commissioners contained in the Commission's files, such as rulemakings, advisory opinions, enforcement Matters Under Review, and audits." *Id.*  In agreeing to the narrowed

parameters, CREW expressly reserved the right to revisit the full scope of records requested through its March 2011 request. *Id.* In response to this initial search, the FEC produced the first batch of documents in June 2011. *Id.* The FEC asserts that CREW did not request that the FEC expand the search beyond those agreed-upon parameters after receiving the first batch of documents until after the D.C. Circuit's ruling two years later in June 2013. *Id.* at 16-17. CREW points out that the documents requested by CREW in June 2013 after the D.C. Circuit's ruling were the same as those highlighted by CREW in their opposition to FEC's Motion to Dismiss, filed and served on the FEC on July 7, 2011. Pl.'s Opp'n to Def.'s Mot. to Dismiss at 10, ECF No. [5]. CREW noted in its opposition in June 2011 that:

> [A] review of what the FEC has produced [in the first batch of documents] reveals, at least in part, what the agency has failed to produce. Many of the emails produced by the FEC denote they were replied to, but the FEC has failed to produce those replies. The FEC's production omits critical metadata, such as that showing which commissioner received the email in question. The FEC also has failed to produce all attachments to emails.
>
> In addition, the FEC has failed to provide all categories of requested records. For example, although CREW's request sought "all calendars, agendas, or other recordations of the schedules" of FEC Commissioners Peterson, Hunter, and McGahn, the FEC produced calendars for only Commissioner Peterson. Similarly, although CREW sought ex parte communications notices in the possession of an ethics official, the FEC produced none. Quite clearly these unexplained gaps in the FEC's production further evidence the inadequacy of the agency's search, requiring the Court to reject its motion to dismiss.

Pl.'s Opp'n to Def.'s Mot. to Dismiss at 10. Indeed, these requests in large part mirror the requests made by CREW to the FEC after the D.C. Circuit's ruling. In June 2013, CREW sent a letter to the FEC requesting the following documents:

- Calendars of Commissioners McGahn and Hunter.
- Metadata, specifically that showing which commissioner received which emails produced in response to our request.
- Replies to disclosed emails. Please note some of the released emails indicate they were replied to, but the replies have yet to be produced . . . . .

- Attachments to disclosed records. A number of disclosed emails indicate they have attachments, which have yet to be produced . . . .
- *Ex-parte* communications notices in the possession of an ethics officer.

Def.'s Objs., Ex. 1, ECF No. [36-2] (Letter from Anne Weismann to Steve Hajjar).  In response, the FEC argues that "CREW never indicated that it intended for such litigation arguments [made in its opposition] to be understood as an administrative appeal asking the Commission to correct perceived errors in its FOIA production."  Def.'s Reply at 14.  It is evident to the Court that the FEC was aware of CREW's objections to the first batch of documents produced in June 2011 as a result of the parties' agreed-upon narrowed search, based on CREW's description provided in its opposition in July 2011 which is largely the same as the additional documents requested by CREW in June 2013.  While the FEC seeks to rely on the fact that the statement in the opposition was not understood to be a request for additional documents, the FEC indicated that it never opposed the disclosure of the documents requested by CREW throughout this litigation and the requested documents are within the parameter of the narrowed scope agreed to by the parties.  The Court finds that the FEC did not act reasonably in withholding documents for two years identified in CREW's opposition as documents that "the agency has failed to produce" in its first batch of documents responsive to the narrowed search, and to which the FEC itself has asserted it had no legal basis to withhold.  Accordingly, for the reasons stated herein and the reasons laid out in the Report and Recommendation, the Court finds that the FEC failed to act reasonably in withholding the second batch of documents provided to CREW prior to the parties' settlement in July 2013, after the D.C. Circuit's opinion and over two years after its first document production.

5.   Balancing of the Four Attorney Fee Entitlement Factors

After balancing the four factors, Judge Facciola found that CREW was entitled to

reasonable attorney fees in this matter.  R&R at 15.  The Court agrees for the same reasons articulated in the Report and Recommendation.  "Essentially, the first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage."  *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008).  Here, the first three factors demonstrate that CREW sought documents for public informational purposes: the public was benefited by this case; CREW did not receive any commercial benefit from this case; and CREW's interest in the records was to "protect[] the right of citizens to be inform[ed] about the activities of government officials and . . . ensur[e] the integrity of government officials."  Pl.'s Mot. at 12.

Turning to the fourth factor, "'[i]f the Government's position is correct as a matter of law, that will be dispositive. If the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus.'"  *Davy*, 550 F.3d at 1162 (quoting *Chesapeake Bay Found. v. United States Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993)).  The Court notes that while the FEC vigorously objects to the finding in the Report and Recommendation that it acted unreasonably in failing to produce the second set of documents until after the D.C. Circuit handed down its ruling and the parties engaged in settlement negotiations, this one factor is not dispositive in the entitlement analysis.  It is clear that the FEC's purported position, that CREW was entitled to the documents but only if it sought the documents through administrative procedures was not correct as a matter of law in light of the D.C. Circuit's ruling.  Accordingly, the FEC's withholding of certain documents whether reasonable or unreasonable is just one factor to consider in the Court's analysis.  Nevertheless, the Court agrees with the finding in the Report and Recommendation that the FEC acted unreasonably in failing to release the second set of documents, identified by CREW in July 2011,

16

but not produced until July 2013.  Accordingly, weighing all four factors as a whole, the Court

finds that CREW is entitled to attorney fees.

**B.      Reasonableness of CREW's Attorney Fees**

As the Court adopts the finding in the Report and Recommendation that CREW is both

eligible and entitled to attorney fees, the Court next must determine the reasonableness of the fee

award by exercising its "traditional equitable discretion." *Fenster v. Brown*, 617 F.2d 740, 742

(D.C. Cir. 1979).  "D.C. courts recognize that the 'usual method of calculating reasonable

attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable

hourly fee, producing the 'lodestar' amount." *Judicial Watch, Inc. v. BLM*, 562 F. Supp. 2d 159,

175 (D.D.C. 2008), *rev'd on other grounds*, 610 F.3d 747 (D.C. Cir. 2010) (quoting *Bd. of Trs.*

*of the Hotel & Rest. Emples. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998)).  When,

as here, the plaintiff is represented by an attorney who charges discounted rates for "public-

spirited reasons," the plaintiff may nevertheless recover an award based on market rates.  *Id.*

Courts apply the *Laffey* matrix, "a schedule of charges based on years of experience," to

determine reasonable hourly rates in order to compute the "lodestar" amount.  *Id.*   The Report

and Recommendation found that CREW should be awarded the full amount of its requested fees,

$139,998.68, and costs, $500.

As Judge Facciola indicates in the Report and Recommendation, the FEC does not

dispute that the rate under the USAO *Laffey* matrix is appropriate, but rather challenges the hours

that CREW expended on this matter and CREW's timekeeping practices.  R&R at 15.  CREW as

the party seeking fees bears the burden of establishing the reasonableness of its request.  *Role*

*Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004). The FEC raises three specific

objections with regard to the reasonableness of the amount of the fee award.  The FEC argues

that: (1) CREW's timesheets were not contemporaneously prepared; (2) CREW's fee petition uses inappropriately large time increments; and (3) CREW's time entries are vague and insufficient.  Based on these reasons, the FEC asserts that the Court should substantially reduce the amount of any fee award.  The Court shall address each of the FEC's arguments in turn.

> a.   *CREW's Timesheets were Contemporaneously Prepared*

Turning first to the argument that CREW's timesheets were not contemporaneously prepared, the FEC argues that the timesheets maintained by CREW in the instant action mirror "reconstructed timesheets" used by CREW in prior actions and criticized by other courts in this district.  Def.'s Objs. at 22-24.  As the D.C. Circuit has explained, "Casual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees. Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982).

In support of its objection, the FEC cites to two opinions from this district in which judges criticized CREW's failure to keep contemporaneous timesheets.  The FEC asserts that CREW has made no significant changes to the way that it records time in FOIA cases and, accordingly, the records provided are inadequate.  Def.'s Objs. at 22-24.  Turning to the first case cited by the FEC, in *Citizens for Responsibility & Ethics v. DOJ*, 825 F. Supp. 2d 226 (D.D.C. 2011), Judge James E. Boasberg reduced CREW's fee award by 37.5% based on CREW's timekeeping practices which Judge Boasberg described as "significantly below what is expected of fee applicants in this Circuit." *Id.* at 230.  Judge Boasberg noted that CREW kept "daily timesheets," indicating the number of hours spent on a specific case on a given day, but not itemizing the specific tasks that were performed on each case. *Id.*  Further, Judge Boasberg cited

a declaration provided by Anne Weismann, CREW's counsel both in that action and in the instant action, in which she indicated that she worked from those timesheets as well as other documents to determine her time for the purposes of recovering fees. *Id.* Specifically, Ms. Weismann's declaration indicated that she would review the hours spent, the docket sheet, case files, and notes to determine the specific matter pending on a given date to which she would have expended time. *Id.* The FEC also points to a second case in support of its argument that CREW failed to keep contemporaneous timesheets. In *Citizens for Responsibility & Ethics v. U.S. Dep't of Homeland Security*, Civ. No. 08-1046 (JDB), 2010 WL 8971920 (D.D.C. Apr. 21, 2010), Judge John D. Bates noted that two CREW attorneys who worked on the case maintained daily timesheets indicating the number of hours they spent on each specific case, however, CREW never provided these timesheets either with its motion for fees or to the agency when the agency requested it. *Id.* at *2. Judge Bates ultimately reduced CREW's requested fees by ten percent. *Id.* Here, the FEC argues that a reduction in CREW's requested fees is similarly appropriate because CREW relied on reconstructed timesheets rather than contemporaneous records. Def.'s Objs. at 22.

Judge Facciola distinguished the timesheets and accompanying affidavits in the instant matter from those filed in the two cases cited by the FEC. First, Judge Facciola conducted a review of the timesheets and affidavits submitted by CREW in *Citizens for Responsibility & Ethics v. DOJ* and *Citizens for Responsibility & Ethics v. U.S. Dep't of Homeland Security*. R&R at 24-25 (citing Civ. No. 10-750, Pl.'s Mot. for Atty. Fees, Ex. P, ECF No. [7-2] (Declaration of Anne L. Weismann); Civ. No. 08-1046, Pl.'s Mot. for Atty. Fees, Ex. 4, ECF No. [50-4] (Declaration of Anne L. Weismann)). After reviewing these documents, Judge Facciola properly noted key differences between the filings in those cases and the filings in the instant

matter.  Specifically, Judge Facciola noted that Ms. Weismann's affidavit in both of the cases cited by the FEC in its objection, indicated that she maintained daily timesheets in which she recorded the number of hours spent on a particular case, but did not itemize the specific tasks performed on those cases.  R&R at 24 (citing Civ. No. 10-750, Pl.'s Mot. for Atty. Fees, Ex. P, ECF No. [7-2] (Declaration of Anne L. Weismann)); *see also* Civ. No. 08-1046, Pl.'s Mot. for Atty. Fees, Ex. 4 at 1, ECF No. [50-4] (Declaration of Anne L. Weismann).  Further, in order to calculate her hours for the fee request, she "reviewed the hours [she] spent on the case in coordination with the docket sheet, [her] case files, and periodic notes of daily activities [she] maintain[s] on [her] calendar, all of which informed [her] as to the specific matter pending on a date on which [she] had expended time."  *Id.* at 24 (citing Ex. P, at 60-61); *see also* Civ. No. 08-1046, Pl.'s Mot. for Atty. Fees, Ex. 4 at 1-2, ECF No. [50-4] (Declaration of Anne L. Weismann).  Indeed, both affidavits give the example that Ms. Weismann used knowledge of a particular due date to be able attribute time spent on that specific case in the days preceding the due date to a specific task.  R&R at 24; *see also* Civ. No. 10-750, Pl.'s Mot. for Atty. Fees, Ex. P at 61, ECF No. [7-2] (Declaration of Anne L. Weismann); Civ. No. 08-1046, Pl.'s Mot. for Atty. Fees, Ex. 4 at 2, ECF No. [50-4] (Declaration of Anne L. Weismann).  As Judge Facciola summarized in the Report and Recommendation in the instant matter: "In other words, Weismann's declaration made it clear that she engaged in post hoc reconstruction of her hours based on a combination of her timesheets, notes, and the docket; no detailed contemporaneous records were kept, only aggregate tools, and even the reconstructed records conflated multiple days' worth of work." R&R at 24.  Judge Facciola also reviewed both the timesheets submitted and found in *CREW v. U.S. Dep't of Homeland Security*, CREW provided no specific dates and grouped multiple entries together.  R&R at 24; *see* Civ. No. 08-1046, Pl.'s Mot. for Atty. Fees,

Ex. 4 at 4, ECF No. [50-4] (Declaration of Anne L. Weismann).  In *Citizens for Responsibility &*
*Ethics v. DOJ*, CREW's timesheets had aggregate entries that listed the same task spanning
across multiple days.  R&R at 24; Civ. No. 10-750, Pl.'s Mot. for Atty. Fees, Ex. P at 62, ECF
No. [7-2] (Declaration of Anne L. Weismann).

The instant matter, as Judge Facciola indicates, is distinguishable from these cases
because there is no indication that CREW engaged in post hoc reconstruction of hours. Here, Ms.
Weismann's declaration states: "In order to determine my time for purposes of recovering
[CREW's] fees in this matter, I reviewed my daily time sheets and separate notes I maintain on
individual cases. Exhibit 1 to this declaration contains a break-down of my time by day on
specific litigation activities in this case at both the district court and court of appeals level." Pl.'s
Mot., Ex. B at 1, ECF No. [24-2] (Declaration of Anne L. Weismann).  Further, unlike in the
earlier cases cited by the FEC, each entry on CREW's timesheet includes one activity completed
on one specific date.  Accordingly, after reviewing the evidence, Judge Facciola properly
concluded that "[n]othing suggests that [CREW] submitted 'reconstructed timesheets.'"[4] R&R at
25.  The Court adopts Judge Facciola's finding that CREW's timesheets were
contemporaneously prepared based on Judge Facciola's clear and careful analysis of the relevant
differences between the instant action and the cases cited by the FEC, as well as this Court's own
independent analysis of the referenced documents.

b. *CREW's Fee Petition Does Not Use Inappropriately Large Time Increments*

The FEC next objects to CREW's keeping of time in half-hour and hour increments.
Indeed, as both the FEC and Report and Recommendation note, there is "unquestionably" a

---

[4] While Judge Facciola noted that he specifically discussed Ms. Weismann's timesheet
and affidavit, the other two lawyers similarly followed the appropriate methods of
contemporaneous time record reporting.  R&R at 25 n.20.  The Court adopts this finding.

preference for time records that are, at most, in quarter-hour increments. R&R at 26 (citing *Thomas ex rel. A.T. v. District of Columbia*, Civ. No. 03-1791, 2007 WL 891367, at * 4 (D.D.C. Mar. 22, 2007)); Def.'s Objs. at 24 (citing *Citizens for Responsibility & Ethics v. DOJ*, 825 F. Supp. 2d 226, 230 (D.D.C. 2011)).   However, Judge Facciola noted that some courts have allowed larger billing increments.   R&R at 26 (citing *Oil, Chem. & Atomic Workers v. United States DOE*, 141 F. Supp. 2d 1, 11-12 (D.D.C. 2001), *rev'd on other grounds*, 288 F.3d 452 (D.C. Cir. 2002).   Ultimately, Judge Facciola found that CREW's time intervals were not too large such that it justified a reduction in CREW's fee award.   The Court adopts the reasoning and the finding in Report and Recommendation as to this issue for the reasons described herein.

The Court may "reduce[] [CREW's fee award] to account for any inaccuracies and overbilling that may have occurred as a result of its unacceptable timekeeping habits." *Citizens for Responsibility & Ethics v. DOJ*, 825 F. Supp. 2d at 231.   Judge Facciola relied on the sworn declaration of CREW's three attorneys who each stated that they reduced their hours to avoid compensation for inflated hours.   R&R at 26.   Indeed, in her sworn declaration, Ms. Weismann indicated that she often reduced her hours assigned to a specific task by ten percent.   *Id.* (citing Pl.'s Mot., Ex. B at 2, ECF No. [24-2] (Declaration of Anne L. Weismann)).   The other two CREW attorneys stated in their declarations that they reduced hours assigned to specific litigation tasks as well.   R&R at 26 (citing Pl.'s Mot., Ex. C at 2, ECF No. [24-2] (Declaration of Adam J. Rappaport); Pl.'s Mot., Ex. D at 2, ECF No. [24-2] (Declaration of Melanie Sloan)).   Relying on these sworn statements and CREW's assertion in it motion that it reduced fees to avoid duplication, Judge Facciola found that there were not concerns about "inaccuracies and overbilling," and, accordingly, declined to reduce CREW's attorney fee award based on

CREW's keeping of time in half-hour and hour increments.[5]   R&R at 27.   The Court adopts

Judge Facciola's analysis in its entirety on this issue.   R&R at 26-27; *see also Oil, Chem. &*

*Atomic Workers*, 141 F. Supp. 2d at 4 (holding that the plaintiff's use of whole hour billing

increments did not, in itself, suggest inappropriate or inaccurate billing hours).

        c.   *CREW's Time Entries are Not Vague and Insufficient.*

     The FEC asserts that CREW's time entries are vague and insufficient and, thus, cannot

support CREW's requested fee award.   "[S]upporting documentation 'must be of sufficient detail

and probative value to enable the court to determine with a high degree of certainty that such

hours were actually and reasonably expended.'"   *Role Models Am., Inc. v. Brownlee*, 353 F.3d

962, 970 (D.C. Cir. 2004) (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (per

curiam)).   After reviewing the supporting documentation in the instant matter, Judge Facciola

concluded that CREW had provided sufficient detail in its entry such that CREW's attorney fee

reward should not be reduced. R&R at 29.

     The FEC argues that case law in this jurisdiction supports its claim that CREW's time

entries are insufficient.   First, the FEC argues that the D.C. Circuit's ruling in *Role Models Am.,*

*Inc. v. Brownlee*, 353 F.3d 962 (D.C. Cir. 2004), requires that the Court reduce CREW's fee

award because CREW only provided "cursory time entries." Def.'s Objs. at 25.   However, the

Report and Recommendation distinguishes the instant matter from the D.C. Circuit's holding in

*Role Models*.   In *Role Models*, the D.C. Circuit held that the plaintiff's insufficient entries in its

time records failed to meet its "'heavy obligation to present well-documented claims'" and

---

    [5] To the extent that it appears the FEC also raises an objection to the total number of
hours expended on this litigation, as compared to other cases, in a footnote in its Objections, *see*
Def.'s Objs. at 25 n.8, the Court adopts Judge Facciola's detailed analysis distinguishing each of
the cited cases from the instant matter.   R&R 16-19.

accordingly, found that a decrease in the hours for which the plaintiff could recover attorney fees was warranted. *Id.* at 971 (quoting *Kennecott Corp. v. Environmental Protection Agency*, 804 F.2d 763, 767 (D.C. Cir. 1986). In the Report and Recommendation, Judge Facciola noted district courts in this jurisdiction have narrowly interpreted *Role Models*. R&R at 28. Quoting an opinion by Judge Paul L. Friedman, the Report and Recommendation notes:

> As Judge [Gladys] Kessler has pointed out, the opinion in *Role Models* "must be viewed in context"—an extraordinarily high bill for a garden variety case. *Smith v. District of Columbia*, 466 F.Supp.2d 151, 157 (D.D.C.2006). "[T]he ruling in Role Models simply cannot be blindly applied without being mindful of the factual context in which it was decided." *Id.* at 158; s*ee also DL v. District of Columbia*, 256 F.R.D. 239, 246 (D.D.C. 2006) (when fee request is "unreasonable on its face," as in *Role Models*, the court should scrutinize time records "with a more demanding eye"). In *Role Models*, counsel expended minimal effort—as the case required "no discovery, no travel, no evidentiary hearings, no contested facts, and no petitions for rehearing"—yet requested fees dramatically disproportionate to the work required. *Smith v. District of Columbia*, 466 F.Supp.2d at 157; *see id.* at 161.

R&R at 28 (quoting *Petties v. District of Columbia*, Civ. No 95-0148, 2009 WL 8663462, at *7 (D.D.C. Oct. 20, 2009)). Judge Facciola found that CREW's fee request of $139,998.68 was not objectively unreasonable, R&R at 16-19, and further found that *Role Models* was not applicable because "the records, 'when reviewed by an individual with knowledge of the case, and in light of the surrounding entries' provide 'sufficient information to determine what work was performed and why it was relevant to the case,'" R&R at 28-29 (quoting *Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 179-80 (D.D.C. 2010)). The Court agrees with the analysis in the Report and Recommendation.

The FEC in its objection cites a host of cases that it argues support a finding that CREW's fees should be reduced based on insufficient and vague time entries. *See* Def.'s Objs. at 26. The cases cited by the FEC are distinguishable from the instant matter for the reasons

24

described herein.  First, the FEC appears to indicate that *Petties v. District of Columbia*, Civ. No. 95-0148, 2009 WL 8663462 (D.D.C. Oct. 20, 2009), is distinguishable from this matter.   In *Petties*, another court in this district distinguished that case from *Role Models* because *Petties* was a "very complex case [that] ha[d] been actively litigated for fourteen years, during which time defendants ha[d] yet to comply fully with federal law, requiring plaintiffs' class counsel to litigate numerous issues and counsel and the Special Master to continue to engage in extensive monitoring work." *Id.* at *7.  Here, the FEC's citation of this case appears to be in support of the argument that the instant matter is less like *Petties* and more like *Role Models*, which was a case that involved "no discovery, no travel, no evidentiary hearings, no contested facts, and no petitions for rehearing." *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006) (discussing *Role Models America, Inc. v. Brownlee*, 353 F.3d 962 (D.C. Cir. 2004)).  While the Court does not dispute that the instant matter does not involve the same type of lengthy litigation involved in *Petties*, nor is this case like *Role Models*.  Rather, the cases taken together stand for the proposition that the court must determine whether the fee request appears reasonable on its face based on the type of work that was required.  In *Petties*, the fee petitioner was awarded $1,122,114.67 in fees and costs which the court determined was reasonable based on the extensive nature of the litigation. *Petties*, 2009 WL 8663462, at *10.  In contrast, *Role Models* dealt with a fee petitioner's request for $342,741.25 in legal fees and $12,773.44 for expenses in a matter that the D.C. Circuit characterized as a not "particularly 'complex'" appeal of a "garden-variety administrative law matter that large Washington law firms handle routinely." *Role Models*, 353 F.3d at 968-69.  Here, Judge Facciola properly found that CREW's request for $139,998.68 in attorney fees in a "case [that] presented novel legal issues that required substantial analysis and advocacy" was not objectively unreasonable.  R&R at 16-19.  The Court

agrees that the holding in *Role Models* is distinguishable from the instant matter where the requested fees do not appear unreasonable on their face based on the fact that the instant matter required significant legal research and briefing for the appeal of a novel legal issue.

The FEC also points to several other cases which the Court finds do not support the FEC's contention that CREW's fee award should be reduced due to insufficient and vague time entries.  The FEC points to two cases where the fee petitioner's award was reduced, however, the inadequacy or vagueness of the time entries was not the basis for the reduction and, thus, the cases do not support the FEC's argument.  *See Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006) (finding the fee petitioner provided adequate descriptions unlike in *Role Models*, and allowing for a reduction on other bases, but specifically declining to reduce a fee award based on the fact that fee petitioner used block billing); *Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 179-80 (D.D.C. 2010) (holding that the billing records presented by the fee petitioner were adequate and declining to reduce the fee award on that basis).  Further, the FEC points to a case in which, unlike here, the court first concluded that the amount of the requested award was unreasonable on its face based on the nature of the case and, thus, required a review with "a more demanding eye" like in *Role Models*.  The cited case is distinguishable because, as the Report and Recommendation notes, CREW's fee request in the instant matter is not unreasonable on its face.  *Compare DL v. Dist. of Columbia*, 256 F.R.D. 239, 246 (D.D.C. 2009) (holding that the fee petitioner's request to recover $287,146 in fees and expenses for discovery negotiations, a motion to compel arising out of a "garden variety" discovery dispute, and a fee petition was unreasonable on its face and, thus, warranted a review of the time records with "a more demanding eye") *with* R&R at 19 (requesting $139,998.68 in attorney fees in case that "presented novel legal issues that required substantial analysis and advocacy").  Finally, the FEC

points to a case in which the court found that some entries lacked the requisite specificity and some did not.  The entries that the court found were insufficient related to meetings in which the fee petitioner did not specify either the subject matter or purpose of the meeting, however, entries such as "legal research: Opposition" were found to be sufficient.  *See Harvey v. Mohammed*, 951 F. Supp. 2d 47, 66-67 (D.D.C. 2013).  Here, the majority of CREW's entries are for research and drafting of specific documents, much more akin to an entry like "legal research: Opposition" than those entries for meetings that the court found insufficient.  *See generally* Pl.'s Mot., Ex. B-D, ECF No. [24-2] (Declarations of Anne L. Weismann, Adam J. Rappaport & Melanie Sloan); R&R at 29 (noting that "it is evident from the context of the fee petition that an entry such as 'Research and draft brief' is appropriate").  A review of CREW's fee petition reflects no entries for outside meetings, and only few entries for discussion among co-counsel regarding specific documents.  *See* Pl.'s Mot., Ex. B-D, ECF No. [24-2] (Declarations of Anne L. Weismann, Adam J. Rappaport & Melanie Sloan).  Thus, the instant matter is distinguishable.

Accordingly, the Court concludes that the FEC's objections to the Report and Recommendation on this matter do not have merit.  The Court adopts that Report and Recommendation's reasoning and finding that CREW's time entries are not vague and insufficient and, accordingly, a fee reduction on this basis is not appropriate.

### C.    FEC's Additional Objections to the Report and Recommendation

The FEC briefly raises two additional objections to the Report and Recommendation at the end of its filing. Def.'s Objs. at 27-28.  First, the FEC asserts that the Report and Recommendation incorrectly concludes that CREW failed to meet its burden of demonstrating that the fees were reasonably incurred because the appeal of a procedural issue was not essential

to obtaining the ultimate relief that CREW sought, namely the fulfillment of its FOIA request. Def.'s Objs. at 27.   The Court adopts the reasoning and finding of the Report and Recommendation as to this issue in its entirety. *See* R&R at 15-23.

Second, the FEC asserts that the fee award in the Report and Recommendation disserves the legislative purpose underlying FOIA because it "would force the federal government to finance CREW's endeavor to establish a new precedent that was neither necessary nor even helpful to the timely resolution of CREW's FOIA request in this case, plainly not the circumstances Congress envisioned when it established FOIA's fee provision."  Def.'s Objs. at 27-28.  The FEC argues that even if, as the Court has found, CREW is eligible and entitled to fees, the Court should nevertheless exercise its discretion and deny the fee request because it would not serve the legislative purpose of FOIA's fee provision.  Def.'s Opp'n to Pl.'s Mot. at 23.  As the D.C. Circuit noted:

> As a final and overriding guideline courts should always keep in mind the basic policy of the FOIA to encourage the maximum feasible public access to government information and the fundamental purpose of section 552(a)(4)(E) to facilitate citizen access to the courts to vindicate their statutory rights. Each of the particular factors we have discussed must be evaluated in light of these fundamental legislative policies. The touchstone of a court's discretionary decision under section 552(a)(4)(E) must be whether an award of attorney fees is necessary to implement the FOIA.

*Nationwide Bldg. Maintenance, Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977).  The Court declines to exercise its discretion to deny the fee request for two reasons.  First, as indicated *supra*, CREW's successful appeal led to the FEC's production of documents that were responsive to the mutually-agreed upon narrowed search over two years after the FEC was on notice of CREW's objections.  Second, CREW's appeal not only "facilitate[s] citizen access to the courts to vindicate their statutory rights" by clarifying what an agency must communicate as

a "determination" to a FOIA requester, but also aids the agency by explaining what it must do to fully comply with FOIA.   Accordingly, the Court shall not exercise its discretion to deny CREW's fee request.

### D.    CREW's Request for Attorney Fees to Respond to the FEC's Objections

Turning to the final issue, CREW additionally requests that the Court award it attorney fees incurred for responding to the FEC's objections to the Report and Recommendation. CREW requests that the Court award CREW an additional $20,002.13 in attorney fees to prepare its response. Pl.'s Resp. at 29-32.   Notably, while the parties agreed that attorney fees should be calculated using the *Laffey* Matrix of hourly rates updated by the U.S. Attorney's Office for the District of Columbia ("USAO *Laffey* Matrix"), *see* Pl.'s Mot. at 18; R&R at 15, CREW seeks to calculate the rate for fees related to its response using a version of the *Laffey* Matrix updated through the application of the legal services component of the CPI ("CPI *Laffey* Matrix").   Pl.'s Resp. at 19.   The FEC objects to the use of the CPI *Laffey* Matrix to calculate CREW's attorney fees for preparing its response to the FEC's objections to the Report and Recommendation and, instead, argues that the Court should apply the USAO *Laffey* Matrix if it is inclined to award CREW additional fees.   Def.'s Objs. at 21-25.   The Court agrees with the FEC, as the parties have already conceded that the USAO *Laffey* Matrix is applicable in this matter.   Moreover, CREW was aware that it could have requested the CPI *Laffey* Matrix for the earlier fee request. *See* Pl.'s Resp. at 29 ("Since at least 2000, courts in this District have approved the use of a version of the [CPI] *Laffey* Matrix . . . to bring rates from earlier years in line with current economic realities.").   Given CREW's failure to request the CPI *Laffey* Matrix's application to the instant matter at any time prior to the filing of its response in March 2014 and CREW's prior, uncontested assertion that the USAO *Laffey* Matrix is applicable in this case, the Court shall

apply the USAO *Laffey* Matrix to CREW's request for additional attorney fees.

The FEC also argues that the Court should disallow an entry of 1.07 hours of work completed by Anne Weismann because it references the drafting of a section of CREW's response that does not appear to exist.  Def.'s Reply at 25.  The specific entry from March 19, 2014, indicates: "Draft Fees on Fees Section of Response to FEC Objections."  Pl.'s Resp., Ex. C, ECF No. [37-1] (Second Supplemental Declarations of Anne Weismann, Melanie Sloan & Adam Rappaport).   The Court finds that this entry provides sufficient information to determine what work was performed and why it was relevant to the case as it is clear to the Court that this entry references Ms. Weismann's drafting of section IV of CREW's response titled "CREW is Entitled to Recover the Fees Incurred in Responding to Defendant's Objections Using an Updated *Laffey* Matrix," i.e. CREW's request for attorney fees to respond to the FEC's objections to the Report and Recommendation. *See Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 179-80 (D.D.C. 2010) (discussing that entries "must provide sufficient information to determine what work was performed and why it was relevant to the case").  The Court has reviewed the additional entries and determined that CREW has succeeded in establishing the reasonableness of the hours worked.  The Court has determined that it shall award CREW attorney fees for the hours worked on its response to the FEC's objections using the USAO *Laffey* Matrix to determine the appropriate rate.  *See* Pl.'s Resp., Ex. C, ECF No. [37-1] (Second Supplemental Declarations of Anne Weismann, Melanie Sloan & Adam Rappaport). The following chart provides the Court's calculation of the attorney fees for work on CREW's response to the FEC's objections:

| Attorney | Hours[6] | Rate[7] | Lodestar Amount |
|---|---|---|---|
| *Anne Weismann* | 24.03 | $510 | $12,255.30 |
| *Melanie Sloan* | 1 | $510 | $510.00 |
| *Adam Rappaport* | 1.1 | $450 | $495.00 |
| **Total** | | | **$13,260.30** |

Accordingly, the Court has determined that CREW's attorney fees award shall include $139,998.68 as indicated in the Report and Recommendation, as well as $13,260.30 for attorney fees expended by CREW in preparing its response to the FEC's objections to the Report and Recommendation, for a total attorney fee award of $153,258.98.

## IV. CONCLUSION

For the foregoing reasons, none of CREW's objections to Magistrate Judge Facciola's Report and Recommendation have merit.   In particular, the Court adopts the finding that CREW is eligible for attorney fees based of its successful appeal of this Court's ruling.  The Court finds that CREW is entitled to fees based on a balancing of the requisite factors which all weigh in favor of CREW's entitlement.  The Court finds that the Report and Recommendation properly concludes that CREW met its burden in establishing that its fees were reasonably incurred.  The

---

[6] The hours worked reflect those provided in CREW's attorneys' Second Supplemental Declarations provided in its response. Pl.'s Resp., Ex. C, ECF No. [37-1] (Second Supplemental Declarations of Anne Weismann, Melanie Sloan & Adam Rappaport).

[7] The Court calculated rates based on the USAO *Laffey* Matrix rate for 2013-2014. Laffey Matrix -- 2003-2014, http://www.justice.gov/usao/dc/divisions/Laffey_Matrix%202014.pdf (last visited Sept. 1, 2014).  Based on the declarations of CREW's attorneys, the Court calculated the rate for Anne Weismann and Melanie Sloan as that for attorneys with 20+ years of experience, and for Adam Rappaport as that for an attorney with 11-19 years of experience. *See* Pl.'s Mot., Ex. B-D, ECF No. [24-2] (Declarations of Anne L. Weismann, Adam J. Rappaport & Melanie Sloan).

Court further finds that CREW's timesheets were contemporaneously prepared, that CREW's fee petition does not use inappropriately large time increments, and that CREW's time entries are not vague nor insufficient.  The Court has determined that it shall not exercise its discretion to deny CREW's fee award.

The Court has determined that CREW shall be awarded $153,258.98 in attorney fees, including $139,998.68 as recommended by Judge Facciola in addition to $13,260.30 for attorney fees expended by CREW in preparing its response to the FEC's objections.  The Court also has determined that CREW shall be awarded $500 in costs as recommended by Judge Facciola.

Accordingly, FEC's [35] Objections to the Magistrate Judge's February 12, 2014 Report and Recommendation are OVERRULED.  Magistrate Judge Facciola's Report and Recommendation is ADOPTED, as modified by this Memorandum Opinion, for substantially the same reasons as articulated by Magistrate Judge Facciola and for the reasons described and expounded on herein.

An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE